1

1            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
2                       ATLANTA DIVISION

3


4   IN RE:  ANDROGEL ANTITRUST     )
                                   )  Docket No. 1:09-MD-2084-TWT
5   LITIGATION (NO. II)            )
                                   )  November 19, 2009
6                                  )  Atlanta, Georgia
    _____ )  10:00 a.m.
7

8

            TRANSCRIPT OF THE STATUS CONFERENCE PROCEEDINGS
9          BEFORE THE HONORABLE THOMAS W. THRASH, JR.,
                   U.S. DISTRICT COURT JUDGE
10

11

12   APPEARANCES OF COUNSEL:

13   On behalf of the Plaintiffs:   Ken Canfield
                                    Everette Doffermyre
14                                  Bruce Gerstein
                                    Joe Opper
15                                  Linda Nussbaum
                                    David Sorenson
16                                  Greg Odom
                                    Scott Perwin
17                                  Jayne Goldstein
                                    Lori Fanning
18                                  Karla Gluek
                                    Marshall Dees
19                                  Joe Lukens
                                    Mark Woodward
20                                  Brad Albert
                                    Cindy Liebes
21
    On behalf of the Defendants:   Mark Ryan
22                                  Steve Sunshine
                                    Teresa Bonder
23                                  David Rabin
                                    Mark Trigg
24                                  Mark Gidley

25

2

1                              -   -   -

2          Proceedings recorded by mechanical stenography
              and computer-aided transcript produced by
3
                     SUSAN C. BAKER, RMR, CRR
4                     2194 U.S. COURTHOUSE
                     75 SPRING STREET, S.W.
5                   ATLANTA, GEORGIA  30303
                        (404) 215-1558
6
                               -   -   -
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1      (Proceedings held in Atlanta, Georgia, November 19,

2      2009, 10:00 a.m., in open court.)

3           THE COURT:  All right.  These are the cases styled In

4      Re: AndroGel Antitrust Litigation, Case Number 09-MD-2084.

5           First let me ask counsel for the parties who

6      anticipate participating in some way today in this matter to

7      introduce yourself and tell me who you represent.

8           MR. CANFIELD:  Your Honor, I'm Ken Canfield with the

9      firm of Doffermyre, Shields, Canfield & Knowles in Atlanta.

10     With me as well is my partner Everette Doffermyre.  We

11     represent the Plaintiffs in the direct purchaser class actions.

12     We have with us a pretty distinguished list of Plaintiffs'

13     lawyers who have been handling these cases for a long time:

14     Bruce Gerstein from New York with the firm of Garwin, Gerstein

15     & Fisher; his partner Joe Opper is also in the courtroom; Linda

16     Nussbaum of the Kaplan Fox firm in New York.

17          MS. NUSSBAUM:  Morning.

18          MR. CANFIELD:  And David Sorenson with Berger &

19     Montague in Philadelphia.  And Greg Odom who you've met before,

20     and he had the honor of being sworn in by you at the first

21     hearing in this case who's a member of the bar in Louisiana and

22     spends a lot of his time in Georgia.

23          That's it for the direct purchaser class Plaintiffs,

24     Your Honor.

25          THE COURT:  Thank you, Mr. Canfield.

4

1          MR. WOODWARD:  Your Honor, Mark Woodward from the

2     Federal Trade Commission.  I have been admitted to the court

3     pro hac vice.  And with me from the FTC are Brad Albert also

4     from Washington and Cindy Liebes from our Atlanta office at the

5     FTC.

6          Thank you, Your Honor.

7          MR. PERWIN:  Good morning, Your Honor.  Scott Perwin

8     with the Kenny Nachwalter firm in Miami on behalf of the

9     Plaintiffs in the Walgreen's action which was recently

10    transferred here from the Middle District of Pennsylvania.

11         Good morning.

12         MS. GOLDSTEIN:  Good morning, Your Honor.  Jayne

13    Goldstein from the firm of Shepherd, Finkelman, Miller & Shah.

14    We represent the indirect Plaintiffs.  And I have with me Lori

15    Fanning from the Miller Law Firm and Karla Gluek from Gustafson

16    Gluek and Marshall Dees from Holzer, Holzer & Fistel.

17    Mr. Holzer is also present.  He is serving as our local

18    counsel, Your Honor.

19         MR. HOLZER:  Good morning, Judge.

20         THE COURT:  Good morning.

21         MR. LUKENS:  Good morning, Your Honor.  My name is

22    Joe Lukens.  I'm from Philadelphia with the firm of Hangley,

23    Aronchick, Segal & Pudlin.  I represent CVS and Rite Aid in one

24    of the recently transferred direct purchaser actions.

25         THE COURT:  Thank you.  Well, we've gotten off to a

5

1    bad start 'cause I have just totally lost track of who's who.

2    Go ahead with the Defendants.

3         MR. RYAN:  Your Honor, I'm Mark Ryan from the law

4    firm of Mayer Brown in Washington.  I represent Solvay.

5         MR. SUNSHINE:  Good morning, Your Honor.  Steve

6    Sunshine from the law firm of Skadden Arps, and we are here on

7    behalf of the Watson Pharmaceuticals.

8         MS. BONDER:  Your Honor, Teresa Bonder of Alston &

9    Bird on behalf of Solvay.

10        MR. RABIN:  Good morning, Your Honor.  David Rabin

11   with Morris, Manning & Martin also representing Watson

12   Pharmaceuticals.

13        MR. TRIGG:  Good morning, Your Honor.  Mark Trigg,

14   Greenberg Traurig, here on behalf of Defendants Par and

15   Paddock.  Also present today with us visiting from the D.C.

16   office of White & Case but also a member of the New York bar

17   and previously admitted pro hac vice in this case is Mark

18   Gidley.

19        MR. GIDLEY:  Good morning, Your Honor.  Mark Gidley,

20   White & Case, Par and Paddock.

21        THE COURT:  All right.  This is a status

22   conference/scheduling conference being held at my request in

23   all of these cases.  I have received the proposed agenda.

24        And, Mr. Canfield, is that a joint agenda from

25   everybody involved?

6

1          MR. CANFIELD:  It's been agreed upon by all the

2     parties, Your Honor.

3          THE COURT:  All right.  I'll be happy to follow the

4     agenda.  So we'll start with the current status of the cases,

5     first the FTC case.  And I'm sorry, but everybody tell me again

6     your name so I can try to remember who's who and that sort of

7     thing.

