# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | Case No. 09-md-2084-TWT |
| ROCHESTER DRUG CO-OPERATIVE, INC., et al., <br>     Plaintiffs, <br>         v. <br> UNIMED PHARMACEUTICALS, INC., et al. <br>     Defendants. | Case No. 09-cv-956-TWT |
| LOUISIANA WHOLESALE DRUG COMPANY, INC., et al., <br>     Plaintiffs, <br>         v. <br> UNIMED PHARMACEUTICALS, INC., et al. <br>     Defendants. | Case No. 09-cv-957-TWT |
| MEIJER, INC., et al., <br>     Plaintiffs, <br>         v. <br> UNIMED PHARMACEUTICALS, INC., et al. <br>     Defendants. | Case No. 09-cv-958-TWT |
| RITE AID CORP., et al., <br>     Plaintiffs, <br>         v. <br> UNIMED PHARMACEUTICALS, INC., et al. <br>     Defendants. | Case No. 09-cv-2776-TWT |

| | |
|---|---|
| WALGREEN CO., et al.,<br>      Plaintiffs,<br><br>                  v.<br><br>UNIMED PHARMACEUTICALS, INC., et al.<br>      Defendants. | Case No. 09-cv-3019-TWT |

## DEFENDANTS PAR PHARMACEUTICAL COMPANIES, INC. AND PADDOCK LABORATORIES, INC.'S MOTION FOR CLARIFICATION OF THE COURT'S FEBRUARY 22, 2010 ORDER

Defendants Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc. respectfully move for clarification of the Court's February 22, 2010 Order [D.E. #50] granting in part and denying in part Defendants' motions to dismiss. In view of the Order's stated bases for dismissal, including that "only the sham litigation claim survives[,]" slip op. at 22, it is unclear whether any claim by the Direct Purchasers against the generic Defendants remains. Notably, *only Count II of the Direct Purchasers' three-count complaint mentions "sham litigation,"* e.g., Second Amended Complaint [Meijer D.E. #108] at ¶ 204, *and Count II is limited expressly to a single defendant: "Monopolization in Violation of Section 2 of the Sherman Act Against Solvay"* (in contrast to Counts I and III, which are expressly against "All Defendants").

The February 22 Order unequivocally dismisses all of the Plaintiffs' antitrust claims based on the settlements. *Compare* slip op. at 9 ("All of the Plaintiffs assert antitrust claims based on the settlements. They say that Solvay paid Watson, Par, and Paddock millions of dollars for agreeing not to sell generic AndroGel before August 31, 2015."), *with* slip op. at 16 ("Because the Plaintiffs do not allege that the settlements exceed the scope of the '894 patent, it does not matter if the Defendants settled their disputes with reverse payments. The Plaintiffs' reverse payment settlement claims must be dismissed.").

The February 22 Order separately addresses the sham litigation claim, which is raised only by the Direct Purchaser Plaintiffs. Slip op. at 9-10 ("The Direct Purchasers, but not the other Plaintiffs, also assert antitrust claims based on the Defendants' conduct before the settlements."). The Order describes the Direct Purchasers' separate claim based on Defendants' conduct prior to the settlements in four categories:

> They say that [1] Solvay filed sham infringement actions against Watson and Paddock; [2] Solvay improperly listed the '894 patent in the Orange Book; [3] all of the Defendants participated in a scheme to monopolize the market for generic AndroGel; and [4] Watson, Par, and Paddock agreed not to compete with each other in the market for generic AndroGel.

Slip op. at 10. Only the third and fourth categories address the generic Defendants.

2

As to the first category of pre-settlement conduct, the Order's "Sham Litigation" section details (i) Solvay's mistake regarding sodium hydroxide in the original '894 Patent and (ii) the alleged insufficiency of the written description of Solvay's patent. Slip op. at 18-21. The Order concludes that the sham litigation claim survives because these two issues involve questions of fact. Slip op. at 20, 21.

The only mention of the generic Defendants in the Order's "Sham Litigation" section appears to be a reference to the rejected reverse payment claim. Slip op. at 16 ("They allege that the generic Defendants conspired to restrain trade by entering into settlements of the sham litigation in exchange for a portion of Solvay's monopoly profits.").

As to the second category of pre-settlement conduct (i.e., Solvay's improper Orange Book listing), the Order appears to reject and dismiss this claim. Slip op. at 21-22 ("The components of this scheme include improper listing in the Orange Book, filing sham infringement actions, and reverse payment settlements. As discussed above, only the sham litigation claim survives.").

Finally, the Order expressly rejects and dismisses the Direct Purchasers' claims in the third and fourth categories of pre-settlement conduct—the only

categories addressing the generic Defendants. Slip op. at 21-23 ("Overall Scheme" section and "Agreements Between Watson, Par, and Paddock" section).

Thus, because the Order holds that only the sham litigation claim survives and expressly rejects all of the Direct Purchasers' claims regarding the generic Defendants' pre-settlement conduct, it is unclear what part, if any, of the Direct Purchasers' sham litigation claim remains against the generic Defendants—particularly when only Count II of the Direct Purchasers' complaint alleges sham litigation and that count is limited expressly to Defendant Solvay.

The logical conclusion from the Order's rejection of the Direct Purchasers' claims regarding the generic Defendants' pre-settlement conduct and the Direct Purchasers' framing of the sham litigation claim in Count II of their complaint as against Solvay only is that the generic Defendants are *not* subject to the Direct Purchasers' surviving sham litigation claim. Undersigned counsel represents to the Court that counsel for the Direct Purchasers disagree. Movants therefore respectfully request that the Court's entry of judgment confirm that no part of the Direct Purchasers' sham litigation claim remains as to the generic Defendants. Respectfully submitted, this 5th day of March, 2010.

4

|  |  |
|---|---|
| Eric Grannon* | /s/ Mark G. Trigg |
| J. Mark Gidley* | Mark G. Trigg |
| Stephen M. LeBlanc* | Georgia Bar No. 716295 |
| WHITE & CASE LLP | Ryan C. Grelecki |
| 701 Thirteenth Street, N.W. | Georgia Bar No. 245068 |
| Washington, DC  20005 | GREENBERG TRAURIG, LLP |
| (202) 626-3600 (telephone) | The Forum |
| (202) 639-9355 (facsimile) | 3290 Northside Parkway, Suite 400 |
| egrannon@whitecase.com | Atlanta, GA  30327 |
| mgidley@whitecase.com | (678) 553-2100 (telephone) |
| sleblanc@whitecase.com | (678) 553-2212 (facsimile) |
|  | triggm@gtlaw.com |
|  | greleckir@gtlaw.com |

* Admitted *Pro Hac Vice*.  Practicing pursuant to JPML Rule 1.4.

*Counsel for Defendants Par Pharmaceutical Companies, Inc. & Paddock Laboratories, Inc.*

*Counsel for Defendants Par Pharmaceutical Companies, Inc. & Paddock Laboratories, Inc.*

## **L.R. 7.1(D) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), specifically Times New Roman 14 point.

Respectfully submitted this 5th day of March, 2010.

/s/ Mark G. Trigg
Mark G. Trigg
Georgia Bar No. 716295
GREENBERG TRAURIG, LLP
3290 Northside Parkway, Suite 400
Atlanta, GA  30327
(678) 553-2100 (telephone)
(678) 553-2212 (facsimile)
triggm@gtlaw.com

*Counsel for Defendants Par Pharmaceutical Companies, Inc. & Paddock Laboratories, Inc.*