IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | CASE NO. 1:09-MD-2084-TWT<br><br>DIRECT PURCHASER CLASS ACTIONS<br><br>DIRECT PURCHASER INDIVIDUAL ACTIONS |
| ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>UNIMED PHARMACEUTICALS, INC., ET AL.<br><br>Defendants. | CASE NO. 1:09-CV-956-TWT |
| LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,<br><br>Plaintiff,<br><br>v.<br><br>UNIMED PHARMACEUTICALS, INC., ET AL.,<br><br>Defendants. | CASE NO. 1:09-CV-957-TWT |
| MEIJER, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>UNIMED PHARMACEUTICALS, INC., ET AL.<br><br>Defendants. | CASE NO. 1:09-CV-958-TWT |

| | |
|---|---|
| **STEPHEN L. LAFRANCE PHARMACY, INC. ET AL.**<br><br>Plaintiffs,<br><br>v.<br><br>**UNIMED PHARMACEUTICALS, INC., ET AL.**<br><br>Defendants. | **CASE NO. 1:09-CV-2913-TWT** |
| **RITE AID CORPORATION, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNIMED PHARMACEUTICALS, INC., ET AL.**<br><br>Defendants. | **CASE NO. 1:09-CV-2776-TWT** |
| **WALGREEN CO., ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNIMED PHARMACEUTICALS,  LLC, ET AL.**<br><br>Defendants. | **CASE NO. 1:09-CV-3019-TWT** |
| **SUPERVALU, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNIMED PHARMACEUTICALS, LLC, ET AL.**<br><br>Defendants. | **CASE NO. 1:10-CV-1024-TWT** |

## DEFENDANTS' MOTION TO COMPEL & MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure, Local Rule 37.1 (N.D. Ga.), and other applicable law, Defendants Abbott Products, Inc. f/k/a/ Solvay Pharmaceuticals, Inc. (hereinafter "Solvay"), Unimed Pharmaceuticals, LLC, Watson Pharmaceuticals, Inc., Paddock Laboratories, Inc., and Par Pharmaceutical Companies, Inc. (collectively "Defendants") respectfully move the Court for an Order compelling the Direct Purchaser Plaintiffs[1] ("Plaintiffs" or "DPPs") to provide adequate responses to Defendants' First Consolidated Requests for Production of Documents to Direct Purchaser Plaintiffs.

---

[1] The term "Direct Purchaser Plaintiffs" refers to both plaintiffs pursuing class actions on behalf of direct purchasers of AndroGel as well as plaintiffs who are pursuing parallel individual claims. The first group of consists of Rochester Drug Cooperative, Inc., Louisiana Wholesale Drug Co., Inc., Meijer, Inc., Meijer Distribution, Inc., Stephen L. LaFrance Holdings, Inc., and Stephen L. LaFrance Pharmacy, Inc. (d/b/a SAJ Distributors). *See Rochester Drug Co-Op., Inc. v. Unimed Pharms., Inc.*, No. 09-cv-00956 (N.D. Ga.); *La. Wholesale Drug Co., Inc. v. Unimed Pharms., Inc.*, No. 09-cv-00957 (N.D. Ga.); *Meijer, Inc. v. Unimed Pharms., Inc.*, No. 09-cv-00958 (N.D. Ga.); and *Stephen L. LaFrance Pharm., Inc. v. Unimed Pharms., Inc.*, No. 09-cv-02913 (N.D. Ga.). The second group consists of Rite Aid Corp., Rite Aid Headquarters Corp., JCG (PJC) USA, LLC (the parent company of Maxi Drug, Inc. (d/b/a Brooks Pharmacy) and Eckerd Corp. (collectively, "Brooks/Eckerd")), CVS Pharmacy, Inc., Caremark L.L.C., Walgreen Co., Safeway, Inc., American Sales Co., Inc., HEB Grocery Co., LP, and Supervalu, Inc. *See Rite Aid Corp. v. Unimed Pharms., Inc.*, No. 09-cv-2776 (N.D. Ga.); *Walgreen Co. v. Unimed Pharms., LLC*, No. 09-cv-3019 (N.D. Ga.); and *Supervalu, Inc. v. Unimed Pharms., LLC*, No. 10-cv-1024 (N.D. Ga.).

12181093

## I.   INTRODUCTION

This motion raises two related issues: (1) Plaintiffs' refusal to produce documents in the possession of the actual claimants from whom the Plaintiffs here obtained assignments, and (2) Plaintiffs' refusal to produce "downstream discovery" relating to class certification, as mandated by *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003).

**Assignments.** Three Fortune 100 companies account for the vast majority of direct purchases of pharmaceuticals in this country and thus hold the vast majority of the "direct purchaser" claims in this case. These three companies (the wholesalers Cardinal Health, Inc., McKesson Corp., and AmerisourceBergen Corp.) along with another 20 or so sophisticated companies collectively hold over 98% of the asserted damage claims. Yet *none* of these companies is a plaintiff here. Instead, three of these wholesalers, Cardinal Health, Inc., McKesson Corp., and Frank W. Kerr Co. have assigned a portion of their total claims to eleven of the thirteen "direct purchaser" plaintiffs here. (The only plaintiffs that are not proceeding by assignment are Louisiana Wholesale Drug Co., Inc. and Rochester Drug Cooperative, Inc., who made small direct purchases of their own.)

