IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| | **CASE NO. 1:09-MD-2084** |
| **IN RE ANDROGEL ANTITRUST LITIGATION (II)** | **DIRECT PURCHASER CLASS ACTIONS** |
| | **ORAL ARGUMENT REQUESTED** |
| **ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,** | |
| Plaintiff, | |
| v. | **CASE NO. 1:09-CV-956-TWT** |
| **UNIMED PHARMACEUTICALS, LLC, ET AL.,** | |
| Defendants. | |
| **LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,** | |
| Plaintiff, | |
| v. | **CASE NO. 1:09-CV-957-TWT** |
| **UNIMED PHARMACEUTICALS, LLC, ET AL.,** | |
| Defendants. | |
| **MEIJER, INC., ET AL.,** | |
| Plaintiffs, | |
| v. | **CASE NO. 1:09-CV-958-TWT** |
| **UNIMED PHARMACEUTICALS, LLC, ET AL.,** | |
| Defendants. | |

| | |
|---|---|
| **STEPHEN L. LAFRANCE PHARM., INC. ET AL.,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br><br>    **Defendants.** | **CASE NO. 1:09-CV-2913-TWT** |

**DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER DIRECTING DEFENDANTS TO WITHDRAW THE SUBPOENAS THEY SERVED ON ABSENT CLASS MEMBERS AND OTHERS AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ........................................................................1

BACKGROUND ..........................................................................5

THE EXPERIENCE IN VALLEY DRUG.................................................7

ARGUMENT ...........................................................................12

    I.    Neither Downstream Discovery nor Discovery from Absent
        Class Members is Permitted as a Matter of Course ............................12

        A.    Downstream Discovery is Irrelevant in Direct
               Purchaser Antitrust Cases .......................................12

        B.    Discovery from Absent Class Members is
               "Generally Improper." ............................................16

    II.    Nothing in *Valley Drug* Mandates the Discovery Defendants
        Seek – in fact, the History of that Case, Militates Against
        Permitting such Discovery ................................................19

    III.    The discovery sought is unjustifiably burdensome............................22

CONCLUSION .........................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Air Cargo Shipping Services Antitrust Litigation*,
 No. 1:06-md-01775, 2010 U.S. Dist. LEXIS 125623 (E.D.N.Y. Nov.
 24, 2010) ....................................................................................................12

*Amchem Products v. Windsor*,
 521 U.S. 591 (1997)...............................................................................4, 11

*In re Automotive Refinishing Paint Antitrust Litigation,* No. MDL 1426,
 2006 U.S. Dist. LEXIS 34129 (E.D. Pa. May 26, 2006).............................13

*Baldwin & Flynn v. National Safety Associate*,
 149 F.R.D. 598 (N.D. Cal. 1992) .................................................................18

*Bonner v. City of Prichard*,
 661 F.2d 1206 (11th Cir. 1981) ...................................................................23

*In re: Buspirone Patent & Antitrust Litigation*,
 210 F.R.D. 43 (S.D.N.Y. 2002)......................................................................4

*In re Carbon Dioxide Industrial Antitrust Litigation*,
 155 F.R.D. 209 (M.D. Fla. 1993) ...................................................17, 18, 20

*In re Carbon Dioxide Industry Antitrust Litig.*
 No. MDL. 92-940, slip. op. (M.D. Fla. Dec. 10, 1992)………………… . .14

*In re: Cardizem CD Antitrust Litigation*,
 200 F.R.D. 297 (E.D. Mich. 2001) ................................................................4

*Collins v. International Dairy Queen*,
 190 F.R.D. 629 (M.D. Ga. 1999)....................................................17, 20, 23

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
 No. 1:04-CV-3066-JEC, 2009 U.S. Dist. LEXIS 96790 (N.D. Ga.
 Oct. 19, 2009) ...............................................................................16, 17, 20

*Cooper v. Pacific Life Insurance Co.*,
    No. CV-203-131, 2005 U.S. Dist. LEXIS 16465 (S.D. Ga. Aug. 5,
    2005) ................................................................................16, 18

*Cox. v. Am. Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) ....................................................16

*Fowler v. Birmingham News Co.*,
    608 F.2d 1055 (5th Cir. 1979) ......................................................23

*Hanover Shoe, Inc. v. United Shoe Machine Corp.*,
    392 U.S. 481 (1968)...................................................13, 14, 21

*In re Hypodermic Antitrust Litigation*,
    No. 05-1602, 2006 U.S. Dist. LEXIS 89353 (D.N.J. Sept. 7, 2006) ......12, 14

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)....................................................................13

*In re Ivan F. Boesky Litigation*,
    120 F.R.D. 624 (S.D.N.Y. 1988) ...................................................10

*Lumco Industries, Inc. v. Jeld-Wen, Inc.*,
    No. 96-CV-2125 (E.D. Pa. May 16, 1997)....................................14

*Luna v. Del Monte Fresh Produce (Southeast), Inc*,
    No. 1:06-cv-2000-JEC, 2007 U.S. Dist. LEXIS 36893 (N.D. Ga. May
    18, 2007) ........................................................................16, 17, 20

*Meijer v. Abbott Laboratories*,
    251 F.R.D. 431 (N.D. Cal. 2008) ..................................................14

*In re K-Dur Antitrust Litigation*,
    No. 01-1652 (JAG), Special Master's Report and Recommendation
    (D.N.J. Jan. 2, 2007) ....................................................................14

*In re Plastics Additives Antitrust Litig.*,
   No. 03-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004)..........................14

