# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **IN RE ANDROGEL ANTITRUST LITIGATION (II)** | **CASE NO. 1:09-MD-2084**<br><br>**DIRECT PURCHASER CLASS ACTIONS**<br><br>**ORAL ARGUMENT REQUESTED** |
| **ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,**<br>          **Plaintiff,**<br>          v.<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>          **Defendants.** | **CASE NO. 1:09-CV-956-TWT** |
| **LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,**<br>          **Plaintiff,**<br>          v.<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>          **Defendants.** | **CASE NO. 1:09-CV-957-TWT** |
| **MEIJER, INC., ET AL.,**<br>          **Plaintiffs,**<br>          v.<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>          **Defendants.** | **CASE NO. 1:09-CV-958-TWT** |

**STEPHEN L. LAFRANCE PHARM., INC. ET AL.,**

        **Plaintiff,**

              v.

**UNIMED PHARMACEUTICALS, LLC, ET AL.,**

        **Defendants.**

**CASE NO. 1:09-CV-2913-TWT**

**DIRECT PURCHASER CLASS PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER DIRECTING DEFENDANTS TO WITHDRAW THE SUBPOENAS THEY SERVED ON ABSENT CLASS MEMBERS AND OTHERS**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................. ii

**INTRODUCTION** ...............................................................................1

I.   **Absent Class Members' Statement of their Own Interests Moots the Need for Any Discovery to Ascertain Their Interests** ..................................................................................4

II.  **Defendants' Arguments that Putative Class Members May Have Benefitted on a Net Economic Basis Are Baseless and Unsupported** .........7

III. **Defendants' Subpoenas Directed at Absent Class Members Are Unjustifiably Burdensome.** ...................................................10

IV.  **The Subpoenas Are Not Reasonably Calculated to Discover Information Related to Market Definition.** ................................14

**CONCLUSION** ................................................................................15

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997).........................................................................6

*Borcea v. Carnival Corp.*,
    238 F.R.D. 664 (S.D. Fla. 2006)....................................................6

*Cooper v. Pacific Life Insurance Co.*,
    2005 U.S. Dist. LEXIS 16465 (S.D. Ga. Aug. 5, 2005)...............11

*Hanover Shoe, Inc. v. United Shoe Machine Corp.*,
    392 U.S. 481 (1968).........................................................................7

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977).........................................................................7

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ....................................................6

*In re Ivan F. Boesky Litigation*,
    120 F.R.D. 624 (S.D.N.Y. 1988)....................................................6

*Kansas v. UtiliCorp United, Inc.*,
    497 U.S. 199 (1990).........................................................................7

*Larry James v. GM Corp.*,
    164 F.R.D. 428 (N.D. Miss. 1996) ................................................10

*Luna v. Del Monte Fresh Produce*,
    2007 U.S. Dist. LEXIS 36893 (N.D. Ga. May 18, 2007) ............10

*In re Potash Antitrust Litigation*,
    159 F.R.D. 682 (D. Minn. 1995) ..................................................10

*In re Terazosin Hydrochloride Antitrust Litigation,*
  223 F.R.D. 666 (S.D. Fla. 2004)...............................................................6, 9

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,*
  350 F.3d 1181 (11th Cir. 2003) .............................................................*passim*

*In re Visa Check/Master Money Antitrust  Litigation,*
  192 F.R.D. 68 (E.D.N.Y. 2000).....................................................................7

*Wainwright v.  Kraftco Corp.,*
  54 F.R.D. 532 (N.D. Ga. 1972) ..................................................................10

## STATUTES

FED. R. CIV. P. 23(c)(2).......................................................................3, 10

FED. R. CIV. P. 45(b)(1)..........................................................................13

## OTHER MATERIALS

1 Newberg on Class Actions §3.30 (4th ed. 2002) ..................................................10

# INTRODUCTION

Direct Purchaser Class Plaintiffs[1] ("Plaintiffs") respectfully submit this Reply in further support of their Motion for Protective Order (Doc. No. 156) ("Opening Brief"). As Defendants'[2] Opposition to Plaintiffs' Motion ("Opposition") (Doc. No. 170) confirms, the 28 subpoenas Defendants served on absent class members and others[3] seek "downstream" discovery regarding direct purchasers' own sales, prices and profits, but Defendants have failed to justify such irrelevant and burdensome discovery from absent class members. Defendants' subpoenas are based solely on unsupported allegations of "purported conflict" and **unlike** *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181 (11th Cir. 2003),