8          MR. WOODWARD:  Certainly, Your Honor.  Again, Mark

9     Woodward from the Federal Trade Commission.

10         And as Your Honor may be aware, of all the cases that

11    are here before you this morning the FTC's case was the first

12    case filed.  Our case was filed after a pretty substantial

13    pre-complaint investigation conducted at the FTC.  That

14    investigation involved a significant document production from

15    the Defendants here today as well as from some third parties.

16    It also involved testimony under oath from various executives

17    of the Defendants and from some third parties.

18         And as a result of that pre-complaint investigation

19    that we conducted at the FTC we filed a complaint alleging

20    agreements not to compete in violation of the antitrust laws.

21    And as Your Honor knows, the FTC filed its complaint not in

22    this court originally but in Federal District Court in

23    California.  And in April of this year we were transferred to

24    this court.  At the Court's invitation in May of this year, the

25    FTC filed an amended complaint.  And there are currently two

7

1  sets of motions pending in this court related to the FTC's

2  complaint.

3       First, the Defendants have filed motions to dismiss

4  the FTC's case in its entirety.  And in the FTC case, those

5  motions to dismiss are fully briefed.  But because the motions

6  to dismiss are an agenda item for later I won't say anything

7  more about that now.  But I did want to bring to the Court's

8  attention a second motion that's pending in the FTC case, and

9  that relates to an exhibit that the FTC filed with its amended

10  complaint in May.  That exhibit is a document that Defendant

11  Solvay produced during the FTC's pre-complaint investigation,

12  and we filed this document as an exhibit to our complaint

13  because the complaint discusses the document pretty

14  extensively.  And we think that the document pretty powerfully

15  illustrates the anti-competitive nature of the agreements at

16  issue in this case and does so in Solvay's own words.  We call

17  these agreements pay-for-delay settlements at the FTC.

18       By agreement with Solvay, we filed this exhibit

19  temporarily under seal; and then Solvay moved this Court to

20  seal the exhibit permanently.  So that motion to seal is also

21  fully briefed; and our view is that it can be decided on the

22  papers, though, of course, we'd be happy to address any

23  questions the Court might have on the motion to seal.

24       But perhaps most importantly for today's purpose as

25  far as case status goes, the status of the FTC's case is that

1    we are not consolidated with the MDL cases, the multidistrict

2    litigation cases that are before the Court today.  The FTC's

3    case has not been part of the proceedings before the MDL panel

4    and is not included in the MDL panel's transfer order, and that

5    in turn is because the MDL statute specifically exempts

6    Government antitrust actions from MDL proceedings.

7              Now, of course, the FTC's case can be coordinated to

8    the extent possible with the MDL cases, for instance, on

9    discovery and docketing issues.  We have done that successfully

10   before in a number of other cases in different courts.  But,

11   again, coordination of discovery and the status of the FTC's

12   case vis-a-vis the MDL cases is a separate agenda item for

13   later; so I won't say anything more about that now.  But we

14   believe that any request to consolidate the FTC's case with the

15   MDL cases should be made by a motion.

16             That's all I have as far as case status.  Thank you,

17   Your Honor.

18             THE COURT:  Thank you, Mr. Woodward.

19             Anybody else on the Plaintiffs' side want to talk

20   about the FTC's case?

21             MR. CANFIELD:  I was going to talk about the direct

22   purchaser cases, Your Honor.

23             THE COURT:  Anybody on the Defendants' side want to

24   talk about the FTC case?

25             MR. RYAN:  Mark Ryan, Your Honor, on behalf of

1    Solvay.

2           I think Mr. Woodward set out what the issues are in

3    the FTC case.  It is fully briefed for the motion to dismiss.

4    We have filed with the Court a motion for protective order on a

5    particular document that we'd like to keep confidential.

6    That's supported by an affidavit, and that motion's fully

7    briefed as well.  We're prepared to talk about it if the Court

8    wants.  I think the arguments are pretty well set out in the

9    papers.

10          And we think it makes a lot of sense down the road to

11   consolidate these cases so there's no duplicative discovery on

12   other proceedings.  The private cases and the FTC cases are

13   essentially based on the same allegations and discovery, and

14   other proceedings are going to be very duplicative.  But we are

15   in agreement with the description of where things stand in the

16   FTC case, Your Honor.

17          THE COURT:  All right.  Next is the class and

18   individual direct purchaser cases.

19          Mr. Canfield?

20          MR. CANFIELD:  Your Honor, as the Court is aware,

21   there were three direct purchaser class actions that were

22   transferred from the Central District of California to this

23   Court in the spring.  Your Honor ordered that we file an

24   amended complaint which we did in late spring.  The Defendants

25   filed a motion to dismiss with the Court's permission at the

10

1    end of August, and the Plaintiffs have responded to that

2    motion.  We filed our opposition brief.

3           The only thing that is left to be done from a

4    briefing standpoint is for the Defendants to file their reply.

5    They've asked the Court for a short extension because of the

6    holidays to take until December 4 to file that reply.  And

7    we've consented to that.  I don't know that the Court has ruled

8    yet on that issue.  As soon as the Defendant files their reply,

9    the issue of the motion -- raised by the motions to dismiss

10   will be ready for the Court's further treatment.

11          There are also some other direct purchaser actions

12   that have been filed.  As the Court is aware, we suggested in

13   order to try to expedite the resolution of the issues raised by

14   the motions to dismiss that there would be one brief filed in

15   opposition by all of the direct purchaser Plaintiffs; and

16   that's occurred.  So as of December 4, assuming that the Court

17   grants that extension --

18          THE COURT:  I think I already have, Mr. Canfield.

19          MR. CANFIELD:  All right.  I haven't seen that order

20   yet.  But at that point we'll need to talk about what happens

21   next.

22          I think that with regard to today's hearing there are

23   essentially a couple of matters that the Court's going to have

24   to address.  First is the issue of whether there's going to be

25   oral argument on the motions to dismiss, and then the second is

1   what is to take place during the pendency of those motions

2   before they are decided.  And those items are on the agenda, so

3   I'll wait until the appropriate time to raise the issues there.

4           THE COURT:  Thank you, Mr. Canfield.

5           Anybody else on the direct purchaser cases?

6           MR. LUKENS:  Your Honor, he stated where the direct

7   purchaser class actions are.  It's perfectly fine.