Through this unusual arrangement, the DPPs and their counsel seek to shield the companies with the actual claims — and presumably with actual

documents and data relevant to this case — from discovery and other litigation obligations.  Plaintiffs have thus refused to produce documents held by their assignors.  Plaintiffs have refused even to *ask* their assignors to produce the documents Defendants have requested.  Plaintiffs have now gone so far as to try to block Defendants from subpoenaing documents from their assignors on the theory that they are protected from discovery as absent class members.  The problem and unfairness of Plaintiffs' position is exacerbated by Plaintiffs' apparent ability to obtain the discovery *they want* from their assignors.  The assignments are thus being used as both a sword with which to attack Defendants and a shield to hide from discovery obligations.

The DPPs and their assignors cannot have it both ways.  The DPPs cannot be allowed to argue that they stand in the shoes of their assignors for purposes of asserting millions of dollars in claims, but then step out of those shoes when it comes time to provide discovery about the assigned claims.  To permit such tactics would undermine our system of litigation.  Any plaintiff could avoid reciprocal disclosure and frustrate the fact-finding mission of litigation through the mechanism of an assignment.

That is why courts have required plaintiffs proceeding under assignment in other complex litigation to produce responsive discovery from their

12181093

3

assignors as if they were parties.  If the DPPs will not do so or their assignors are unwilling to cooperate, the assigned claims should be dismissed.  Defendants should not have to litigate against illusory plaintiffs who can demand damages but not provide discovery.

"**Downstream Discovery**."  As discussed in Defendants' motions to dismiss, the *Valley Drug* litigation concerned pharmaceutical antitrust claims brought against Abbott and two generic companies by many of these same plaintiffs represented by many of the same plaintiffs' counsel.  In that case, the Eleventh Circuit reversed the direct purchaser class certification on interlocutory appeal because plaintiffs had failed to prove that all of the putative class members were actually injured by the challenged conduct, *i.e.*, that all of them would have been economically better off with earlier generic entry of the drug at issue.  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003).  The Court explained that if earlier generic entry could have produced "winners and losers" among the proposed class, then the class could not be certified over that intractable conflict.  The named plaintiffs cannot adequately represent the interests of companies who stood to benefit from the conduct that the named plaintiffs are challenging.  The Eleventh Circuit specifically mandated so-called "downstream discovery" from the named plaintiffs and absent class members detailing the prices

12181093

4

at which they bought and sold the drugs at issue, and their profits, so that the court could determine whether the proposed class contained winners and losers.

Plaintiffs and their counsel are very familiar with this process because on remand in *Valley Drug*, the parties engaged in precisely this type of discovery. The end result there was that the plaintiffs were unwilling or unable to obtain the discovery mandated by the Eleventh Circuit, and were similarly unwilling or unable to meet their burden of showing that the members of the proposed class were all similarly situated relative to the challenged conduct, *i.e.*, that they were all harmed by the alleged delay in entry of the generic drug. The *Valley Drug* district court thus denied class certification even without any affirmative evidence of a conflict among class members. *See In re Terazosin Hydrochloride Antitrust Litigation*, 223 F.R.D. 666 (S.D. Fla. 2004).

In this case, the DPPs are once again arguing that they have no intention of trying to prove with actual data that the class members are all similarly situated. That is their choice, but now, even in the face of *Valley Drug*, they insist that the Defendants have no right to downstream discovery. There is no basis for this position. All of the DPPs (including those DPPs not asserting class claims but who are members of the proposed classes) should be required to provide downstream discovery to show whether putative class members benefited or were

harmed by the alleged delay in generic entry. *Valley Drug*, 350 F.3d at 1189. And, as discussed above, they should be required to provide this discovery from their *assignors*, who hold the relevant data.

## II.   FACTUAL BACKGROUND

The Direct Purchaser Plaintiffs allege that Defendants engaged in the settlement of sham patent infringement suits, thereby allowing Solvay to maintain a monopoly in a purported market for AndroGel, a medication approved by the Food and Drug Administration for the treatment of low testosterone.  As a result of Defendants' alleged conduct, Plaintiffs contend that they (and other members of the putative class of direct purchasers) were denied the opportunity to purchase lower-priced generic alternatives to AndroGel.  Defendants deny all of these allegations.

Of the approximately thirteen "*direct* purchaser plaintiffs," eleven are pharmacies which are actually *indirect* purchasers.  They are bringing this action as the purported partial assignees of the claims of the wholesale distributors Cardinal Health, Inc., McKesson Corp., and Frank W. Kerr Co., who are actual direct purchasers.[2]  As far as Defendants are aware, these pharmacies did not purchase

---

[2] *See* Second Am. Compl. ¶ 23, *Meijer, Inc.*, No. 09-cv-958 (N.D. Ga. May 29, 2009) ("Meijer is the assignee of the claims of Frank W. Kerr Co., which purchased AndroGel directly from one or more of the Defendants during the Class

(or only purchased *de minimis* quantities of) AndroGel directly from Solvay during

the relevant time period.  The purported assignors of these pharmacies' claims —

which presumably remain among the largest claimants in the purported classes

even after the assignments — are the real parties in interest here.[3]