*In re Pressure Sensitive Labelstock Antitrust Litigation*,
   226 F.R.D. 492 (M.D. Pa 2005) ..............................................................13, 14

*In re Publication Paper Antitrust Litig.*,
   No. 3:04-MD 1631 (SRU), 2005 U.S. Dist. LEXIS 13681 (D. Conn.
   July 5, 2005) ..................................................................................................18

*In re Relafen Antitrust Litigation*,
   218 F.R.D. 337 (D. Mass. 2003) .............................................................4, 21

*Sports Racing Services v. Sports Car Club of America*,
   131 F.3d 874 (10th Cir. 1997) .......................................................................13

*In re Terazosin Hydrochloride Antitrust Litigation*,
   223 F.R.D. 666 (S.D. Fla. 2004).................................................9, 10, 11, 15

*In re Terazosin Hydrochloride Antitrust Litigation*,
   No. 1:99-md-01317-PAS (S.D. Fla. Dec. 19, 2003) ......................................8

*In re Tricor Direct Purchaser Antitrust Litig.*,
   No. 05-340-KAJ, slip. op. (D. Del. May 6, 2006)........................................14

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ............................................................*passim*

*In re Vitamins Antitrust Litigation*,
   198 F.R.D. 296 (D.D.C. 2000) ......................................................................14

*Wainwright v. Kraftco Corp.*,
   54 F.R.D. 532 (N.D. Ga. 1972) .....................................................................16

*In re Worlds of Wonder Sec. Litigation*,
   No. C-87-5491 SC (FSL), 1992 U.S. Dist. LEXIS 10503 (N.D. Cal.
   July 9, 1992) ..................................................................................................19

## STATUTES

FED. R . CIV. P. 1 ........................................................................................20

FED. R . CIV. P. 11 ......................................................................................21

FED. R . CIV. P. 23 ........................................................................................7

FED. R . CIV. P. 26 ........................................................................................1

## MISCELLANEOUS

7A Wright, Miller & Kane, *Federal Practice and Procedure* §1768 at 362-
        63 (2d ed. 1986)...........................................................................24

5 James WM More, *Moore's Federal Practice* § 23.25[1] at 23-113 (2004)..........21

## INTRODUCTION

Direct Purchaser Class Plaintiffs[1] respectfully move this Court for a protective order under FED. R. CIV. P. 26(c)(1) directing Defendants[2] to withdraw the subpoenas they recently served on absent class members and others. *See* Doc. Nos. 146, 150, 152.[3] The Direct Purchaser Class Plaintiffs purchased the brand name drug AndroGel directly from Defendant Abbott, and are seeking to recover *overcharges* arising from Defendants' conduct in preventing less expensive, generic versions of AndroGel from becoming available. Under controlling Supreme Court authority, the information Defendants seek through the subpoenas – about direct purchasers' own sales, prices, and profits on the *resale* of AndroGel further down the chain of distribution (often called, "downstream" effects) – is

---

[1] Direct Purchaser Class Plaintiffs are Rochester Drug Cooperative, Inc. (1:09-cv-0956-TWT); Louisiana Wholesale Drug Company, Inc. (1:09-cv-0957-TWT); Meijer Inc. and Meijer Distribution, Inc. (1:09-cv-0958-TWT); and Stephen L. LaFrance Pharmacy, Inc. d/b/a SAJ Distributors and Stephel L. LaFrance Holdings, Inc. (1:09-cv-2913-TWT) who have brought suit on behalf of themselves and a class of direct purchasers of AndroGel.

[2] Defendants are Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc., Unimed Pharmaceuticals, LLC (collectively, "Abbott"); Watson Pharmaceuticals, Inc.; Paddock Laboratories, Inc., and Par Pharmaceutical Companies, Inc.

[3] Defendants issued the subpoenas out of 24 jurisdictions nationwide. The subpoena recipients have the right under Rule 45 to seek protection in those jurisdictions. Direct Purchaser Class Plaintiffs, by this motion, are in no way waiving or limiting any rights or arguments the subpoena recipients themselves may have, exercise, and proffer.

1

irrelevant as a matter of law. Moreover, the subpoenas are directed at absent members of the proposed direct purchaser class.  Ignoring the clear directive in this Circuit that discovery from absent class members is "generally improper," Defendants served the subpoenas without *first* seeking leave of court and making the requisite showing of particularized need for the discovery and lack of undue burden. The subpoenas are also facially overbroad and unjustifiably burdensome as the requests, with *over 130 subparts*, seek discovery concerning, *inter alia*:

1. the resale of AndroGel *after* class members purchased it from Defendant Abbott ("downstream discovery");
2. purchases of AndroGel - information which Defendant Abbott, the maker of AndroGel, already has;
3. purchase and sale information about *22 other drug products* that are not at issue in this litigation;
4. court filings from an unrelated case;
5. all communications with class counsel in *any* pharmaceutical antitrust litigation;
6. scores of contracts with each subpoena recipient's own customers; and
7. "all" documents regarding analyses of the "profitability" of selling branded and generic drugs.[4]

A detailed statement of objections to the document requests in the subpoenas is attached as Ex. A to the Declaration of Elena K. Chan in support of this Motion, dated December 17, 2010 ("Chan Decl.").

Defendants claim "entitlement" to such irrelevant discovery under *Valley*

---

[4] *See* Ex. B to the Chan Decl. attaching a list of the subpoena recipients and the 28 subpoenas Defendants noticed under Doc. Nos. 146, 150, and 152.

*Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181 (11th Cir. 2003), but *Valley Drug* does not give Defendants a blank check to conduct downstream discovery even from Plaintiffs to the action, let alone from absent class members. Abbott was also a defendant in *Valley Drug*, and therefore knows that none of the "downstream" discovery it is seeking is warranted or leads anywhere.

In *Valley Drug*, Abbott was permitted certain "downstream" discovery (strictly limited to the drug at issue; there branded and generic Hytrin) to evaluate potential "conflicts" within the class. The alleged "conflict" was whether certain class members might have made higher profits selling branded Hytrin than the generic. The Eleventh Circuit agreed that under controlling law such "profit" effects were substantively irrelevant to an antitrust overcharge claim, but was uncertain whether the interests of class members who might have earned a profit could be adequately protected by representative plaintiffs who may have suffered a net economic loss. The Court permitted some "downstream" discovery to permit the district court and defendant Abbott to evaluate this issue.

Following remand from *Valley Drug,* Abbott took months of burdensome "downstream" discovery. The results were that:

- Abbott and the other defendants *could not even articulate a conflict within the class*;
- the district court specifically found "no class antagonism or conflict, much less a fundamental one";

3

- the three largest class members (the same three companies that the Eleventh Circuit focused on) affirmatively represented that there was no conflict and expressed their desire to remain in the proposed class;
- Abbott *reversed its position when it wanted to settle the case*, and agreed to the propriety of certifying the same class it previously had claimed suffered from a "potential conflict"; and
- the court determined that all elements of Rule 23 were satisfied and ultimately certified the class in connection with the settlement.

Far from justifying Abbott's sweepingly overbroad subpoenas here, the experience in *Valley Drug* shows that there is no need for this discovery. The theories of "potential conflict" raised in *Valley Drug with respect to a class substantially similar to the proposed class here* were tested and dispelled.[5]   Again, Abbott, armed with the discovery, could not even articulate to the court how the interests of class members could be in "conflict" when all were entitled to recover overcharges. And Abbott later *agreed* that the class could be certified.[6] There is no reason to repeat the same enormously wasteful and expensive exercise that

---

[5] In fact, direct purchaser class actions such as this one, seeking overcharge damages, are the type of antitrust actions routinely certified for class action treatment. *See e.g. In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003); *In re: Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002); *In re: Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001).

[6] Abbott cannot run from its flip-flop by saying its agreement to class certification was for settlement.  Under *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997), a settlement class cannot be certified if there are conflicts within it.  By agreeing to certification of a single class, therefore, Abbott necessarily agreed that its "conflict" theory had been disproven by the downstream discovery it had obtained.

occurred in *Valley Drug*.  Defendants' subpoenas are, therefore, purely tactical and serve no purpose other than to harass.[7]

This Court should issue a protective order directing Defendants to withdraw all of the subpoenas noticed under Doc. Nos. 146, 150, and 152.

Direct Purchaser Plaintiffs certify under L.R. 37.1(A)(1) that they have met and conferred with Defendants by teleconference and letter, but have been unable to resolve this matter.

The Direct Purchaser Plaintiffs respectfully request oral argument on this motion.

## BACKGROUND

Without seeking leave of court and without prior notice to Plaintiffs, on November 11, 2010, Defendants issued 28 subpoenas on passive members of the proposed direct purchaser class and others in 24 separate jurisdictions.[8] Doc. No. 146.  *See* Ex. B to the Chan Decl.  Defendants have represented that the entities subpoenaed account for 98% of AndroGel purchases from Defendant Abbott.  *See*

---

[7]Defendants also have served subpoenas on entities which clearly do not purchase AndroGel, such as Optisource, LLC; Pacificare Heath Systems, Inc.; Magellan Medicaid Administration f/k/a First Health Services Corporation; MedImpact Healthcare Systems, Inc; and Omnicare, Inc.

[8] Defendants did not provide Plaintiffs with copies of the subpoenas or file notice with the court until November 16, 2010.  *See* Doc. No. 146.  Thereafter, Defendants amended and re-served four of those subpoenas on November 30 and December 10, 2010.  *See* Doc. Nos. 150, 152.

Doc. No. 151 at 2.

Each of the subpoenas contain over 130 subparts and seek up to nine years'
worth of documents, data, and other information concerning, *inter alia*: (1) the
resale of AndroGel *after* purchasing it from Defendant Abbott; (2) purchases of
AndroGel from Defendant Abbott –  information Defendants already have; (3)
purchase and sale information about "Testosterone Replacement Therapy"
("TRT") products, which Defendants define to include *16 different products and
their generic equivalents*, as well as the drugs Wellbutrin XL (which treats
depression), Xanax XR (which treats anxiety disorders), Pravachol (which treats
high cholesterol), Monopril HCT (which treats high blood pressure), Glucophage
XR (which treats diabetes), and Pletal (which treats leg pain); (4) court filings from
an unrelated case, *In re Wellbutrin SR Direct Purchaser Antitrust Litigation* (E.D.
Pa.); (5) all communications with class counsel in *any* pharmaceutical antitrust
litigation; (6) scores of contracts with each subpoena recipient's own customers;
and (7) "all" document regarding analyses of the "profitability" of selling branded
and generic drugs. *See* Ex. B to the Chan Decl.; Doc. Nos. 146, 150, 152.

During the meet-and-confer process, Defendants filed a motion to compel
against Plaintiffs regarding, *inter alia,* the same type of "downstream discovery."
*See* Defendants' Motion to Compel & Memorandum of Law in Support Thereof

(Doc. No. 151).  Plaintiffs are responding to that motion separately.