---

[1] Direct Purchaser Class Plaintiffs are Rochester Drug Co-Operative, Inc. (1:09-cv-0956-TWT); Louisiana Wholesale Drug Company, Inc. (1:09-cv-0957-TWT); Meijer Inc. and Meijer Distribution, Inc. (collectively, "Meijer")(1:09-cv-0958-TWT); and Stephen L. LaFrance Pharmacy, Inc. d/b/a SAJ Distributors and Stephen L. LaFrance Holdings, Inc. (1:09-cv-2913-TWT) who have brought suit on behalf of themselves and a class of direct purchasers of AndroGel.

[2] Defendants are Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc., Unimed Pharmaceuticals, LLC (collectively, "Abbott"); Watson Pharmaceuticals, Inc.; Paddock Laboratories, Inc., and Par Pharmaceutical Companies, Inc.

[3] By letter on December 21, 2010, Defendants "suspended enforcement" of two subpoenas directed at entities that did not purchase AndroGel, Omnicare, Inc. and Magellan Medicaid Administration f/k/a First Health Services Corporation. Defendants, however, have not withdrawn these two subpoenas and, moreover, have failed to "suspend enforcement" of subpoenas to Optisource LLC, Pacificare Health Systems, Inc., and MedImact Healthcare Systems, entities which also did not purchase AndroGel (according to Defendants' data).

1

Defendants here failed to identify any specific evidence supporting their allegation of "conflict." Defendants are asking this Court to authorize downstream discovery based solely on unsupported speculation that a potential conflict may exist, without regard to the fact that the national wholesalers (and virtually all other direct purchaser class members) have expressly supported similar classes, made clear that they perceive no conflict with the named plaintiffs in similar classes, and have not opted-out of a single direct purchaser antitrust case in the pharmaceutical or medical device industries in the past 10 years. In fact, there is no question that Cardinal Health, Inc. – a subpoena recipient and one of the largest absent class members -- perceives no conflict with the named plaintiffs in this litigation. As counsel for Cardinal Health stated in a letter to Defendants' counsel:

> If the Androgel case is certified as a class action Cardinal Health intends to remain a member of the class. Cardinal Health does not perceive any conflicts with the putative class representatives. Finally, Cardinal Health has been a class member in a number of cases in which the Androgel class counsel have served as class counsel. Cardinal Health is certain they, along with the putative class representatives, are fully capable of representing Cardinal Health's litigation [sic] in this litigation.

Letter from Thomas Long (counsel for Cardinal Health) to Defendants' counsel, dated Jan. 26, 2011 (Chan Decl., Ex. K).[4] Defendants have offered no reason why

---

[4] *See In re Armored Car Antitrust Litig.*, 645 F.2d 488, 492-93 (11th Cir. 1981) (defendant lacked standing to challenge authority of counsel to represent the desire of his client in connection with class action) (citing *McGowan v. Maryland*,

2

the business judgment of absent class members should be ignored in favor of Defendants' speculation that a potential conflict may exist. These absent class members, who Defendants admit are sophisticated companies, are more than capable of deciding whether this class action is in their best interests without Defendants' "help."  Furthermore, Defendants' claim that absent class members' "net economic situation is better off when branded drugs dominate the market" is utter speculation.  And even if Defendants had produced supporting evidence, any purported "economic benefit" that putative class members might have derived pales in comparison to the overcharge damages – which are based on the enormous difference in purchase price between the branded and the suppressed generics (and subject to automatic trebling under §4 of the Clayton Act) – recoverable by putative class members in this case. Therefore, there is no competent evidence whatsoever that this class action to recover such overcharge damages is against absent class members' best interests.  Finally, there is a built-in mechanism in Rule 23 for any absent class members who may perceive a conflict to opt-out of the class, once one is certified. Thus, there is no cognizable reason justifying the discovery Defendants have sought through the 28 subpoenas. Accordingly, this

---

366 U.S. 420, 429 (1961)); *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1310 (11th Cir. 2003) ("we must exercise prudence in labeling a given action as being contrary to the actor's economic interests, lest we be too quick to second-guess well-intentioned business judgments of all kinds").