8           THE COURT:  All right.  Next is the indirect

9   purchaser cases.

10          MS. GOLDSTEIN:  Good morning, Your Honor.  Jayne

11  Goldstein, Shepherd, Finkelman, Miller & Shah, on behalf of the

12  indirect purchasers.

13          I just was informed this morning that Your Honor

14  entered the order --

15          THE CLERK:  Ma'am, if you will step over to the

16  microphone, please.

17          MS. GOLDSTEIN:  -- on the pending motion to dismiss.

18  And the main concern with the indirect purchasers is that we

19  have never filed an amended consolidated complaint, and we want

20  to make sure that we preserve our rights to do so.  As it is

21  now, there's three indirect purchaser complaints and they each

22  allege different things in the state sections.  Because they

23  are indirect cases there's other issues with state law that

24  have not been addressed that we would like the opportunity to

25  be able to have an amended consolidated complaint to bring them

12

1    all together.

2            We could wait.  We could respond on -- the

3    Defendants' only raised federal issues, so we could have a

4    response on the federal issues on the date that you suggested

5    by December 2nd.  But we do want to preserve our right to file

6    the amended complaint.  We could wait until Your Honor decides

7    those issues.

8            THE COURT:  Well, let me hear from Mr. Ryan or the

9    Defendants on this.  Thank you, Ms. Goldstein.

10           MS. GOLDSTEIN:  Thank you.

11           MR. SUNSHINE:  Your Honor, Steve Sunshine for Watson.

12           We certainly agree with Ms. Goldstein in terms of the

13   status of the cases.  What I think I hear the indirect

14   Plaintiffs asking for is some kind of stay of their case,

15   whether it's pending a filing of the amended complaint or not.

16   We would oppose that.  I think it's an agenda item for later,

17   and I am happy to defer it until later.  But, basically, our

18   point is all these issues are before this Court.  They should

19   be decided at one time.  The indirect Plaintiffs shouldn't be

20   allowed to sit this one out.

21           If they want to file an amended complaint, they have

22   known for six weeks now that they are in this court.  They

23   should go ahead and do it.  We certainly wouldn't object to a

24   reasonable time for them to file an amended complaint.  We

25   would move very expeditiously on a motion to dismiss.  But it's

13

1    all in front of Your Honor right now.  We think at least the

2    federal claims should all be decided at one time.

3              THE COURT:  Thank you, Mr. Sunshine.

4              Mr. Ryan, I didn't give you a chance to speak about

5    the direct purchaser cases.  Did you want to say anything about

6    the status of those?

7              MR. RYAN:  Thank you, Your Honor.  No, we didn't have

8    anything to add to that presentation.

9              THE COURT:  All right.  The next group of agenda

10   items is proceedings during the pendency of the motions to

11   dismiss.

12             With regard to the indirect purchaser's motion for

13   extension of time, I think I have already granted that.  So

14   unless there's something else to be said there, I'll move on.

15             The next item is discovery.

16             Mr. Canfield?

17             MR. CANFIELD:  The issue on discovery is relatively

18   straightforward.  The Plaintiffs and the Defendants generally

19   agree at least in the direct purchaser class actions about what

20   has to happen down the road.  We disagree about the timing of

21   it.  What the Plaintiffs would suggest is that the Court have

22   oral argument on the motions to dismiss and that shortly after

23   the ruling on those motions the parties would get together and

24   present to the Court a case management order and scheduling

25   order that would deal with the discovery that's supposed to

14

1    take place.

2         I think generally the Plaintiffs and the Defendants

3    are agreeable to that.  What the Plaintiffs propose is that

4    during the pendency of the motions to dismiss that the

5    Defendants produce to us the same materials that they produced

6    to the FTC during its pretrial investigation and that -- or

7    pre-suit investigation -- and that the FTC which is willing to

8    do so would be able to provide to the Plaintiffs copies of the

9    non-duplicative documents and depositions that were taken

10   during that process.

11        We think that it's an important step for the Court to

12   take to allow this very limited discovery to take place for a

13   couple of reasons.  The burden on the Defendant would be

14   minimal.  Most of these documents as I understand it exist in

15   electronic form and are on disk so that the burden would be

16   very slim, and the benefit of that production would be great.

17   While the Court's at work on the motions to dismiss, we can be

18   reviewing those documents and depositions.  And when it comes

19   time to preparing a case management order and a scheduling

20   order we're going to be in a position to much more efficiently

21   and directly put together a realistic scheduling order that

22   would allow the litigation to proceed as efficiently as

23   possible.

24        If that process doesn't take place, we have wasted

25   two months, three months during the process.  The Defendants

15

1    are obviously going to have to produce these documents once

2    discovery begins.  It's just a question of timing.  With no

3    real burden involved for them and great benefit for us, we

4    think it makes sense for those documents to be produced now.

5    If the Court ultimately decides to dismiss the cases, then

6    obviously the Plaintiffs will have ended up wasting some time

7    reviewing those materials.  But we're certainly willing to do

8    that because we believe in our case and really want to see it

9    move forward quickly as the Court would like to do as well.

10            So that's really the discovery issue, Judge.

11            THE COURT:  Mr. Woodward, you want to be heard on

12   this before I hear from the Defendants?

13            MR. WOODWARD:  Yeah, just briefly one point.

14            Your Honor, frankly, the discovery issue is largely

15   about the private Plaintiffs getting access to materials that

16   we already have at the FTC.  So I don't have a lot to say on

17   that other than we would be happy to facilitate the production

18   of third-party materials that the Defendants do not have after

19   the Court has entered a protective order.

20            But the one point I did want to make on this is that

21   this discovery issue does put a premium on entry of a

22   protective order in this case because the FTC has statutory and

23   regulatory confidentiality obligations that we have to abide

24   by.  We can't just produce third-party documents that those

25   third parties have marked as confidential without giving notice

1    to the third parties that they are going outside the agency.