On September 7, 2010, Defendants served the DPPs with consolidated

discovery requests, seeking the production of documents and information

regarding Plaintiffs' and their assignors' purchases and sales of AndroGel.  For

example, Defendants requested information about the volume, prices, terms, and

---

Period . . . [and] resold to Meijer at least some of the AndroGel that it purchased
directly from Defendants"); Complaint ¶ 9, *Stephen L. LaFrance Pharm. Inc.*, No.
09-cv-2913 (N.D. Ga. Mar. 31, 2009) ("SAJ and LaFrance are the assignees of
McKesson Corp., which purchased Androgel directly from Defendants"); Compl.
¶¶ 23-24, 26, *Rite Aid Corp.*, No. 09-cv-2776 (N.D. Ga. June 17, 2009) ("Rite Aid
[Brooks/Eckerd, Caremark] is the assignee of McKesson's antitrust claims with
respect to AndroGel that was subsequently resold to Rite Aid [Brooks/Eckerd,
Caremark]"; *Id.* ¶ 25 ("CVS is the assignee of McKesson's and Cardinal's antitrust
claims with respect to AndroGel that was subsequently resold to CVS"); Compl. ¶¶
23, 25-26, *Walgreen Co.*, No. 09-cv-3019 (N.D. Ga. June 29, 2009) ("Walgreen
[American Sales Company, HEB Grocery] brings this action in its own behalf and
as the assignee of Cardinal Health, Inc."); *Id.* ¶ 24 ("Safeway brings this action on
its own behalf and as the assignee of McKesson Corporation"); Compl. ¶ 23,
*Supervalu, Inc.*, No. 10-cv-1024 (N.D. Ga. Apr. 7, 2010) ("Supervalu brings this
action in its own behalf and as the assignee of McKesson Corporation").

[3] Although Direct Purchaser Plaintiffs have represented that they will produce all
assignment agreements upon which they rely in bringing this action, Plaintiffs have
not yet produced the purported agreements or any of the related documents.
Accordingly, Defendants are presently unable to assess the validity or
enforceability of these agreements, or the scope of Plaintiffs' rights and obligations
thereunder, and do not waive any related arguments.

12181093

7

reimbursements associated with these purchases and sales. *See, e.g.*, Ex. A, Reqs. Nos. 38-39 & 41-43.[4]  Defendants also sought documents relating to market definition (a necessary analysis in almost any antitrust case) such as formularies, substitution programs, and purchase and sale data for competing testosterone replacement therapies. *See, e.g., id.*, Reqs. Nos. 21-22, 24-25, 28-29, & 44-45.

Defendants expressly asked Plaintiffs to produce responsive documents in the possession of any of their assignors. *See id.,* Definition No. 13 ("'You,' 'Your,' or 'Plaintiffs' also includes assignors to Plaintiffs of claims relating to this litigation.").  Plaintiffs responded that they would not produce any documents in the possession of their assignors. *See* Exs. B & C, General Objection Nos. 2 & 16; Ex. D, General Objections E & L.  Plaintiffs also objected to any request they believed sought downstream discovery. *See* Exs. B & C , Resps. to Reqs. Nos. 21, 24, 25, 28-33, 38-39, 41, 43-45; Ex. D, General Objection K.

As a result of the DPPs' stonewalling, Defendants have served third-party subpoenas on the assignors and other significant direct purchasers in an effort to obtain relevant information, notwithstanding Defendants' right to obtain this discovery directly from the DPPs.  But instead of cooperating with Defendants'

---

[4] All exhibit citations refer to the exhibits attached to the concurrently filed Declaration of Elisabeth J. Neubauer.

third-party discovery efforts, Plaintiffs now argue that Defendants are prohibited from subpoenaing absent class members — including the assignors whose direct purchases of AndroGel in fact account for the bulk of the class claims.  Plaintiffs have even written to their assignors and other subpoena recipients to discourage them from producing documents.  *See* Ex. I.

Defendants have met and conferred with Direct Purchaser Plaintiffs multiple times, both in writing and telephonically, over a period of several weeks regarding the deficiencies in Plaintiffs' discovery responses, but the parties have been unable to resolve these disputes.  In a meet and confer conference on October 22, Plaintiffs continued in their refusal to produce any documents from their assignors, claiming that they have no obligation under the discovery rules to do so. Ex. E at 2.  On November 22, Plaintiffs confirmed in writing that they would not produce any of the "downstream discovery" mandated by *Valley Drug*.  Ex. H at 2. They also confirmed that they would not produce documents from their assignors and *that they had not even taken steps to ensure the preservation of these documents.  See id.* at 1.

## III.   ARGUMENT

### A.   Plaintiffs Must Produce Discovery From Their Assignors.

Eleven of the thirteen DPPs claim to have standing (almost entirely if not entirely) by virtue of assignments from large wholesalers that are not named plaintiffs here.[5]   Defendants have thus requested that these Plaintiffs produce discovery from their assignors, whose purchases constitute the vast majority of the claims asserted here:

> 'You,' 'Your,' or 'Plaintiffs' also includes assignors to Plaintiffs of claims relating to this litigation.

Ex. A, Definition No. 13.   Plaintiffs responded on October 8, 2010 that they would not produce any documents in the possession of their assignors:

> Plaintiffs object to the definition of 'Plaintiffs' and 'you' as it calls for the production of documents that are outside the custody or control of Plaintiffs, including documents . . . in the possession of assignors.

Exs. B & C, General Objection No. 16.   *See also* General Objection No. 2 (objecting to requests seeking "production of documents from persons or entities that are not parties to this action"); Ex. D, General Objections E & L (same).

---

[5] Without the assignments, Plaintiffs that made only indirect purchases of AndroGel would not have standing to recover damages under the federal antitrust laws. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) (only direct purchasers have standing to sue for alleged overcharge damages under Section 4 of the Clayton Act).