## THE EXPERIENCE IN *VALLEY DRUG*

The Eleventh Circuit in *Valley Drug* found that the district court had certified a class without sufficiently evaluating whether the "adequacy of representation" requirement under FED. R. CIV. P. 23(a)(4) could be satisfied given defendants' contention that, while the small regional wholesaler class representatives were eager to pursue their overcharge claims, the larger national wholesaler class members – AmerisourceBergen Corp., Cardinal Health, Inc., and McKesson Corp. – might be less eager if they had benefitted on a net economic basis from defendants' allegedly anticompetitive conduct. 350 F.3d at 1190-1192. Defendants there (including Abbott) claimed that there might be a "conflict" because: (1) the national wholesalers potentially made more money on sales of brand than generic Hytrin, because they sold on a "cost-plus" basis;[9] and (2) national wholesalers may lose some sales once generics enter because they may be bypassed in the distribution chain for generic products. *Id.* at 1190-91. The Court was concerned whether the named plaintiffs could "vigorously prosecute the interests of the class" under those circumstances.  *Id.* at 1195.  It, therefore, remanded the case to permit Abbott to pursue some discovery to support its

---

[9] The term "cost-plus" in the pharmaceutical industry actually referred to percentage mark-up contracts, not true "cost-plus" contracts as defined by the Supreme Court. *See Valley Drug*, 350 F.3d at 1190, n. 19.

7

arguments about alleged conflicts (and to allow the district court to further evaluate the issue). The Eleventh Circuit, however, recognized that "the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Id.* at 1189.

Thereafter, the district court limited and then approved the form of subpoena proposed by Defendants, and authorized Defendants to serve the subpoenas on 23 of the more than 1800 members of the direct purchaser class. *See In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99-md-01317-PAS, slip op. at *1 (S.D. Fla. Dec. 19, 2003) (attached as Ex. C to the Chan Decl.) *modifying* Defendants' Proposed "Downstream Discovery" Subpoena (attached as Ex. D to the Chan Decl.). The subpoenas were limited to information about brand-name Hytrin from 1998 to 2000, and its generic equivalent, terazosin hydrochloride, from 1999 to 2000. *Id.* Notably, the court did *not* authorize discovery of other, unrelated products, court filings from unrelated cases, or communications with counsel in *any* pharmaceutical antitrust case.

Even though those subpoenas were far narrower than those at issue here, they were still quite burdensome and difficult. After months of such discovery and extensive briefing, the district court held a hearing on plaintiffs' renewed motion

for class certification, attended by representatives of the national wholesalers and other class members. Despite being armed with months of discovery from absent members, *counsel for Abbott was unable to articulate a conflict to the court. See In re: Terazosin Hydrochloride Antitrust Litig.* May 21, 2004 Hearing Tr., at 123, 127-129, 134 (attached as Ex. E to the Chan Decl.). *See also In re Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666, 678 (S.D. Fla. 2004) ("**Defendants cannot articulate any potential or actual conflict or antagonism**") (emphasis added) (opinion on remand).

In the end, the "downstream" discovery in *Valley Drug* took *months*, but led nowhere. As the district court explained:

> The downstream discovery process provided an opportunity to test the Defendants' assertions of fundamental conflicts. **Undertaking this discovery was difficult** not only because it involved the novel area of downstream discovery of absent class members, but also because of the logistical and mechanical issues that surfaced during the process. While the discovery results do not satisfy this Court's reading of the Eleventh Circuit opinion, they do indicate that the marginal benefit, if any, between pre and post generic entry for the largest wholesalers was slight. **Based on the evidence in the record, it would appear that such net benefit would not present an opportunity for fundamental conflict to arise**.
>
> Examining the record further**, the Court finds no hard evidence of an actual disagreement or conflict nor can it imply that a realistic possibility of fundamental antagonism exists**. Here, **no putative class member opposes the class, no class member has articulated any possibility for conflict or antagonism, and the class members constituting over 90% of the alleged overcharge damages affirmatively state that they want to be part of the class**. * * * **There has been no**

**factual showing that there is a real divergence of economic or litigation interest among the class members or between the named class representatives and the class in this particular action**. * * *

Defendants, nonetheless, assert that a conflict exists. However, **hard evidence does not support the Defendants' assertions, and Defendants have been unable to show any actual disagreement or conflict that would sacrifice the interests of some class members for that of others nor have they identified any harm to putative class member as the result of pursuing this lawsuit**.

*Terazosin*, 223 F.R.D. at 679-80 (emphases added)(internal citations omitted).

Instead, the district court found "there is no class antagonism or conflict, much less a fundamental one." *Id.* at 679. Recognizing that "the individual interests of putative class members is respected" and that "courts must look at 'whether the affected class members have any objection to the plaintiffs acting for them in a representative capacity'," the district court credited the affidavits from AmerisourceBergen, Cardinal Health, and McKesson as well as 20 other putative class members making clear that "they perceived no actual or potential conflict, and to the extent the Court finds such conflict, they waive that conflict." *Id.* (quoting *In re Ivan F. Boesky Litig.*, 120 F.R.D. 624, 625-626 (S.D.N.Y. 1988)).