Court should grant Plaintiffs' Motion for a Protective Order, and direct Defendants to withdraw the 28 subpoenas they served on absent class members and others.

### I.   Absent Class Members' Statement of their Own Interests Moots the Need for Any Discovery to Ascertain Their Interests.

In case after case over the past 10 years, the national wholesalers (Cardinal Health, McKesson Corp. and AmerisourceBergen Corp.), and other direct purchasers, have expressly stated their support of class actions substantially similar to this action, their desire to remain in those classes, and their desire to participate in any recovery obtained through settlement or trial. If any of the national wholesalers had ever concluded that such cases were *not* in its economic interests, or that its interests were somehow in "conflict" with the interests of the representative plaintiffs, it would have and could have chosen to opt-out. That has never happened. The opposite has occurred – the national wholesalers (as well as virtually all other direct purchasers) have consistently decided to remain in classes seeking overcharges caused by delayed generic competition. Here, one of the largest direct purchasers of AndroGel from Defendant Abbott, Cardinal Health, has already explained to Defendants that "based on its own business judgment," it "does not perceive any conflicts with the putative class representatives" and "[i]f the Androgel case is certified as a class action Cardinal Health intends to remain a member of the class." Ex. K to Chan Decl. Defendants nevertheless want

4

burdensome and irrelevant discovery to see if they can conjure up some "conflict" that they cannot articulate or explain. Neither *Valley Drug* nor any other authority supports such an unnecessarily wasteful exercise, or justifies ignoring a party's express statement concerning its interest.

Defendants' suggestion that in an overcharge case, a court should permit downstream discovery without any evidentiary showing, Opp. at 16-22, is unfounded and misrepresents *Valley Drug*. The Eleventh Circuit was presented with a record - early in the history of direct purchaser antitrust class actions relating to suppressed generic competition - that raised questions about whether the national wholesalers viewed that class action to be in their interests. *See* 350 F.3d at 1193 (commenting on "evidence that the cognizable antitrust injury suffered by the national wholesalers [resulting from delayed generic entry] may have been outweighed by" possible increased profit from the absence of generics, suggesting that the national wholesalers may have been willing to "trade[]" their cognizable damage claim for the alleged increased in profits). Defendants in *Valley Drug* offered some evidence that might have raised questions about the interests of the national wholesalers. Based on that showing (albeit untested at the time), the Eleventh Circuit permitted some limited downstream discovery to explore this

"potential conflict." *Id.* at 1191-1192.[5]

The record since, however, has changed dramatically. The national wholesalers have consistently remained in classes seeking overcharges from delayed generic competition. Defendants do not and cannot dispute this. Such unwavering support shows, simply, that the Eleventh Circuit's concern turned out to be unfounded. Given the vastly different record that exists today, the idea that Defendants – who want to defeat the claims of the entire class – should be permitted to take burdensome downstream discovery so that they might conjure up arguments about why the national wholesalers "should" oppose, rather than

---

[5]As explained in Plaintiffs' Opening Brief, the theories of "potential conflict" raised by the defendants in *Valley Drug* with respect to a class substantially similar to the proposed class here were tested and rejected. After months of difficult downstream discovery, the district court specifically found "there is no class antagonism or conflict, much less a fundamental one." *In re Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666, 679 (S.D. Fla. 2004).

Additionally, the very class that the defendants in *Valley Drug* claimed suffered from a fundamental conflict, and which the district court had declined to certify initially following remand, was ultimately certified by the court with the defendants agreeing that the requirements of Rule 23 had been met. To the extent Defendants suggest that the Rule 23 analysis the court in *Valley Drug* undertook for the settlement class was any less demanding than that for a litigation class, Opp. at 18-19, they are wrong. "*Regardless of whether a class is certified for settlement or for trial*, the Court must find that: … the representative parties will fairly and adequately protect the interests of the class." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 672 (S.D. Fla. 2006)(emphasis added). *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)(other than consideration of management problems, the remaining elements of Rule 23 "demand undiluted, even heightened, attention in the settlement context"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 697 (N.D. Ga. 2001).

support, this case, is nonsensical.