2    And, typically, when we give that notice we give notice of a

3    protective order so that the third parties who have produced

4    documents to us can have some confidence that their documents

5    will be protected.  So after a protective order is entered,

6    we'd be happy to produce third-party documents to both the

7    Plaintiffs and the Defendants.

8              Thank you.

9              THE COURT:  Mr. Ryan?

10             MR. RYAN:  Thank you, Your Honor.

11             Your Honor, the Defendants seek application of the

12   normal rule which is that until motions to dismiss are resolved

13   no discovery takes place.  That's my understanding of the local

14   rule in this court, and that's certainly consistent with the

15   recent Supreme Court decision in Twombly in which the Supreme

16   Court cautioned in the context of antitrust litigation not to

17   launch the parties on expensive discovery until it was clear

18   that a claim had been stated against them.

19             The volume of records that we're talking about that

20   have been produced to the Federal Trade Commission, Your Honor,

21   are substantial, over two million pages of documents in 23

22   investigational hearings, essentially deposition transcripts.

23   So it is just, I think, not quite correct to say that these

24   materials can easily be turned over and there won't be expense

25   involved in copying them, marking them, identifying different

17

1    categories of confidentiality, Your Honor, in terms of highly

2    confidential or confidential which is provided for commonly in

3    protective orders.

4            Once that volume of material gets turned over, the

5    Defendants will turn to it and we'll be forced to turn to it as

6    well in terms of assessing it, reviewing it, analyzing it as

7    Mr. Canfield pointed out for purposes of what happens with a

8    scheduling order down the road.  And it will be a lot of work,

9    and it's premature discovery absent a ruling on the motions to

10   dismiss.

11           And in this case, Your Honor, the motions to dismiss

12   we believe come with substantial force behind them because

13   we're basing those motions on the 11th Circuit's ruling as the

14   Court knows in Schering-Plough.  So we think that these are

15   highly meritorious motions, and it will be a real burden on us

16   to have to begin working with those materials until we know a

17   claim has been stated.

18           And there's no harm.  There's no harm to the

19   Plaintiffs.  With these motions fully briefed, the Court will

20   get to get -- we expect the Court will get to these arguments,

21   the motions soon.  And waiting just until those motions are

22   decided is the better course we think and consistent with the

23   local rule in Twombly.

24           And, also, Your Honor, whenever we turn over volumes

25   of documents there's always a risk of public disclosure.  These

18

1    are some of our biggest customers that are involved in this

2    litigation.  It's highly sensitive information.  And it's one

3    thing to say once litigation is underway we understand we have

4    obligations to make information available, and we'll do that.

5    But until litigation is underway -- and by underway I mean

6    survives the motion to dismiss -- we think it's unfair and

7    unduly expensive for us to put us to that task.

8            And in addition, Your Honor, it's really in a sense

9    it's also one-sided discovery.  They are going to get a huge

10   amount of information from us that they are going to have

11   access to for some period of time while the rest of discovery

12   is stayed which we think it should be.

13           So the bottom line, Your Honor, is there's no need to

14   rush to discovery.  It's consistent with the usual practice to

15   wait until motions to dismiss are decided.  We have strong

16   motions here.  And we'd ask the Court to consider the expense

17   that will be incurred that may ultimately prove absolutely

18   unnecessary if the motions to dismiss are granted.

19           Thank you, Your Honor.

20           MR. GIDLEY:  Your Honor, very briefly I would just

21   like to add -- this is Mark Gidley on behalf of Par and

22   Paddock -- just to echo and amplify one or two points that

23   Mr. Ryan began on.

24           First, this is an unusual case because the FTC

25   complaint is based on the work product that the FTC put into

19

1   the 23 depositions and the million pieces of paper involved in

2   the case.  So in a way all of the Plaintiffs here are

3   beneficiaries of a government investigation that's gone on for

4   two and a half years.

5          Second, Your Honor, I rise because Par and Paddock

6   are very small companies.  By a factor of ten or a hundred we

7   are smaller than the Defendants, but we are also much smaller

8   than most of the Plaintiffs.  So the burden, for instance, Your

9   Honor, of complying with a protective order and construing the

10  FTC regs on confidentiality versus the strictures of making

11  confidentiality designations does entail burden.  And we also

12  have, Your Honor, documents that have not been scanned; so

13  those would have to be electronically scanned depending on the

14  procedures that would be worked out.  So discovery has a burden

15  and an intrusive nature which I'm sure the Court can

16  appreciate.

17         And, finally, Your Honor, we would point out that

18  discovery here is futile.  The immutable facts that we have in

19  the motion to dismiss will not be changed by colorful snippets

20  from business records.  Adverbs and adjectives can't change the

21  immutable facts of this case.  Five years we are taken off the

22  Solvay patent by the settlement that my clients entered into,

23  the immutable fact that Your Honor entered into a consent

24  decree, so we have the Noerr-Pennington benefit.  It doesn't

25  matter how many business records you take snippets out and

20

1    colorful quotes.  It won't change the fact that under the law

2    of this circuit we entered into a settlement in 2006 with no

3    greater sin than following the law of this circuit.

4            So for those reasons and maybe the particular irony

5    that this case is an attack on settlement agreements, we

6    believe we are entitled to oppose.  And we think, therefore, to

7    have asymmetrical discovery is burdensome and wrong in a case

8    with such immutable facts.

9            THE COURT:  Anybody else want to be heard on behalf

10   of the Defendants?

11           (No response.)

12           THE COURT:  Mr. Canfield, if you want to say anything

13   else, I'll give you the last word.

14           MR. CANFIELD:  Just a few things, Judge.

15           I think that the spirit of the local rule is that the

16   parties should not be subjected to wide-ranging discovery while

17   a motion to dismiss is pending.  We are not talking about

18   wide-ranging discovery here.  We are talking about for the most

19   part turning over some CDs that already exist.  So there's

20   really not much burden on the Defendants to provide this

21   production.  If the Defendants don't want to make the

22   production, the FTC is willing to produce some documents

23   provided a protective order is in place.  And that wouldn't

24   impose any burden on the Defendants.

25           With regard to a protective order, we proposed in our

1   case management order that we submitted for the Court's

2   consideration that the Court direct the parties to meet and

3   confer and agree upon a consent protective order by December

4   3rd and if the parties don't agree that there would be an

5   expedited process in place to have that order entered.  The

6   Plaintiffs are willing to enter into a protective order or have

7   the Court enter a protective order that would severely limit

8   the distribution of these documents.  In fact, we would agree

9   to keep the documents for attorneys' eyes only until there's

10   enough time if necessary to take the time for the Court to

11   resolve any disputes about what form of a protective order

12   should be entered.  So the protective order issue I don't think

13   is a stumbling block to the limited discovery that we're asking

14   for.