Although Plaintiffs claim to be standing in the shoes of these wholesalers, they have steadfastly refused to produce documents from their assignors, including documents reflecting the market for testosterone replacement therapies, the assignors' purchases and sales of AndroGel, and the relative profitability of the distribution of AndroGel as compared to generic alternatives, claiming that they "do not control" their assignors. Ex. F at 1-2 ("Plaintiffs do not control their assignors, they are separate and unrelated companies; nor do Plaintiffs have an ability to require their assignors to put a litigation hold over their documents."). Plaintiffs have now also sought to block Defendants from subpoenaing these assignors. The upshot of this strategy is clear: Plaintiffs are attempting to pursue millions of dollars of claims on behalf of huge Fortune 100 companies while shielding those companies from any discovery or other litigation obligations.

To make matters worse, Plaintiffs seem to be able to obtain the discovery *they want* from their assignors. For example, some of the Plaintiffs served a subpoena on McKesson and Cardinal and obtained the AndroGel purchase data they desire to support their claims, although this data has not yet been shared with the Defendants. *See* Ex. G at 2. Plaintiffs also admitted that they have previously obtained data from their assignors in support of their claims in other

pharmaceutical antitrust litigation. *Id.* Plaintiffs have failed to explain, however, why they cannot obtain from their assignors the documents and data that *Defendants* have requested.

What Plaintiffs fail to accept is that by obtaining assignments of the wholesalers' claims, they undertook the obligation to provide discovery as if the assignors were parties. And for their part, the wholesalers (who are presumably receiving some form of consideration for their assignment) cannot avoid discovery by assigning their claims to Plaintiffs, some of whom are in turn bringing class actions on the wholesalers' behalf, and then act as though they are uninterested third parties for discovery purposes. If that were permitted, parties with legal claims could and routinely would skirt their discovery obligations by selling their claims to professional plaintiffs. Or parties could assign a small portion of their claims to plaintiffs who bring class actions on the assignors' behalf and largely for the assignors' benefit, thus arranging for their claims to be asserted without facing any discovery obligations.

Federal courts have roundly rejected such machinations, recognizing that the right to sue cannot be transferred "free of the obligations that go with litigating a claim." *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005). *See also JPMorgan Chase Bank, N.A. v. KB Home*, No. 08-cv-

1711, 2010 WL 1994787, at *4-*6 (D. Nev. May 18, 2010) (plaintiffs must

produce documents from assignors or risk sanctions because "[i]t would be unfair

to allow [plaintiffs] to stand in the shoes of the original lenders in order to pursue

this action without requiring them to produce discovery that the original lenders

would be required to produce if they had brought the action themselves");

*Firemen's Mutual Ins. Co. v. Erie–Lackawanna R.R. Co.*, 35 F.R.D. 297, 298-99

(N.D. Ohio 1964) (requiring assignee to respond to interrogatories based on

information in the possession of its non-party assignor: "plaintiff is before this

Court seeking to recover for a wrong which was done to another. . . . To allow the

plaintiff to take advantage of that circumstance would be to give it an advantage

not intended or appropriate under the philosophy of the Federal Rules of Civil

Procedure."). As one court explained, "[t]reatment of both assignor and assignee

as parties for discovery . . . is proper when to do otherwise would frustrate

discovery, regardless of whether this frustration is intentional or not. . . . Otherwise

a litigant by contracting with a third party could nullify and evade the rules of

procedure." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D.

135, 146-149 (S.D.N.Y. 1997) (internal quotations marks and citations omitted)

(granting motion to compel production of all relevant documents in the assignor's

possession, where assignee knew relevant documents were in the assignor's possession but did not expressly secure the legal right to obtain them).

To take one example, in *Winnick*, JPMorgan brought a tort lawsuit on behalf of the assignees of a number of lenders, but then objected to discovery requests seeking documents from those lenders. JPMorgan argued it did not have "possession, custody, or control" of the lenders' documents and that the defendants could just as well subpoena the lenders directly. The court held that "[v]iewed from any angle [JPMorgan's] position cannot be correct." *Winnick*, 228 F.R.D. at 506. The court required JPMorgan to produce the documents held by its assignors because "[i]t is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim." *Id.* The court specifically rejected the idea that the defendants should have to proceed by third-party subpoena because that would "shift[] onto the defendants the cost of third-party discovery." *Id.* at 507. "After all," the court reasoned, "since the assignees are suing in the shoes of the original lenders, having purchased the right to bring the lawsuit, there is nothing unfair about imposing on them the cost of purchasing cooperation or otherwise complying with discovery obligations." *Id.*

Like JPMorgan in *Winnick*, Plaintiffs argue that they do not have possession of their assignors' documents. But the Federal Rules of Civil Procedure are not so narrowly cabined. Courts have considerable flexibility in ensuring the fairness of the discovery process. Rule 34(a) encompasses documents in a party's "possession, custody or control," which is an expansive concept. Where necessary to further the purposes of reciprocal disclosure, courts have construed control to include the "right, authority, or practical ability to obtain the documents from a non-party to the action." *In re Wright*, No. 04-94519, 2005 WL 6488101, at *3 (Bankr. N.D. Ga. Aug. 9, 2005); *see also In re NTL, Inc. Secs. Litigation*, 244 F.R.D. 179 (S.D.N.Y. 2007) (citing cases).