Despite finding no evidence of an actual or potential, current or prospective conflict, the district court felt constrained by the Eleventh Circuit's decision to

deny class certification.[10] However, the district court subsequently *certified* for settlement the same class it had previously declined to certify. *In re Terazosin Hydrochloride Antitrust Litig.*, slip. op. at 1 (S.D. Fla. Feb. 28, 2005) (attached as Ex. F to the Chan Decl.). Notably, reversing course, defendants in *Valley Drug*, *including Abbott*, agreed (a) that there was no conflict sufficient to defeat class certification, and (b) to the propriety of certifying one class of direct purchasers.[11] In February 2005, the court found that "it [is] appropriate to certify a class of Direct Purchasers for purposes of settlement." *Id.* at 2. That the class was certified for settlement did not relieve the district court from its duty to conduct a rigorous analysis of whether the elements of Rule 23 were met – including to deny class if any fundamental conflict were to exist.[12] The district court certified the class, and

---

[10] *See Terazosin,* 223 F.R.D. at 679. Plaintiffs respectfully believe that the court erred in its interpretation of *Valley Drug*. The Eleventh Circuit wished to make sure that the interests of absent class members were being protected -- that is what the "adequacy" requirement of Rule 23(a)(4) is all about. Once the district court on remand had decided that the interests of absent class members were being served, not harmed, by the lawsuit seeking overcharges, that should have permitted the court to certify the class.

[11] *See* Sherman Act Class Plaintiffs' Motion for Certification of the Proposed Direct Purchaser ("Sherman Act") Class in Light of Settlement and Re-appointment of Class Counsel, Settlement Agreement at ¶1(attached as Ex. G to the Chan Decl.).

[12] *See Amchem Prods.*, 521 U.S. at 620 ("confronted with a request for settlement-only class certification, a district court need not inquire whether the

Abbott agreed.

## ARGUMENT

*Valley Drug* does not authorize "downstream discovery" or discovery from absent class members in all cases – such discovery was permitted in that case only *after* defendants had demonstrated a factual predicate for discovery and only for a specific purpose given the record before the Eleventh Circuit.[13]

I.   **NEITHER DOWNSTREAM DISCOVERY NOR DISCOVERY FROM ABSENT CLASS MEMBERS IS PERMITTED AS A MATTER OF COURSE.**

A. **DOWNSTREAM DISCOVERY IS IRRELEVANT IN DIRECT PURCHASER ANTITRUST CASES.**

All of Defendants' subpoenas are improper because "downstream discovery" is irrelevant as a matter of law under controlling Supreme Court precedent. In direct purchaser antitrust cases, courts generally do not permit discovery of "downstream" matters – *i.e.* information concerning what direct purchasers did with products *after* purchasing them from defendants. *In re Air*

---

case, if tried, would present intractable management problems, for the proposal is that there be no trial. **But other specifications of the rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context.** Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.")(emphasis added)(internal citations omitted).

[13] *See e.g. In re Hypodermic Antitrust Litig.*, No. 05-1602, 2006 U.S. Dist. LEXIS 89353, at *17-20 (D.N.J. Sept. 7, 2006).

*Cargo Shipping Services Antitrust Litig.*, No. 1:06-md-01775, 2010 U.S. Dist. LEXIS 125623, at *66 (E.D.N.Y. Nov. 24, 2010); *In re Automotive Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2006 U.S. Dist. LEXIS 34129, at *22-29 (E.D. Pa. May 26, 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-98 (M.D. Pa 2005).   Under the Supreme Court's decisions in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), direct purchasers' damages cannot be reduced by showing that overcharges paid by the direct purchasers were passed-on to purchasers "downstream" in the chain of commerce, or that direct purchasers otherwise benefitted from the overcharge.[14]   In creating this rule, the Supreme Court, sought to "avoid the 'fishing expeditions' that result when downstream discovery was permitted." *Auto Paint,* 2006 U.S. Dist. LEXIS 34129*,* at *23.   The Court specifically wanted to avoid complicating the proof in antitrust cases "with attempts to trace the effects of the overcharges on the purchaser's prices, sales, costs, and profits, and of showing that these variables would have behaved differently without the overcharge." *Illinois Brick*, 431 U.S. at 725.   Furthermore,

it is important to note that the Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive

---

[14]*See, e.g., Sports Racing Services v. Sports Car Club of America,* 131 F.3d 874, 885 (10th Cir. 1997).

discovery that such an inquiry would entail. Furthermore, the marginal relevance of the information sought is clearly outweighed by the burden and expense that the proposed discovery would impose.

*Labelstock*, 226 F.R.D. at 498 (citing *Hanover Shoe,* 392 U.S. at 494).

Following this clear precedent, district courts have precluded discovery of "downstream" information.  *See e.g. Meijer v. Abbott Laboratories*, 251 F.R.D. 431, 433-34 (N.D. Cal. 2008); *Hypodermic*, 2006 U.S. Dist. LEXIS 89353; *In re K-Dur Antitrust Litig.*, No. 01-1652, Special Master's Report and Recommendation at 20-26 (D.N.J. Jan. 2, 2007)(attached as Ex. H to the Chan Decl.); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-KAJ, slip. op. (D. Del. May 6, 2006) and Mar. 3, 2006 Conference Tr. at 34-35 (attached as Ex. I to the Chan Decl.); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492 (M.D. Pa. 2005); *In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 297-302 (D.D.C. 2000); *Lumco Industries, Inc. v. Jeld-Wen, Inc.,* No. 96-CV-2125 (E.D. Pa. May 16, 1997) (plaintiff's downstream sales to its customers "irrelevant and inadmissible as a matter of law in accordance with *Hanover Shoe*"); *In re Carbon Dioxide Industry Antitrust Litig.* No. MDL. 92-940, slip. op. (M.D. Fla. Dec. 10, 1992)(attached as Ex. J to the Chan Decl.).