There is nothing in *Valley Drug* or any other case that permits a defendant to substitute its speculation for an absent class member's express statement of its own interest. Quite the contrary, "the individual interests of putative class members is respected" and that "courts must look at 'whether the affected class members have any objection to the plaintiffs acting for them in a representative capacity'." *Terazosin*, 223 F.R.D. at 679-80(quoting *In re Ivan F. Boesky Litig.*, 120 F.R.D. 624, 625-626 (S.D.N.Y. 1988)). Defendants have offered no reason why the national wholesalers, who Defendants admit are sophisticated companies, cannot be trusted to know whether their interests conflict with those of the named plaintiffs.

## II.     Defendants' Arguments that Putative Class Members May Have Benefitted on a Net Economic Basis Are Baseless and Unsupported.

Plaintiffs are seeking to recover damages caused by Defendants' anticompetitive conduct in the form of *overcharges*. It is well-settled that a direct purchaser – the *only* purchaser who can recover overcharge damages in a federal antitrust suit – is entitled to the *full amount of the overcharge* regardless of whether the direct purchaser passed on some (or all) of that overcharge to downstream purchasers. *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 205-07 (1990);

*Hanover Shoe, Inc. v. United Shoe Machine Corp.*, 392 U.S. 481, 494 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25, 736-37 (1977). It is also settled that the overcharge is complete at the time of purchase, and any "net economic benefit" derived on the resale of the overpriced product is entirely irrelevant. As explained by the Eleventh Circuit in *Valley Drug*:

> we read Hanover Shoe as directing a court to overlook the potential net gain, or conversely the potential absence of a net loss, that a direct purchaser may in fact have experienced for the purposes of providing the direct purchaser with standing to sue and a means for calculating damages in antitrust violation litigation.

*Valley Drug*, 350 F.3d at 1193. *See also In re Visa Check/Master Money Antitrust Litig.*, 192 F.R.D. 68, 85 (E.D.N.Y. 2000)(net effect "is immaterial when an antitrust plaintiff proceeds on an 'overcharge theory' of damages").

Nevertheless, Defendants speculate that some direct purchasers of AndroGel may "benefit from the effects of the [settlement agreements] alleged to be wrongful by the named plaintiffs because their net economic situation is better off when branded drugs dominate the market." Opp. at 12 (bracketed text in original). Defendants' argument is misguided, and unsupported by any requisite evidence.

First, Defendants' "purported conflict" is based on purported economic effects beyond the initial direct purchases (*i.e.* downstream effects) – which under Supreme Court precedent, are irrelevant to any claim or defense in a direct

8

purchaser antitrust case for overcharges.

Furthermore, Defendants' alleged "net benefit" argument is belied by the fact that the overcharges recoverable by putative class members in this case – which are automatically trebled under §4 of the Clayton Act – dwarf the amount of any conceivable economic benefit Defendants can speculate. It *is* in absent class members' interests to take part in this putative class action – which explains why companies, including the national wholesalers, do not opt-out of these cases. However, Defendants urge this Court to ignore the very "tradeoff" that the Eleventh Circuit was concerned about: the comparison between the net economic effects of delayed generic entry as compared to the overcharge damages that may be recovered.

Defendants do not contend, because they cannot, that the net economic benefits (even assuming any occurred) could be larger than the overcharges. Instead, Defendants claim the issue is irrelevant. Opp. at 12-13.  Defendants rely, for this argument, on the district court's decision on remand in *Valley Drug* (*id.,* citing *Terazosin*, 223 F.R.D. at 678). Respectfully, the district court on remand erred. Indeed, the district court on remand stated that: "Defendants cannot articulate any potential or actual conflict or antagonism with respect to economic interests or objections." 223 F.R.D. at 678. That conclusion should have led the

9

court to certify the class (which, indeed, the court then did in connection with settlement). This Court should not make a similar mistake.