15        And then, finally, the Defendants have talked about

16   the one-way nature of the discovery that we've asked for.  We

17   are not seeking just to have discovery from the Defendants and

18   from the FTC to the Plaintiffs.  We have proposed that we are

19   willing to provide the initial disclosure documents that are

20   required by the local rules so that the Defendants have a much

21   better idea of the documents that are in our possession when it

22   comes time to put together this case management and scheduling

23   order.

24        And they've also requested some documents that deal

25   with the Plaintiffs' investigation and communications with the

22

1   FTC.  Most of those documents are privileged.  An initial

2   review shows that there aren't any documents dealing with

3   communications back and forth between the Plaintiffs and the

4   FTC.  But we're certainly willing to provide that type of

5   limited discovery that the Defendants are asking for so that

6   everybody can better address what the schedule ought to be as

7   soon as the Court has ruled on the motions to dismiss.

8            What happens in the typical case is that the

9   Plaintiffs flail around because we don't know exactly what's

10  out there; and it takes a substantial period of time after you

11  review the initial document requests before you can really tell

12  how many depositions you need, who you are going to have to

13  depose, how much time is going to be necessary for document

14  production, what specific documents are going to be needed in

15  the case.  We should be able to answer all those questions

16  before the first case management order and scheduling order is

17  put in place if we have an opportunity to get started on that

18  sort of the review at this point.

19           Thanks, Judge.

20           THE COURT:  Well, I'm not persuaded that the

21  advantage of allowing discovery before the motions to dismiss

22  have been ruled on outweigh the burden on the Defendants and

23  the what appears to me to be pretty real possibility of

24  disputes about what a protective order should include, what

25  categories of documents are covered by what categories of

23

1    protection.

2            And you're right, Mr. Canfield.  Starting with some

3    discovery now might make it easier to come up with a practical

4    and realistic case management order more quickly after a ruling

5    on the motions to dismiss, but I'm just not persuaded at this

6    point that I should change the default rule which in this

7    district is that discovery doesn't begin until motions to

8    dismiss have been ruled on and answers have been filed by the

9    Defendants.

10           Now, having said that, the FTC apparently is willing

11   to give you what you're asking for even without me ordering it.

12   And I'm certainly more than willing to give my attention to any

13   proposed protective orders, get that in place as quickly as

14   possible so that if, in fact, they do want to give you the

15   documents they can go ahead and do it.

16           MR. SUNSHINE:  Your Honor, if I just may be heard on

17   that one point --

18           THE COURT:  Mr. Sunshine, if you will come up to the

19   podium, my court reporter can hear you better.  It's very hard

20   to hear in this courtroom.

21           MR. SUNSHINE:  I'm sorry.

22           Your Honor, if I just may be heard on this one point

23   because I think it's a bit of a red herring for the FTC to

24   produce the documents.  They are clearly Defendants' documents.

25   The burden, Your Honor, comes not from the copying of the disks

24

1    which I think as Mr. Canfield says we agree is a fairly

2    ministerial action.  The problem goes back to what Mr. Woodward

3    identified earlier in that there's a statute that says

4    everything the Defendants give to the FTC during an

5    investigation is confidential.

6            If we were to do a turnover now with the two million

7    pages of documents that exist at the FTC, whether it's the

8    FTC's version or our version, essentially what we'd have to do

9    is go through all of the two million pages, determine which of

10   those documents are confidential, which are not confidential,

11   label them; and we'd have the same sets of issues and disputes

12   whether it's produced out of our hands or whether it's produced

13   out of the FTC's hands.  So, respectfully, Your Honor, we would

14   suggest to you they should be treated the same way because it's

15   the same burden.

16           THE COURT:  Well, I'm not going to prohibit the FTC

17   from turning over what they have to the Plaintiffs if it wants

18   to do so.  I'm not ordering them to do it, but I'm not going to

19   stop them from doing it.

20           MR. SUNSHINE:  I understand, Your Honor.  But I think

21   what we might get into, Your Honor, is we will have to review

22   the FTC's production and we will get into the fight of what's

23   confidential, what's not confidential, all that sort of sets of

24   disputes during the pendency where for the reasons that

25   Mr. Ryan had said we would think that that would not be

1    necessary during the motions to dismiss.

2           Effectively, the FTC has collected all of our

3    documents through their statutory process.  And they are end

4    running around the discovery process by just saying, Oh, we'll

5    give you Defendants' documents.  And it creates all the same

6    issues.  And, frankly, it's just a neat trick on the part of

7    the FTC to turn these documents over.

8           THE COURT:  All right, Mr. Sunshine.

9           MR. SUNSHINE:  Thank you.

10          THE COURT:  Mr. Gidley, you wanted to say something?

11          MR. GIDLEY:  Yes, please, Your Honor.  I'll be brief.

12          We have a special issue with Par and Paddock because

13   we engaged in settlement discussions with the FTC.  So if the

14   FTC were to unilaterally hand over documents that we believe

15   were settlement documents, we would like to brief for this

16   Court the reasons why we believe settlement documents shouldn't

17   be produced of the FTC action unless there's a need for it.

18   The courts have split on the treatment of settlement documents,

19   but it's a burden on the Court and certainly a burden on Par

20   and Paddock.  And that may be a unique Par and Paddock issue,

21   Your Honor.

22          THE COURT:  All right.  Mr. Woodward, you want to say

23   anything else or, Mr. Canfield, about this?

24          MR. CANFIELD:  Judge, I think we can deal with the

25   issues that the Defendants are raising in the context of

26

1     putting together a protective order.  As I mentioned earlier,

2     the easiest way to do that is to order that the documents be

3     produced for attorneys' eyes only until a later protective

4     order that is less restrictive is put in place.  And --

5              THE COURT:  Well, I'm not ordering any documents to

6     be produced right now.

7              MR. CANFIELD:  I understand.  But the FTC doesn't

8     want to produce any documents until there's a protective order

9     in place, so that's what we would anticipate doing is

10    negotiating with the FTC and the Defendants as to the terms of

11    a protective order which we think can be very simple and submit

12    that to the Court so it would be entered.  Then the FTC would

13    be protected for having shared with us some documents that

14    might be entitled to confidential treatment.