In the context of an assignment of a legal claim, it is incumbent upon the assignee to contractually secure the right to obtain the necessary documents as part of the assignment agreement. And even if the assignment agreements here do not expressly entitle Plaintiffs to obtain their assignor's documents, the assignors' cooperation with discovery may be an implied warranty of the assignment. *See, e.g.,* RESTATEMENT (SECOND) OF CONTRACTS, § 333 (1)(A) (assignments carry implied warranties that bind assignors to do nothing that would defeat or impair the value of the assigned claims). This is especially so where the assignee obtains the assignment for the express purpose of bringing litigation. Moreover, Plaintiffs

12181093

15

maintain long term business relationships with their assignors that might provide a practical ability to obtain their assignors' cooperation.[6]

The Supreme Court has recently addressed the ability of courts to compel discovery from non-party assignors. In *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008), the Court found that assignees have standing to sue even where they intend to remit their recovery back to their assignors. *Id.* at 271. The defendants argued that the Court should deny standing because, among other reasons, the assignees might not be able to produce documents held by their assignors. The Supreme Court rejected this argument because "a district court can, if appropriate, *compel a party to collect and to produce* whatever discovery-related information is necessary." *Id.* (emphasis added). Indeed, that is exactly what happened in *Sprint*: the assignees took the position that their assignors were immune from party discovery because they were not participating in the suit, *see* Br. for Pet'rs at 8, *Sprint Communications Co.,*

_____

[6] In this case, it is apparent that at least one of the assignees has the practical ability to obtain its assignor's documents. In another recent pharmaceutical antitrust case, plaintiff-assignee Meijer demonstrated its ability to obtain documents from its wholesale assignor, Frank W. Kerr, Co., producing transactional data from Kerr and representing that "Meijer will produce information from Kerr on the same basis on which Meijer is making its own production." Biovail Defs.' Mot. to Compel Discovery Ex. 1 at 2, *In re Wellbutrin XL Antitrust Litig.*, No. 2:08-cv-02431 (E.D. Pa. Feb. 8, 2010) (November 12, 2009 letter from Meijer's counsel). Meijer has not made the same commitment here.

*L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008) (No. 07-552), 2008 WL 466094 at *8, but the Special Master presiding over the case held that the assignors were under the assignees' control for discovery purposes and ordered the assignees to produce the requested information, *see* Br. for Resp'ts at 49, *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008) (No. 07-552), 2008 WL 685065 at *49. And that is what should happen here: the Court should compel Plaintiffs to collect and produce documents held by their assignors, whether through the enforcement of explicit or implicit contractual rights or through subpoenas of their own.[7]

If Plaintiffs — who, it must be noted, are sophisticated antitrust litigants that have brought many such suits over the past decade — made the decision not to seek the right to obtain cooperation and discovery from their assignors, that cannot be a basis to deny Defendants the ability to construct a

---

[7] In the alternative, the Court could order that the assignors be treated as parties for discovery purposes. Courts have often required assignors to respond directly to discovery requests as if they were parties. *See In re Infant Formula Antitrust Litig.*, 1992 WL 503465, at *9-*10 (N.D. Fla. Jan. 13, 1992) (granting motion to treat non-party assignor as party for purposes of discovery, and ordering assignor to respond directly to Rule 34 requests); *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 34-35 (S.D.N.Y. 1984) ("To shield [the French governmental] agencies from discovery because they had [plaintiff] do their bidding is unacceptable."); *Natta v. Hogan*, 392 F.2d 686, 691 (10th Cir. 1968) (requiring non-party assignee of patent to comply with Rule 34 discovery requests).

12181093

17

defense or shift to Defendants the burden of enforcing subpoenas in jurisdictions around the country.  To permit such a gambit would be an invitation for future plaintiffs to use assignments to abuse the discovery process.  Plaintiffs presumably obtained these as-yet-undisclosed assignments in anticipation of litigation, and for the specific purpose of filing the claims in this and similar cases.  They were obliged in that effort to ensure that they could comply with their discovery obligations.  *See Winnick*, 228 F.R.D. at 507 (holding that if "the assignees failed to obtain rights to insist on cooperation from their assignors in providing such discovery, and cannot persuade the [assignors] to cooperate now, that is their problem, not defendants'."); *Bank of New York*, 171 F.R.D. at 148-49 (ordering the assignee party to "produce all documents relevant to the issues in this action" in its assignor's possession: to hold otherwise "would be patently unfair" and permit an assignee "to circumvent the rules of discovery" by "relegating" the opposing party to seek "non-party" discovery from the assignor of the claims at issue).

If Plaintiffs cannot obtain the relevant documents held by their assignors — whether through contractual rights, business relationships, or subpoenas — then their assigned claims should be dismissed.[8]

---

[8] As noted above, in an abundance of caution Defendants have served subpoenas on these companies in a separate effort to obtain the relevant information. Plaintiffs have sought to interfere with those subpoenas and have sought to

**B.**   **Plaintiffs Must Produce "Downstream Discovery" under *Valley Drug.***

Defendants seek the "downstream discovery" necessary to assess whether putative class members benefited or were harmed by the alleged delay in entry of a generic alternative to AndroGel.  Defendants have thus requested specific data relating to the volume, pricing, terms, and reimbursements of the DPPs' (and their assignors') purchases and sales of AndroGel, as well as documents regarding the relative profitability of the distribution and/or servicing of sales of brand-name pharmaceuticals such as AndroGel, as compared to generic alternatives.[9]  For example, Request No. 30 seeks:

> Documents concerning whether Your distribution and/or servicing of sales of AndroGel® would be more or less

---

discourage their assignors from responding to the subpoenas.  Trying to enforce those subpoenas would not only be expensive and burdensome but would require multiple judges to independently consider and resolve the same questions regarding the assignors' purchases of AndroGel, the availability of "downstream discovery," the market for testosterone therapy, etc. — with the possibility of inconsistent results.  *See Winnick*, 228 F.R.D. at 507 (holding that it would be "unfair" to require defendants to "have to persuade courts in other districts, unfamiliar with the litigation, to enforce subpoenas").