*Valley Drug* was a rare instance in which a court permitted "downstream

discovery." 350 F.3d at 1193-1195.  There, the Court allowed limited "downstream discovery" to evaluate whether there was any merit to Defendants' claim that the class suffered from "potential conflicts." *Id.* at 1191-1192.  Here, by contrast, Defendants have offered nothing to justify the highly irregular and facially overbroad and burdensome discovery they seek.

Moreover, no court has ever permitted the sweepingly overboard  discovery Defendants seek here – in addition to "downstream discovery" concerning AndroGel, Defendants also seek "downstream" information about 22 unrelated drug products and their generic equivalents.  Some downstream discovery was permitted by the district court on remand in *Valley Drug* -- but that discovery was far narrower than the discovery sought by Abbott here (and even *that* "novel" discovery was quite burdensome). Indeed, cognizant of the burdens this type of highly irregular discovery would have on absent class members, the district court in *Valley Drug* specifically limited the subpoenas there such that they:

> would produce, in the quickest, most cost efficient, least burdensome manner, the information the Court needs to make an informed, impartial decision as to whether the class representatives' interests are antagonistic to other members of the potential class.

*Terazosin*, slip op. at *1 (S.D. Fla. Dec. 19, 2003) (Ex. C to the Chan Decl.).  The subpoenas in the *Valley Drug* matter, for example (and as discussed below) were strictly limited to the drug actually at issue there (Hytrin and its generic).   The

subpoenas here are irrelevant, intrusive, overbroad, and unduly burdensome on their face.

Abbott here has made no evidentiary showing to support its overbroad subpoenas.  Abbott is relying on the facts of *Valley Drug,* but, as discussed, none of this discovery should be permitted because Abbott, Direct Purchaser Class Plaintiffs, and this Court will wind up in the same place – with Abbott unable to articulate any conflict. The Court should not go down that wasteful road.  Instead, the Court should issue a protective order directing Defendants to withdraw all of the subpoenas noticed under Doc. Nos. 146, 150, and 152.

## B. DISCOVERY FROM ABSENT CLASS MEMBERS IS "GENERALLY IMPROPER."

Most of Defendants' subpoenas are directed to absent members of the proposed direct purchaser class.  Ignoring the clear directive in this Circuit, these subpoenas were served without leave of court and without having *first* demonstrated particularized need for the discovery and lack of undue burden.  In this Circuit, "[i]t is generally improper, under Rule 23, to permit individualized discovery directed towards absent or passive class members." *Luna v. Del Monte Fresh Produce (Southeast), Inc*, No. 1:06-cv-2000-JEC, 2007 U.S. Dist. LEXIS 36893, at \*22 (N.D. Ga. May 18, 2007) *citing Cox. v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986); *Cooper v. Pacific Life Ins. Co.*, No. CV203-131,

16

2005 U.S. Dist. LEXIS 16465, at *5-6 (S.D. Ga. Aug. 5, 2005)("class action defendants are not permitted to seek discovery from absent class members as a matter of course" because Rule 23's policy of avoiding multiple actions "would be frustrated by saddling class members with discovery obligations"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2009 U.S. Dist. LEXIS 96790, at *10-11 (N.D. Ga. Oct. 19, 2009); *Wainwright v. Kraftco Corp.*, 54 F.R.D. 532 (N.D. Ga. 1972) ("[t]he usefulness of Rule 23 would end if class members could be subjected to Rule 33 and forced to spend time, and perhaps engage legal counsel, to answer detailed [discovery requests]"). Absent a showing of "particularized need," a court will not permit discovery from absent class members. *Columbus Drywall*, 2009 U.S. Dist. LEXIS 96790, at *10-11; *Luna v. Del Monte*, 2007 U.S. Dist. LEXIS 36893 at *21-22; *Collins v. Int'l Dairy Queen*, 190 F.R.D. 629, 631 (M.D. Ga. 1999); *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993).   In very rare cases, courts may permit discovery from absent class members "where the discovery would not be unduly burdensome, and the need for it is apparent." *Columbus Drywall*, 2009 U.S. Dist. LEXIS 96790, at *11.  Defendants have not even attempted such a showing here.

In *Columbus Drywall*, the defendant served passive members of a class of independent fiberglass insulation contractors with broad requests seeking

documents relating to insulation purchases and competition in the insulation market spanning a 6-year period, and sought to depose about 50 class members. 2009 U.S. Dist. LEXIS 96790, at \*10-11, n. 1. This District blocked the attempt to take discovery from absent class members because "Defendant has not made a strong case for the necessity of the discovery it requests." *Id.* at \*11-12. Similarly, in *Collins v. Int'l Dairy Queen*, the Middle District of Georgia denied defendants' request to take discovery from absent class members to show, among other things, that the individual Dairy Queen businesses did not suffer a net economic loss from the defendants' allegedly anticompetitive conduct. 190 F.R.D. at 630. The Court did not allow discovery from even a limited sampling of absent class members because the defendants failed to demonstrate how (a) the requested discovery from absent class members was necessary, (b) responding to the proposed discovery would not be unduly burdensome on absent class members as it would require the assistance of an accountant or lawyer, and (c) the information sought did not relate more to individual questions rather than class-wide issues. *Id.* at 632.