If any class member, whether the national wholesalers or any other, concludes this case is not in its interests, it may opt-out once the class is certified under FED. R. CIV. P. 23(c)(2). *See In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995)("those large-volume purchasers who do not wish to participate in the proposed class action are free to opt out of the class pursuant to the procedure set forth in Rule 23(c)(2)"); *Larry James v. GM Corp*., 164 F.R.D. 428, 437 (N.D. Miss. 1996)(those who "disputes the appropriateness of the suit" can "opt-out"); 1 Newberg on Class Actions §3.30 at 448-49 (4th ed. 2002)(the opt-out provision "is an important method for determining whether alleged conflicts are real or speculative.  It avoids class certification denial for conflicts that are merely conjectural and, if conflicts do exist, resolves them by allowing dissident class members to exclude themselves from the action").

### III.    Defendants' Subpoenas Directed at Absent Class Members and Others are Unjustifiably Burdensome.

Despite the extreme breadth of their subpoenas – which include 18 requests with *over 130 subparts* – Defendants feign surprise that Plaintiffs would complain the subpoenas are burdensome. *See* Opp. at 20-21. Burden is a factor that a court must consider in determining whether to permit discovery from absent class

members in the first place. *Luna v. Del Monte Fresh Produce*, 2007 U.S. Dist. LEXIS 36893, at *21 (N.D. Ga. May 18, 2007); *Wainwright v. Kraftco Corp.*, 54 F.R.D. 532, 534 (N.D. Ga. 1972); *Cooper v. Pacific Life Ins. Co.*, 2005 U.S. Dist. LEXIS 16465, at *5-7 (S.D. Ga. Aug. 5, 2005). Defendants did not seek leave of Court before serving their overbroad and burdensome subpoenas, and made no showing to this Court that such discovery from absent class members was necessary at all.

As evinced by the Declaration of Jeff Romano, Doc. No. 185, a representative of a named plaintiff that received document requests nearly identical to the 28 subpoenas, the burden on any entity having to respond to such requests is substantial. Mr. Romano, Prescription Drug Buyer/Merchandiser at Meijer, stated that "[g]athering and producing documents and data responsive to the Requests would be extremely burdensome to Meijer" and estimated that it would require "Meijer team members at least two (2) months working full time to gather the documents and data demanded in the Requests." Doc. No. 185 at ¶¶6-7. *See also* Declarations of Edward Kirker and Gayle White (Doc. No. 166) (filed under seal). This is because Defendants' subpoenas ask for, among other things, documents and

data on at least 88 products[6] covering a time period of 11 years. The individual subpoena recipients, of course, retain the right to object to the subpoenas on burden and other grounds. Our point is simply that the subpoenas, on their face, are hugely burdensome.

Defendants suggest that the size of some of the subpoena recipients justifies their burdensome subpoenas. Opp. at 22. The size of a company, however, does not give Defendants license to serve overbroad and burdensome subpoenas. And Defendants all but ignore the burdens on the remaining 24 smaller subpoena recipients.[7]

Also, Defendants did not attempt to "negotiate" these subpoenas with Plaintiffs. In fact, Defendants served the subpoenas without consulting with Plaintiffs. As the record of correspondence Defendants submitted in support of their Opposition reveals, at no time before November 11, 2010 (when Defendants issued the 28 subpoenas) did Defendants inform Plaintiffs of their intent to serve

---

[6] This number includes AndroGel and the 22 brand name drugs listed in Defendants' subpoena as well as the one or more generic versions of each of these drugs.  While a brand and its generic are essentially identical drugs, a discovery request seeking data about both is seeking two sets of data.

[7] Though Defendants point out that a few subpoena recipients have produced or agreed to produce some material, Defendants have *not* stated that these limited productions satisfy their subpoenas.  If these very limited productions would satisfy the subpoenas, Defendants should say so.

subpoenas on absent class members and others, or the types of information they intended to seek from potential subpoena recipients.[8]   The only suggestion of Defendants' upcoming subpoenas appeared in a letter, dated November 1, 2010 (that Defendants did not attach to their filing), which stated "Defendants believe that under *Valley Drug*, downstream discovery can be taken not only from the putative class representatives, but also from putative class members." Neubauer Letter, dated Nov. 1, 2010 (Chan Decl., Ex. L). There was no attempt to discuss with Plaintiffs – before the fact – whether the subpoenas on absent class members were warranted.[9]