15             And then with regard to the issue of settlement

16    documents for Par and Paddock, we are not asking for those

17    kinds of documents.  All we want are the documents that the

18    Defendants produced to the FTC, not correspondence or memos

19    about settlement discussions and that sort of thing.

20             THE COURT:  All right.  I'll direct the parties to

21    confer in a good-faith attempt to submit a consent protective

22    order no later than December the 4th.  And if you are unable to

23    do that, notify me and present your separate proposals for a

24    consent order to govern all documents produced in all of these

25    cases.

1          All right.  The next item on the agenda is the

2     protective order and ESI protocol.

3          MR. CANFIELD:  I think we just dealt with that, Your

4     Honor.

5          THE COURT:  I'm not sure what an ESI protocol is.

6          MR. CANFIELD:  We don't need to deal with it today.

7          THE COURT:  All right.  Next item is coordination of

8     discovery between the MDL action and the FTC action.

9          MR. WOODWARD:  Your Honor, Mark Woodward again from

10    the FTC on coordination of discovery between the FTC action and

11    the MDL cases.

12         Before I get to that -- I do want to move on -- just

13    on the last point that we were discussing about the production

14    of documents, I'll be honest.  I'm not sure what the FTC will

15    do; but I can say I think under our rules we would have to give

16    the Defendants notice before we produce any materials,

17    including the types of materials that Mr. Gidley was referring

18    to.  And that would give them an opportunity presumably to come

19    before Your Honor and make a motion this is inappropriate for

20    some reason.  So I just wanted to make that point on the

21    discovery issue.

22         On the consolidation issue and the coordination

23    issue, again, as I mentioned earlier, the current status of the

24    FTC's case is that the FTC case is not consolidated with the

25    MDL cases.  Now, the Defendants have submitted a proposed case

1   management order that they have represented in their e-mail

2   filing to the Court contains, quote, substantially identical

3   language to the other case management orders that the

4   Plaintiffs have proposed.  But the key provision in Defendants'

5   order that we do not and cannot agree with is that the FTC case

6   "will be consolidated for pretrial purposes" with the MDL

7   cases.

8           That consolidation is expressly contrary to the MDL

9   statute 28 U.S.C. 1407(g) which exempts government antitrust

10  cases from multidistrict litigation.  Congress included that

11  exemption in the multidistrict litigation statute because it

12  recognized explicitly the importance of government antitrust

13  cases moving forward quickly to resolution, and that's what we

14  think should happen in this case.

15          Consolidation of our case with the MDL cases is also

16  contrary to practice in other courts.  In a number of other

17  cases, other courts have heard similar requests to consolidate

18  and have not granted them.  And I would refer the Court

19  especially to United States versus Dentsply, 190 F.R.D. 140,

20  which was a case out of the District of Delaware where the

21  Defendant in that case made the exact request that Defendants

22  are making here to consolidate the government antitrust case

23  with private cases that were pending at the same time; and the

24  court denied that motion to consolidate.

25          And I could go through other examples of cases to

1   which the FTC was involved in which courts have denied

2   consolidation but provided for coordination of discovery and

3   docketing, but really our position is that the Court should not

4   consolidate the FTC's case with the other cases here today

5   before giving the FTC the opportunity to be heard on this issue

6   in writing.  If the Defendants wants to consolidate the FTC's

7   case, they should file a motion with this Court and the Court

8   consider all of the arguments for and against.  And, again,

9   there are very good arguments against consolidation.

10          Just to be very clear, we are certainly willing to

11   coordinate with the private Plaintiffs on discovery matters.

12   Again, we have done that successfully in a number of other

13   cases; and I'm confident we can coordinate on docketing issues

14   and filing issues as well.  That won't be an issue.  But there

15   are a number of issues in private class-action cases that are

16   simply not present in a government and enforcement action like

17   class certification, an issue we don't face in the FTC case,

18   like damages, an issue we don't face in the FTC case.  We're

19   seeking only an injunction.

20          And we are seeking an injunction because at the FTC

21   we are charged with preventing anti-competitive conduct.  And

22   in this case obviously we believe we have ongoing

23   anti-competitive conduct, the result of which is that consumers

24   are paying on a daily basis inflated prices for an important

25   prescription drug.  So we'd like to move forward quickly in the

1    government enforcement action, the FTC case.

2            And, again, we would be happy to respond to any

3    motion the Defendants might file to consolidate our case with

4    the MDL cases.  And if the Court feels that it would be

5    appropriate to consider this consolidation issue after the

6    motions to dismiss are decided, that actually would be fine

7    with us.  But the consolidation issue is very important to the

8    FTC, and it should not be decided without the aid of briefing

9    that would set forth all the arguments.  That's the way it's

10   been done in other courts, and that's the way we think it

11   should be done here.

12           Thank you.

13           THE COURT:  Mr. Canfield, you or anybody else on the

14   Plaintiffs' side want to be heard on this issue?

15           MR. CANFIELD:  It's not really our issue, Judge.

16   However, my understanding is in other cases in which there has

17   been private litigation alongside the FTC litigation that

18   coordination has worked effectively.  And certainly

19   consolidation is not mandated by the MDL process, and from our

20   standpoint we don't see any particular benefit in

21   consolidation.  So I think on this issue we stand with the FTC.

22           THE COURT:  Mr. Ryan?

23           MR. RYAN:  Thank you, Your Honor.

24           Your Honor, I sometimes say I am a bit confused by

25   the FTC's position because Your Honor will recall we were here

31

1    in July.  We were asking for as quick as we could get

2    resolution on the motion to dismiss the FTC complaint, and the

3    FTC's position at that time was wait for the MDL panel to act

4    because if the MDL sends this case to New Jersey or Minnesota

5    or Pennsylvania we're going to file a motion with the Court to

6    be transferred as well.  So it's a little bit -- I'm not sure

7    it's material at this point; but it's a little bit

8    inconsistent, I think, with their earlier position.

9           Now, the MDL statute prevents the MDL court from

10   transferring the government case.  It says absolutely nothing

11   about this Court's ability to control its own docket, to

12   consolidate cases, to take whatever steps are reasonable to

13   make sure that parties are not incurring duplicative or

14   unnecessary discovery expenses.