[9] Defendants' second set of document requests specifically seeks purchase and sales information for a basket of six potentially comparable drugs to AndroGel. *See, e.g.*, Ex. J, Reqs. Nos. 49-50.  This is because, unlike in *Valley Drug*, a generic alternative to AndroGel has not yet entered the market.  As a result, Defendants require data on economically similar drugs to AndroGel to show which putative class members would have been better or worse off had a generic entered in 2004-2006.

12181093

profitable than distribution and/or servicing of generic
Testosterone Replacement Therapy products.

Ex. A, Req. No. 30.  *See also* Reqs. Nos. 29, 31-33, 38-39 & 43.  Plaintiffs

responded and objected to these requests as follows:

> Direct Purchaser Plaintiffs object to the requests to the
> extent they seek documents or information related to
> Direct Purchasers Plaintiffs' own sales, prices or profits –
> often referred to as "downstream" discovery -- because
> such discovery is irrelevant and contrary to the principles
> established by the Supreme Court in *Hanover Shoe v.
> United Shoe Machinery Corp.,* 392 U.S. 481 (1968) and
> *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Under
> these controlling cases, a direct purchaser -- such as the
> Direct Purchaser Plaintiffs here -- is entitled to recover
> the "full amount" of an overcharge, and inquiry into the
> "downstream" effects of the overcharge -- including, for
> example, inquiry into the direct purchaser's own prices,
> sales and profits -- is irrelevant as matter of law. . . .
> Accordingly, Direct Purchaser Plaintiffs will not produce
> such "downstream discovery" in response to the
> Document Requests.

Ex. D, General Objection K.  *See also* Exs. B & C., Resps. Nos. 21, 24, 25, 28-33,

38-39, 41, & 43-45 ("Plaintiffs also object to this request insofar as it seeks

improperly and legally irrelevant downstream discovery.").

In *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189

(11th Cir. 2003), the Eleventh Circuit reversed a class certification decision

obtained by some of these same plaintiffs and counsel in another pharmaceutical

antitrust case against Abbott and two generic companies.  The Court held that class

12181093

20

certification was inappropriate where the plaintiffs had not shown the absence of a "fundamental conflict" whereby some class members are "harmed by the same conduct that benefited other members of the class." *Id.* Under *Valley Drug*, in order to obtain class certification, the named plaintiffs must show, *inter alia*, that all class members are similarly situated vis-à-vis the challenged conduct, *i.e.*, that they were all economically harmed by delayed generic entry. Class certification cannot be permitted if some "class members appear to benefit from the effects of the [settlement agreements] alleged to be wrongful by the named plaintiffs because their net economic situation is better off when branded drugs dominate the market." *Id.* at 1191. In such circumstances, the Court concluded, the interests of the named representatives are "potentially antagonistic to, or in conflict with, the interests and objectives of other class members." *Id.* at 1189. The named plaintiffs cannot represent the interests of absent parties that actually *benefitted* from the conduct being challenged as anticompetitive.

The Eleventh Circuit in *Valley Drug* gave two examples of how the economics of the pharmaceutical industry may result in some class members benefitting from delayed generic entry. First, some wholesalers' profits are proportional to the price of the pharmaceuticals, so they make more money on more expensive brand-name drugs than on generic drugs: "the wholesalers charge

12181093

21

more for, and collect more from, branded products than generic drugs." *Id.* at 1191; *see also Terazosin*, 223 F.R.D. at 673. This may not be the case for all wholesalers, and is probably not the case for retailers and other kinds of class members, but is likely true for some class members. Second, some wholesalers may lose sales volume as a result of "generic bypass," whereby generic manufacturers sell directly to retail pharmacies rather than through wholesalers. 350 F.3d at 1191; 223 F.R.D. at 673 n.13. Again, that would mean that some wholesalers are worse off with earlier generic entry. Given continual business changes in the industry, there may now be additional reasons that some class members benefit from delayed generic entry.

The Eleventh Circuit reversed and remanded specifically to permit further discovery so that the parties, and the district court, could evaluate whether "the most significant members of the certified class arguably experienced a net gain from the conduct alleged to be illegal by the named representatives." *Valley Drug*, 350 F.3d at 1188. The Court specifically ordered that "downstream discovery" of the potential class members' "sales, volume, pricing, and discount records" was required to assess the extent to which there were "antagonistic interests" within the purported class of direct purchasers. *Id.* at 1193-94. On remand, the defendants were given the right to seek this information from the 25

largest absent class members, and the onus was placed on the named plaintiffs to procure the compliance of the absent class members.  Ultimately, class certification was denied based on (1) class plaintiffs' "inability to comply with the subpoenas or a refusal to cooperate;" and (2) the failure of the named plaintiffs to prove that all members of the proposed class would have been better off with earlier generic entry.  *Terazosin*, 223 F.R.D. at 674