In case after case, courts have prohibited discovery from absent class members where the defendant failed to make a showing of particularized need and lack of undue burden on absent class members. *Cooper v. Pacific Life*, 2005 U.S. Dist. LEXIS 16465, at \*7-8 (denying request for permission to serve questionnaire

on absent class members because defendants failed to meet strong showing of need and requested information was available from other sources); *Carbon Dioxide*, 155 F.R.D. at 212 (denying leave to take discovery of absent class members for failure to show "particularized need"); *In re Publication Paper Antitrust Litig.*, No. 3:04-MD 1631 (SRU), 2005 U.S. Dist. LEXIS 13681, at *6-7 (D. Conn. July 5, 2005)(discovery from absent class members not permitted because defendants did not make a showing sufficient to warrant discovery and facts suggest that proposed discovery is sought to gain a tactical advantage rather than needed information); *Baldwin & Flynn v. National Safety Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1992) (denying leave to take discovery of absent class members and noting that "[t]he burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions"); *In re Worlds of Wonder Sec. Litig.*, No. C-87-5491 SC (FSL), 1992 U.S. Dist. LEXIS 10503, at *16-17 (N.D. Cal. July 9, 1992) (granting plaintiffs' motion to quash defendants' subpoena on absent class members because defendants failed to make a clear showing of necessity for this "highly irregular discovery").

As discussed, *Valley Drug* does not support the overbroad subpoenas Abbott has served. Abbott has made no evidentiary showing (unlike in *Valley Drug*) and, even more importantly, Abbott has still failed to explain how or why class

19

members cannot be trusted to know what their own interests are, and why the Court cannot trust that they will opt-out of this class if they believe it is not in their interests.

## II. NOTHING IN *VALLEY DRUG* MANDATES THE DISCOVERY DEFENDANTS SEEK – IN FACT, THE HISTORY OF THAT CASE, MILITATES AGAINST PERMITTING SUCH DISCOVERY.

*Valley Drug* is not a blank check for downstream discovery or discovery from absent class members. The highly irregular discovery Defendants seek here should not be permitted because Defendants have made no showing of particularized need. *Cf. Columbus Drywall*, 2009 U.S. Dist. LEXIS 96790, at *10-11; *Luna v. Del Monte*, 2007 U.S. Dist. LEXIS 36893 at *21-22; *Collins v. Int'l Dairy Queen*, 190 F.R.D. 629, 631 (M.D. Ga. 1999); *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993).

To the extent Defendants seek the discovery to test the theories of "potential conflict" set forth in *Valley Drug*, the result of *Valley Drug* should cause the parties and this Court pause because the months of discovery from 23 absent class members in *Valley Drug* proved enormously wasteful.[15]

First, Defendant Abbott obtained the discovery in *Valley Drug* -- and did

---

[15] *See* FED. R . CIV. P. 1 (the Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

20

nothing with it, not even "articulating" a plausible conflict.  Defendants have not offered anything new here.  There is no rational reason to repeat the wasteful discovery exercise of *Valley Drug* (and as noted, Abbott seeks far *more* discovery here).

Second, when it served its interests, Abbott flip-flopped, agreed to certification of a single class for settlement, and dropped any inquiry into the "net" economic effects of delayed generic competition on class members.[16]  Had Abbott still perceived a fundamental conflict in *Valley Drug*, it could not have agreed to the propriety of class certification under FED. R. CIV. P. 11.   Abbott cannot have it both ways – agreeing that there was no conflict in *Valley Drug* at settlement, while claiming a "potential conflict" exists with respect to a substantially similar class here.

Third,  the potential "conflict" raised in *Valley Drug* was dispelled to the satisfaction of the district court – and through far less burdensome means than downstream discovery – *i.e.,* through affidavits and representations made by the absent class members themselves. Because the purpose of the adequacy

---

[16] Controlling Supreme Court precedent makes the "downstream" effects of a defendants' overcharge substantively irrelevant to any claim or defense. *Hanover Shoe*, 392 U.S. 481 (1968); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337-344 (D. Mass. 2003) ("[c]onsistent with the rule of *Hanover Shoe*, the direct purchaser plaintiffs seek damages in the form of overcharges, rendering [the defendant's] arguments regarding actual economic harm irrelevant").

requirement of Rule 23(a)(4) is to protect the interests of absent class members, not defendants, there could be no basis to overrule a class member's statement of its own interest. *See* 5 James WM More, *Moore's Federal Practice* § 23.25[1] at 23-113 (2004) ("The 'adequacy of representation' requirement was designed to protect the due process rights of absent class members.").   In the end, the class members made clear that there was no conflict because not a single class member opted-out of the class.

In sum, the subpoenas that Defendants have served here serve no legitimate purpose, and should not be permitted.

## III.   THE DISCOVERY SOUGHT IS UNJUSTIFIABLY BURDENSOME.

The subpoenas are also unjustifiably burdensome on their face.[17] Defendants' subpoenas are extremely broad and seek documents, data, and information well beyond anything contemplated or authorized by the court in *Valley Drug*.   There, the court limited the subpoenas to the national wholesaler class members, for example, to 8 specific document requests covering a few years and one drug (branded and generic Hytrin).

By contrast, Defendants here have propounded 18 document requests

---

[17] Again, the subpoena recipients are not before the Court, and retain their rights to object to the subpoenas themselves, including on the basis of burden.

consisting of *over 130 subparts* on each of the 28 subpoena recipients. *In addition*, Defendants appended 45 additional requests as "Exhibit B" to the subpoenas to Cardinal Health, McKesson Corp., and Frank W. Kerr Co.  *See* Ex. B to the Chan Decl.  Instead of one drug, Defendants here seek documents about dozens.  Instead of a few years, Defendants here seek information spanning nearly a decade.   The overbroad subpoenas at issue here, in short, bear no similarity to the subpoenas in *Valley Drug*.    *Compare* Exs. C, D to Chan Decl. *with* Ex. B. to the Chan Decl.[18] The subpoenas here are, thus, irrelevant, intrusive, overbroad, and unduly burdensome on their face.