Moreover, Defendants did not provide Plaintiffs with prior notice of the subpoenas as required under Fed. R. Civ. P. 45(b)(1)(requiring "before [the subpoena] is served, a notice must be served on each party"). *See* Doc. No. 146 (providing *late* notice on Nov. 16 of subpoenas they issued and served on Nov. 11). It was not until some absent class members (with whom Plaintiffs' counsel have had a long-standing relationship) contacted Plaintiffs' counsel regarding

---

[8] All of the letters Defendants submitted purportedly in support of their efforts to meet and confer regarding the subpoenas are dated *after* Defendants had already issued and served the subpoenas. *See* Neubauer Decl., Exs. 9, 20, 23.

[9] In fact, Defendants were vague even as to the downstream discovery Defendants were seeking from the named plaintiffs. *See* Kohn Letter, dated Nov. 8, 2010 (Chan Decl., Ex. M) (requesting electronic sales data for AndroGel, and an undefined "basket" of other drugs).

subpoenas they had received, that Plaintiffs learned of the subpoenas.  Defendants have no basis to complain when they serve blunderbuss and facially overbroad and burdensome subpoenas seeking irrelevant information, all without prior notice or discussion.

Nor did Defendants communicate that their discovery would be necessary if class members were to claim lost profits, until *after* the 28 subpoenas had been served. *See* Neubauer Letter, dated Nov. 16, 2010 (Chan Decl., Ex. N)(emphasis added). Discovery for this purpose is unnecessary because Plaintiffs here are claiming overcharge damages – not lost profits.

Similarly unfounded is Defendants' suggestion that Plaintiffs' counsel improperly "interfered" with the subpoenas. Opp. at 9-11. As an initial matter, Plaintiffs' counsel have represented multiple direct purchaser classes in the pharmaceutical and medical device fields for over 10 years, and as such, Plaintiffs' counsel have developed long-standing relationships with many of the absent class members in this case. And as proposed class counsel here, Plaintiffs' counsel have a duty to safeguard their interests.[10]  Indeed, the Eleventh Circuit has discouraged discovery from absent class members precisely because of the coercive effect it

---

[10] Response to and communication with blindsided subpoena recipients in such circumstance is permissible and expected.

14

can have on class members remaining in the class. *See* Opening Bf. at 16-19.[11]

### IV. The Subpoenas are Not Reasonably Calculated to Discover Information Related to Market Definition.

Similarly questionable is Defendants' claim that the subpoenas also seek "documents related to market definition," which they raised *for the very first time* in their Opposition. Opp. at 7. As raised in Plaintiffs' November 8, 2010 letter, there is no relevance or utility to purchase data from *a handful* of class members in proving or disproving the composition of the relevant antitrust product market – especially when national, market-wide data from IMS or Scott-Levin (companies that gather nationwide data on, *inter alia*, prescription drug sales and prices) is widely available and routinely used in these types of cases. *See* Kohn Letter, dated Nov. 8, 2010 (Chan Decl., Ex. M). In fact, Defendants *disclaimed* this theory of relevance in a letter to Plaintiffs. *See* Neubauer Letter, dated Dec. 23, 2010 (Chan Decl., Ex. O).

### CONCLUSION

For the reasons stated above, and in our Opening Brief, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for a Protective Order

---

[11] Smith Foote LLP, one of the law firms representing Plaintiffs, represents Miami-Luken, Inc.; Burlington Drug Co., Inc.; Dik Drug Co.; King Drug of Florence, Inc.; Prescription Supply, Inc.; Smith Drug Co.; Valley Wholesale Drug Co., Inc.; and Value Drug Company in connection with the non-party subpoenas served by Defendants.

and direct Defendants to withdraw the 28 subpoenas on absent class members and others.   Plaintiffs also respectfully request oral argument, as we believe it may assist the Court.