15          THE COURT:  Just a minute, Mr. Ryan.

16          MR. RYAN:  Sure.

17          THE COURT:  If everybody who has a Blackberry will

18   turn it off, that's what's making this interference over the

19   sound system.  You don't have to be sending out messages.  If

20   you are receiving them, it makes that noise that you are

21   hearing over the sound system.  So everybody turn their

22   Blackberries off, please.

23          Thank you.

24          All right, Mr. Ryan.

25          MR. RYAN:  Thanks, Your Honor.  They took mine, Your

1    Honor, downstairs.

2          Your Honor, so I don't think that the FTC is opposed

3    for all purposes being coordinated with the Plaintiffs' cases

4    here.  They just don't want to be coordinated now in this

5    court.  But taking the FTC's offer, Your Honor, if they want to

6    wait to resolve these coordination consolidation issues until

7    after the motions to dismiss are resolved, that's fine with us.

8    We don't need to put the Court or the parties to any

9    unnecessary work.  We can wait and we can do that immediately

10   after the motions to dismiss are resolved because there may not

11   be a case, and these issues may be entirely as we think will be

12   the result beside the point.

13         So we are happy to wait on coordination or

14   consolidation, but it certainly makes sense to consolidate

15   these cases for discovery purposes so we don't have multiple

16   depositions or multiple rulings on discovery disputes.  It's

17   just completely overlapping discovery, and it's the only

18   sensible result.  So I am a little bit surprised that the FTC

19   would resist that in any fashion.

20         Now, Your Honor, on the point of turning -- the FTC

21   turning over the documents, again, we agree with the FTC.

22   Under their statutes and rules they don't have the authority to

23   turn our documents over to the Plaintiffs, but we will sit down

24   with the FTC immediately and we'll address that issue

25   internally with the FTC and see if we can come -- if we can't,

1    we can't; but if we can come to some resolution we'll do it.

2    But we will sit down with them, and I'm sure they will sit down

3    with us to talk about what they are going to do with our

4    documents because their statutes strictly prohibit them from

5    sharing with third parties.

6          So, Your Honor, that's our response.  Thank you.

7          THE COURT:  Well, in every MDL case that I have

8    handled the initial status conference has resulted in me

9    issuing a case management order that dealt with issues like

10   docketing and that sort of thing.  And I was prepared to do

11   that today.  But what I'm thinking about doing is unless y'all

12   anticipate a whole lot of filings that would apply to more than

13   individual cases before I rule on the motions to dismiss I'm

14   thinking about just waiting and dealing with the docketing

15   issues, case management, scheduling, dealing with all that

16   after the motions to dismiss have been ruled on.

17         MR. WOODWARD:  Your Honor, that would be fine from

18   the FTC's perspective.

19         MR. CANFIELD:  It's fine from the Plaintiffs'

20   perspective.  Although, we did have, I think, the first 13

21   paragraphs of the case management order was agreed upon in

22   substance by all the parties.  And the Court could enter that

23   that would deal with any additional filings that have to be

24   made so that people wouldn't have to file on every individual

25   case.  I think it might be beneficial for the Court to enter at

1    least that portion of the case management order so that there

2    is a master docket, and it would save the Court and the parties

3    from having to deal with a lot of additional filings.

4           THE COURT:  Anybody have any objection to that?

5           MR. SUNSHINE:  It may be a clarification -- again,

6    Steve Sunshine from Watson.

7           We certainly agree with the FTC's position.  With

8    respect to Mr. Canfield's argument about 1 through 13, if you

9    read carefully his submission it actually glosses over the FTC

10   and private cases coordination and is strapped in a footnote.

11   So, actually, paragraph one I believe it is of Mr. Canfield's

12   order would deal with the issue that we have just agreed to put

13   off.  So I don't think that -- with the exception of that one

14   point, we would agree.

15         MR. CANFIELD:  Judge, might I suggest that you give

16   the parties a few days to come up with a new case management

17   order that reflects all the rulings that have been made today

18   and these other minor issues; and we can submit a clean

19   proposed order to the Court.

20         THE COURT:  That's fine, Mr. Canfield.  Why don't you

21   do that.  And also with respect to your paragraph nine, my

22   people want you to put the case numbers for all groups referred

23   to, for example, as direct purchaser class actions.  You just

24   need to put on the caption under those words the actual case

25   numbers that you have got identified in paragraph two.  So

35

1    you'll have not only direct purchaser class actions, but you'll

2    actually have the case numbers there for them to use for

3    docketing.

4             MR. CANFIELD:  We will make that change, Judge.

5             THE COURT:  All right.

6             All right.  The next item is the case schedule,

7    including discovery and class certification.

8             MR. CANFIELD:  Judge, I think everyone's in agreement

9    that we should just defer that issue until after the ruling has

10   been made on the motions to dismiss.  And we would propose that

11   the parties submit a consent order at that time maybe 10 or 15

12   days after the Court's ruling if the motions are granted.

13            THE COURT:  I think that's the thing to do,

14   Mr. Canfield.

15            Anybody object to that?

16            (No response.)

17            THE COURT:  Next item is structure of counsel.

18            MR. CANFIELD:  Obviously, one of the obligations of a

19   transferee court in an MDL is to establish a leadership

20   structure for the Plaintiffs' side of the case.  All

21   Plaintiffs' counsel in the direct purchaser actions have had

22   some discussions about that.  We've reached a tentative

23   agreement, but we didn't -- and I believe that the indirect

24   purchaser counsel have talked about their own structure and

25   have reached agreement on that.

36

1          We didn't want to actually file anything with the

2     Court out of fear that we would be stepping on the Court's toes

3     so that our hope was that we could hear from you if you had any

4     particular strong views about how that leadership structure

5     should be organized.  If not, what we would propose is that the

6     parties again within five days submit a proposed order that

7     would incorporate the structure that the parties have agreed

8     upon.

9          THE COURT:  I don't have any strong feelings about

10    that, Mr. Canfield, with one possible exception; and that is I

11    want either the Plaintiffs' lead counsel for both groups or in

12    some cases what's been referred to as liaison counsel to be

13    local so that if we want somebody here in an hour to deal with

14    some issue or discovery dispute that there's somebody here in

15    Atlanta that Ms. Sewell can get on the phone with and say, Be

16    here in an hour.

17         MR. CANFIELD:  Our agreement that we expect to

18    propose to the Court incorporates a liaison counsel that is

19    local.