Now, contrary to the binding precedent of *Valley Drug*, Plaintiffs refuse to produce even their own documents and data — much less ensure production by absent class members — "on the important issue of whether some class members have separate, antagonistic interests from the named representatives." 350 F.3d at 1187.  Plaintiffs maintain that they are not required to produce any "downstream discovery" here because they are not going to rely on it — just as they chose not to rely on such data in *Valley Drug*.  Instead, the named Plaintiffs say that it does not matter if class members are differently situated economically, and assert that they will rely on unspecified "direct evidence" in support of class certification.  For example, the named Plaintiffs have suggested they might rely on statements from putative class members, who do not want to be left out of any damages award, to meet their burden.  They have also suggested that they might rely on evidence that in other pharmaceutical antitrust cases in which

classes have been certified, none of the direct purchaser class members has opted out. *See* Ex. G at 3.

Be that as it may, Defendants must be afforded an adequate opportunity to develop their opposition to class certification, and to that end are entitled to discovery into the subjects mandated by the Eleventh Circuit in *Valley Drug*. To the extent, for example, that Plaintiffs purport to introduce testimony that the individual class members would have been better off with generic entry, Defendants are obviously entitled to the underlying data with which to challenge such assertions. In the absence of a stipulation that some class members are worse off with generics than with brand-name drugs (which Plaintiffs have declined to provide, *see id.*), Plaintiffs' continued refusal to provide the requested "downstream discovery" or any information about the supposed evidence they intend to put forward in support of class certification will seriously hamstring Defendants' ability to contest class certification.

Defendants thus ask the Court to compel "downstream discovery" of the DPPs' (and their individual assignors') sales, volume, and pricing records of AndroGel, as well as documents concerning whether the distribution and/or servicing of sales of AndroGel and economically similar brand-name pharmaceuticals would be more or less profitable than their generic alternatives.

12181093

24

## IV.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court issue an Order compelling Direct Purchaser Plaintiffs to (1) produce all responsive documents and information from their individual assignors as if they were parties; and (2) produce "downstream discovery" regarding the sales, volume, and pricing records of AndroGel, as well as the relative profitability of the distribution and/or servicing of sales of AndroGel and economically similar brand-name pharmaceuticals as compared to their generic alternatives, in order to allow Defendants to determine whether any of the proposed class members "gained a net benefit" from delayed generic entry, such that there were "'winners' and 'losers' that would defeat class certification." *Terazosin*, 223 F.R.D. at 674.

Respectfully submitted this 3rd day of December 2010.

/s/ Elisabeth J. Neubauer___
Jeffrey I. Weinberger*
Rohit K. Singla*
Elisabeth J. Neubauer*
(California Bar No. 241116)
Munger, Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071
(213) 683-9100 (telephone)
(213) 683-5100 (facsimile)
jeffrey.weinberger@mto.com
rohit.singla@mto.com
elisabeth.neubauer@mto.com

Teresa T. Bonder**
Georgia Bar No. 703969
Matthew D. Kent**
Georgia Bar No. 526272
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)
teresa.bonder@alston.com
matthew.kent@alston.com

**Counsel for Unimed
Pharmaceuticals, LLC and Abbott
Products, Inc. f/k/a Solvay
Pharmaceuticals, Inc. in all actions
except Walgreen Co. v. Unimed
Pharmaceuticals, LLC, 1:09-cv-3019

John Roberti*
Mark W. Ryan*
Christopher J. Kelly*
Rebecca Valentine*
Mayer Brown LLP
1909 K Street NW
Washington, D.C. 20006
202-263-3000 (telephone)
202-263-3300 (facsimile)
jroberti@mayerbrown.com
mryan@mayerbrown.com
cjkelly@mayerbrown.com
rvalentine@mayerbrown.com

* Practicing pursuant to this Court's
Initial Case Management Order

*Counsel for Unimed Pharmaceuticals, LLC and Abbott Products, Inc. f/k/a Solvay
Pharmaceuticals, Inc.*

Eric Grannon*
J. Mark Gidley*
White & Case LLP
701 13th Street, NW
Washington, D.C. 20005
(202) 626-3600 (telephone)
(202) 639-9355 (facsimile)
egrannon@whitecase.com
mgidley@whitecase.com

* Practicing pursuant to this Court's
Initial Case Management Order

Mark G. Trigg
Georgia Bar No. 716295
Ryan C. Grelecki
Georgia Bar No. 245068
Greenberg Traurig LLP
3290 Northside Parkway, Suite 400
The Forum
Atlanta, GA 30327
(678) 553-2415 (telephone)
(678) 553-2212 (facsimile)
triggm@gtlaw.com
greleckir@gtlaw.com

*Counsel for Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc.*

12181093

26

Steven C. Sunshine*
Julia K. York*
Skadden, Arps, Slate, Meagher & Flom
LLP
1440 New York Avenue, NW
Washington, D.C. 20005
(202) 371-7000 (telephone)
(202) 393-5760 (facsimile)
steven.sunshine@skadden.com
julia.york@skadden.com

* Practicing pursuant to this Court's
Initial Case Management Order

David Alan Rabin
Georgia Bar No. 591469
Jason William Eakes
Georgia Bar No. 237048
Morris Manning & Martin, LLP
1600 Atlanta Financial Center
3443 Peachtree Road, N.E.
Atlanta, GA 30326-1044
(404) 233-7000 (telephone)
(404) 365-9532 (facsimile)
drabin@mmmlaw.com
jeakes@mmmlaw.com