Given the extreme breadth of Defendants' subpoenas, it would undoubtedly take enormous time, effort, and expense to analyze the discovery requests, negotiate the scope of production, and collect and produce any responsive documents.  In addition, given the very nature and complexity of this antitrust case, this type of discovery would require the assistance of, at the very least, an accountant or an attorney.  In *Collins v. Int'l Dairy Queen*, the court found that having to obtain professional assistance would be unduly burdensome to absent class members, which "mitigates against allowing discovery." 190 F.R.D. at 632.

---

[18]   Again, Plaintiffs emphasize that, while narrower, the downstream subpoenas in *Valley Drug* were nevertheless quite burdensome and difficult and, in the end, were entirely beside the point.

23

In light of the clear burden, there are far less intrusive and expensive means to determine whether any fundamental conflict exists – such as with affidavits and/or representations from absent class members, as was done in *Valley Drug*, or providing notice and an opportunity to opt out of the class. *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979) ("Any antagonistic interests involved were ameliorated by the provision from notice in the decree, with an opportunity to opt out of the class").[19]  *See also* 7A Wright, Miller & Kane, *Federal Practice and Procedure* §1768 at 362-63 (2d ed. 1986) ("Silence after appropriate notice … may demonstrate that the members have acquiesced in the party's representation and show a lack of antagonism.  This is *especially true* if [as here] the members have been fully informed that the judgment in the action will be conclusively binding on them.")(emphasis added).

## CONCLUSION

For the foregoing reasons, this Court should issue a protective order requiring Defendants to withdraw the 28 subpoenas noticed under Doc. Nos. 146, 150, and 152.

Date:  December 17, 2010                    _____/s/ *Kenneth S. Canfield*_____

---

[19] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down before Oct. 1, 1981).

24

Kenneth S. Canfield
Ga. Bar. No. 107744
kcanfield@dsckd.com
1355 Peachtree Street, Suite 1600
Atlanta, Georgia 30309
Telephone; (404) 881-8900
Facsimile (404) 881-3007

David F. Sorensen, Pro Hac Vice
dsorensen@bm.net
Eric Cramer, Pro Hac Vice
ecramer@bm.net
Ellen Noteware, Pro Hac Vice
enoteware@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215)-875-4683
Facsimile: (215)-875-4604

Joshua P. Davis (SBN. 193254)
davisj@usfca.edu
LAW OFFICES OF JOSHUA P. DAVIS
437A Valley Street
San Francisco, CA 94131
Telephone: (415) 422-6223

David Balto
LAW OFFICES OF DAVID BAL TO
2600 Virginia Ave NW Suite 1111
Washington, DC 20037

*Counsel for Rochester Drug Co-operative, Inc.*

25

Bruce E. Gerstein (admitted Pro Hac Vice)
bgerstein@garwingerstein.com
Joseph Opper (admitted Pro Hac Vice)
jopper@garwingerstein.com
Elena K. Chan (admitted Pro Hac Vice)
echan@garwingerstein.com
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212 ) 764-6620

David P. Smith
dpsmith@smithfoote.com
W. Ross Foote
rfoote@smithfoote.com
Susan Segura
ssegura@smithfoote.com
THE SMITH FOOTE LAW FIRM LLP
720 Murray Street
P.O.Box 1632
Alexandria, LA 71309
Telephone: (318) 445-4480
Facsimile: (318)487-1741

John Gregory Odom
jodom@odrlaw.com
Stuart Des Roches
stuart@odrlaw.com
Andrew Kelly
akelly@odrlaw.com
John Fitzpatrick
jfitzpatrick@odrlaw.com
ODOM & DES ROCHES
Poydras Center
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Telephone: (504) 522-0077

26

Facsimile: (504) 522-0078

Russell A. Chorush
rchorush@hpcIlp.com
HElM PAYNE & CHORUSH LLP
Chase Tower
600 Travis, Suite 6710
Houston, TX 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

*Counsel for Louisiana Drug Company, Inc.*

Linda P. Nussbaum
John D. Radice
Grant & Eisenhofer P.A.
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501

Joseph M. Vanek
jvanek@vaneklaw.com
David P. Germaine
dgermaine@vaneklaw.com
VANEK, VICKERS & MASINI, P.C.
111 South Wacker Drive, Suite 4050
Chicago, IL 60606
Telephone: (312)224-1500
Facsimile: (312) 224-1510

Paul E. Slater
pes@sperling-law.com
SPERLING & SLATER
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200

Facsimile: (312)641-6492

Joseph R. Saveri (SBN 130064)
isaveri@lchb.com
Eric B. Fastiff (SBN 182260)
efastiff@1chb.com
Jordan Elias (SBN 228731)
ielias@1chb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
Battery Street, Suite 3000
San Francisco, CA 94111-3339
Telephone. (415) 956-1000
Facsimile. (415) 956-1008

Donald Perelman
dperelman@fineblack.com
Roberta Liebenberg
rliebenberg@fineblack.com
1835 Market Street, 28th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 567-6565
Facsimile: (215) 568-5872

*Counsel for Meijer, Inc. and Meijer
Distribution, Inc.*

Dianne M. Nast
dnast@rodanast.com
Erin C. Burns
eburns@rodanast.com
RodaNast, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Phone: 717-892-3000
Fax: 717-892-1200

28

*Counsel for Stephen L. Lafrance Pharmacy, Inc.*