Respectfully submitted,

Date:  January 27, 2011                    _____/s/ *Kenneth S. Canfield*_____

Kenneth S. Canfield
Ga. Bar. No. 107744
kcanfield@dsckd.com
1355 Peachtree Street, Suite 1600
Atlanta, Georgia 30309
Telephone; (404) 881-8900
Facsimile (404) 881-3007

David F. Sorensen, Pro Hac Vice
dsorensen@bm.net
Eric Cramer, Pro Hac Vice
ecramer@bm.net
Ellen Noteware, Pro Hac Vice
enoteware@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215)-875-4683
Facsimile: (215)-875-4604

Joshua P. Davis (SBN. 193254)
davisj@usfca.edu
LAW OFFICES OF JOSHUA P. DAVIS
437A Valley Street
San Francisco, CA 94131
Telephone: (415) 422-6223

16

David Balto
LAW OFFICES OF DAVID BAL TO
2600 Virginia Ave NW Suite 1111
Washington, DC 20037

*Counsel for Rochester Drug Co-operative, Inc.*


Bruce E. Gerstein (admitted Pro Hac Vice)
bgerstein@garwingerstein.com
Joseph Opper (admitted Pro Hac Vice)
jopper@garwingerstein.com
Elena K. Chan (admitted Pro Hac Vice)
echan@garwingerstein.com
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212 ) 764-6620

David P. Smith
dpsmith@smithfoote.com
W. Ross Foote
rfoote@smithfoote.com
Susan Segura
ssegura@smithfoote.com
THE SMITH FOOTE LAW FIRM LLP
720 Murray Street
P.O.Box 1632
Alexandria, LA 71309
Telephone: (318) 445-4480
Facsimile: (318)487-1741

John Gregory Odom
jodom@odrlaw.com
Stuart Des Roches
stuart@odrlaw.com

17

Andrew Kelly
akelly@odrlaw.com
John Fitzpatrick
jfitzpatrick@odrlaw.com
ODOM & DES ROCHES
Poydras Center
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Telephone: (504) 522-0077
Facsimile: (504) 522-0078

Russell A. Chorush
rchorush@hpcIlp.com
HElM PAYNE & CHORUSH LLP
Chase Tower
600 Travis, Suite 6710
Houston, TX 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

*Counsel for Louisiana Drug Company, Inc.*

Linda P. Nussbaum
John D. Radice
Grant & Eisenhofer P.A.
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501

Joseph M. Vanek
jvanek@vaneklaw.com
David P. Germaine
dgermaine@vaneklaw.com
VANEK, VICKERS & MASINI, P.C.
111 South Wacker Drive, Suite 4050
Chicago, IL 60606

18

Telephone: (312)224-1500
Facsimile: (312) 224-1510

Paul E. Slater
pes@sperling-law.com
SPERLING & SLATER
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
Facsimile: (312)641-6492

Joseph R. Saveri (SBN 130064)
isaveri@lchb.com
Eric B. Fastiff (SBN 182260)
efastiff@1chb.com
Jordan Elias (SBN 228731)
ielias@1chb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
Battery Street, Suite 3000
San Francisco, CA 94111-3339
Telephone. (415) 956-1000
Facsimile. (415) 956-1008

Donald Perelman
dperelman@fineblack.com
Roberta Liebenberg
rliebenberg@fineblack.com
1835 Market Street, 28th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 567-6565
Facsimile: (215) 568-5872

*Counsel for Meijer, Inc. and Meijer
Distribution, Inc.*

Dianne M. Nast

19

dnast@rodanast.com
Erin C. Burns
eburns@rodanast.com
RodaNast, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Phone: 717-892-3000
Fax: 717-892-1200

*Counsel for Stephen L. Lafrance Pharmacy, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel hereby certifies that the foregoing Direct Purchaser Class Plaintiffs' Reply Brief in Support of Their Motion for Protective Order has been prepared in accordance with Local Rule 5.1 using Times New Roman 14 point font.

Date: January 27, 2011                    _____/s/ *Kenneth S. Canfield*_____
                                          Kenneth S. Canfield
                                          Ga. Bar. No. 107744
                                          kcanfield@dsckd.com
                                          1355 Peachtree Street, Suite 1600
                                          Atlanta, Georgia 30309
                                          Telephone; (404) 881-8900
                                          Facsimile (404) 881-3007