20         THE COURT:  That's really my only strong feeling on

21    the matter.

22         MR. CANFIELD:  Okay.  We'll submit something shortly,

23    Judge.

24         THE COURT:  Okay.

25         MR. PERWIN:  Your Honor, Scott Perwin again for the

37

Walgreen Plaintiffs.

I want to make it clear to the Court that there are three groups on the Plaintiffs' side in addition to the FTC, the direct purchaser class Plaintiffs, the indirect purchaser class Plaintiffs. Then there are two non-class direct purchaser cases, my case which is the Walgreen case and Mr. Lukens' case which is the CVS and Rite Aid case. And, obviously, the structure-of-counsel issue applies to the class cases, does not apply to the non-class cases.

To the extent Your Honor wants to appoint liaison counsel in Atlanta, we are happy to have Mr. Canfield act as counsel in the non-class direct purchaser cases as well; but the leadership structure of the class cases would not be applicable to the non-class cases.

THE COURT: Well, I understand that. But in the context of the MDL proceeding, I think I do have the authority to appoint liaison counsel --

MR. PERWIN: That's fine, Judge.

THE COURT: -- that would apply to all the Plaintiffs. And I don't think what you're suggesting is inconsistent with that.

MR. PERWIN: No, that's fine. Having liaison counsel appointed for all the Plaintiffs is fine with us, Judge. Thank you.

THE COURT: Okay. And you are willing to do that,

38

1    Mr. Canfield?

2              MR. CANFIELD:  I am, Your Honor.

3              THE COURT:  Okay.  Anything else on that issue?

4              (No response.)

5              THE COURT:  All right.  The next item is oral

6    arguments on the motions to dismiss.

7              Mr. Ryan?

8              MR. RYAN:  Thank you, Your Honor.

9              On our motions to dismiss, Your Honor, obviously we'd

10   be happy to participate in oral argument.  We think -- but we'd

11   also be happy if the Court ruled on the papers, and we think

12   that given the direct applicability of Schering-Plough it would

13   be perfectly appropriate for the Court to rule on the papers.

14   If there's going to be an oral argument, Your Honor, our only

15   request would be as soon as the Court's schedule permits after

16   the cases are fully briefed.

17             Thank you.

18             THE COURT:  Mr. Canfield?

19             MR. CANFIELD:  Judge, I'm perfectly aware that the

20   usual practice in this Court is not to have oral argument on

21   motions to dismiss.  We would respectfully submit that in this

22   case it makes some sense.  This case is complex both factually

23   and legally; and it's at the intersection of two areas of law

24   that are rapidly developing in this area, both patent and

25   antitrust case law.  And there are some nuances that come from

1   the dynamic nature of this law that really can't be fully

2   explained in a brief that is subject to some page limits.

3           In addition, you've got some very experienced counsel

4   here who have been involved in, I think, virtually every one of

5   these cases of this nature.  And most of the arguments and

6   theories that the Court might be thinking about have been

7   addressed by other courts whether in its reported decisions or

8   otherwise.  And I think that the Court might find some value in

9   being able through the Socratic process let's say to test the

10  various positions of the parties.  And I guess I would just say

11  that if I were in the Court's shoes in a case like this I would

12  -- I think that oral argument might be helpful, and I would

13  urge the Court to consider that here.

14          In terms of scheduling, I think that the cases will

15  be ready for oral argument shortly after the Defendants file

16  their reply brief on December 4.  My understanding is that the

17  indirect purchasers are willing to defer to the arguments that

18  have been made to the direct purchasers on the federal claims

19  that they make, and as a result all the federal claims will be

20  ripe for decision and oral argument shortly after the December

21  4 filing date.  All we need is some time to review what the

22  Defendants say in their reply briefs, and then we're ready to

23  go as soon as the Court has some time for us.

24          THE COURT:  Well, Mr. Canfield, be careful what you

25  ask for.  If you want it, I'm inclined to give you oral

40

1  argument.

2          MR. CANFIELD:  Thank you, Judge.

3          THE COURT:  Anybody else want to be heard on that?

4          MR. WOODWARD:  Your Honor, Mark Woodward for the FTC.

5          I don't know that I really need to say anything at

6  this point.  We would agree with Mr. Canfield that oral

7  argument could potentially be useful.  I just wanted to say

8  that we would agree with Mr. Ryan and Mr. Canfield that if the

9  Court decides oral argument is appropriate we'd be happy to

10 come down here as soon as Your Honor could fit us into its

11 schedule.

12         Thank you.

13         THE COURT:  How much time you think you need,

14 Mr. Canfield?

15         MR. CANFIELD:  An hour each side, Judge.

16         THE COURT:  That suit you, Mr. Ryan?

17         MR. RYAN:  That should be more than sufficient, Your

18 Honor.

19         THE COURT:  Okay.  Well, my schedule basically is a

20 train wreck right now.  But we'll try to find some time after

21 December the 4th.  And if y'all want to be in touch with

22 Ms. Sewell about that, that's probably the most efficient way

23 to try to do that rather than trying to schedule something

24 right this minute that would just have to be probably undone

25 and redone at some other point in time.

41

          All right.  That covers the agenda that you submitted
to me.  If there's anything else you want to talk about about
this case, I'm available.  Otherwise, we'll be -- we'll
adjourn.

          I think all of y'all have dealt with Ms. Sewell, my
courtroom deputy clerk.  Also, Dennis Richardson is here who
will be doing the docketing.  You can get Dennis's direct-dial
number when we finish.  Your first point of contact probably is
going to be Ms. Sewell; but if she is not available and it's a
docketing-related issue, Dennis is available.

          Anything else?

          MR. CANFIELD:  Not from the Plaintiffs' standpoint,
Your Honor.

          MR. RYAN:  Not from the Defendants' side, Your Honor.
Thank you.

          THE COURT:  All right.  Thank you very much,
gentlemen.  Court's in recess until further order.

          (Proceedings adjourned at 10:58 a.m.)

42

1                    C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6            I hereby certify that the foregoing pages, 1 through

7    41, are a true and correct copy of the proceedings in the case

8    aforesaid.

9            This the 4th day of December, 2009.

10

11

12

13    _____

14                   Susan C. Baker, RMR, CRR
                      Official Court Reporter
15                   United States District Court

16

17

18

19

20

21

22

23

24

25