*Counsel for Watson Pharmaceuticals, Inc.*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | CASE NO. 1:09-MD-2084-TWT<br><br>DIRECT PURCHASER CLASS ACTIONS<br><br>DIRECT PURCHASER INDIVIDUAL ACTIONS |
| ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,<br>　　　　　Plaintiffs,<br>　　　　　　　v.<br>UNIMED PHARMACEUTICALS, INC., ET AL.<br>　　　　　Defendants. | CASE NO. 1:09-CV-956-TWT |
| LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,<br>　　　　　Plaintiff,<br>　　　　　　　v.<br>UNIMED PHARMACEUTICALS, INC., ET AL.,<br>　　　　　Defendants. | CASE NO. 1:09-CV-957-TWT |
| MEIJER, INC., ET AL.,<br>　　　　　Plaintiffs,<br>　　　　　　　v.<br>UNIMED PHARMACEUTICALS, INC., ET AL.<br>　　　　　Defendants. | CASE NO. 1:09-CV-958-TWT |

12181093

**STEPHEN L. LAFRANCE PHARMACY, INC. ET AL.**

           Plaintiffs,

               v.

**UNIMED PHARMACEUTICALS, INC., ET AL.**

           Defendants.

**CASE NO. 1:09-CV-2913-TWT**

---

**RITE AID CORPORATION, ET AL.,**

           Plaintiffs,

               v.

**UNIMED PHARMACEUTICALS, INC., ET AL.**

           Defendants.

**CASE NO. 1:09-CV-2776-TWT**

---

**WALGREEN CO., ET AL.,**

           Plaintiffs,

               v.

**UNIMED PHARMACEUTICALS, LLC, ET AL.**

           Defendants.

**CASE NO. 1:09-CV-3019-TWT**

---

**SUPERVALU, INC.,**

           Plaintiff,

               v.

**UNIMED PHARMACEUTICALS, LLC, ET AL.**

           Defendants.

**CASE NO. 1:10-CV-1024-TWT**

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel hereby certifies that the foregoing

motion and memorandum of law has been prepared in accordance with Local Rule

5.1 using Times New Roman 14 point font.

Respectfully submitted this 3rd day of December 2010,

/s/ Elisabeth J. Neubauer
Elisabeth J. Neubauer*
California State Bar No. 241116
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9503 (Telephone)
(213) 683-4003 (Facsimile)
Elisabeth.Neubauer@mto.com

*Counsel for Unimed Pharmaceuticals,
LLC and Abbott Products, Inc. f/k/a
Solvay Pharmaceuticals, Inc*

* Practicing pursuant to this Court's
Initial Case Management Order

12181093

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | CASE NO. 1:09-MD-2084-TWT<br><br>DIRECT PURCHASER CLASS ACTIONS<br><br>DIRECT PURCHASER INDIVIDUAL ACTIONS |
| ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,<br><br>       Plaintiffs,<br><br>          v.<br><br>UNIMED PHARMACEUTICALS,  INC., ET AL.<br><br>       Defendants. | CASE NO. 1:09-CV-956-TWT |
| LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,<br><br>       Plaintiff,<br><br>          v.<br><br>UNIMED PHARMACEUTICALS,  INC., ET AL.,<br><br>       Defendants. | CASE NO. 1:09-CV-957-TWT |
| MEIJER, INC., ET AL.,<br><br>       Plaintiffs,<br><br>          v.<br><br>UNIMED PHARMACEUTICALS, INC., ET AL.<br><br>       Defendants. | CASE NO. 1:09-CV-958-TWT |

| | |
|---|---|
| **STEPHEN L. LAFRANCE PHARMACY, INC. ET AL.** | **CASE NO. 1:09-CV-2913-TWT** |
| Plaintiffs, | |
| v. | |
| **UNIMED PHARMACEUTICALS, INC., ET AL.** | |
| Defendants. | |
| **RITE AID CORPORATION, ET AL.,** | **CASE NO. 1:09-CV-2776-TWT** |
| Plaintiffs, | |
| v. | |
| **UNIMED PHARMACEUTICALS, INC., ET AL.** | |
| Defendants. | |
| **WALGREEN CO., ET AL.,** | **CASE NO. 1:09-CV-3019-TWT** |
| Plaintiffs, | |
| v. | |
| **UNIMED PHARMACEUTICALS,  LLC, ET AL.** | |
| Defendants. | |
| **SUPERVALU, INC.,** | **CASE NO. 1:10-CV-1024-TWT** |
| Plaintiff, | |
| v. | |
| **UNIMED PHARMACEUTICALS, LLC, ET AL.** | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed a true and correct copy of the foregoing **DEFENDANTS' MOTION TO COMPEL & MEMORANDUM OF LAW IN SUPPORT THEREOF** and **EXHIBITS** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filings to all counsel of record.

Dated: December 3, 2010

/s/ Elisabeth J. Neubauer
Elisabeth J. Neubauer*
California State Bar No. 241116
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9503 (Telephone)
(213) 683-4003 (Facsimile)
Elisabeth.Neubauer@mto.com

*Counsel for Unimed Pharmaceuticals,
LLC and Abbott Products, Inc. f/k/a
Solvay Pharmaceuticals, Inc.*

* Practicing pursuant to this Court's
Initial Case Management Order

12181093