IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | CASE NO. 1:09-MD-2084-TWT<br><br>DIRECT PURCHASER CLASS ACTIONS<br><br>DIRECT PURCHASER INDIVIDUAL ACTIONS |
| ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,<br><br>       Plaintiffs,<br><br>       v.<br><br>UNIMED PHARMACEUTICALS, INC., ET AL.<br><br>       Defendants. | CASE NO. 1:09-CV-956-TWT |
| LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,<br><br>       Plaintiff,<br><br>       v.<br><br>UNIMED PHARMACEUTICALS, INC., ET AL.,<br><br>       Defendants. | CASE NO. 1:09-CV-957-TWT |

| | |
|---|---|
| **MEIJER, INC., ET AL.,**<br>        Plaintiffs,<br><br>             v.<br><br>**UNIMED PHARMACEUTICALS, INC.,**<br>**ET AL.**<br>        Defendants. | **CASE NO. 1:09-CV-958-TWT** |
| **STEPHEN L. LAFRANCE PHARMACY,**<br>**INC. ET AL.**<br>        Plaintiffs,<br>             v.<br>**UNIMED PHARMACEUTICALS, INC.,**<br>**ET AL.**<br>        Defendants. | **CASE NO. 1:09-CV-2913-TWT** |
| **RITE AID CORPORATION, ET AL.,**<br>        Plaintiffs,<br>             v.<br>**UNIMED PHARMACEUTICALS, INC.,**<br>**ET AL.**<br>        Defendants. | **CASE NO. 1:09-CV-2776-TWT** |
| **WALGREEN CO., ET AL.,**<br>        Plaintiffs,<br><br>             v.<br><br>**UNIMED PHARMACEUTICALS,  LLC,**<br>**ET AL.**<br>        Defendants. | **CASE NO. 1:09-CV-3019-TWT** |

SUPERVALU, INC.,

        Plaintiff,

                v.

UNIMED PHARMACEUTICALS, LLC,
ET AL.

        Defendants.

**CASE NO. 1:10-CV-1024-TWT**

## DEFENDANTS PAR PHARMACEUTICAL COMPANIES, INC. AND PADDOCK LABORATORIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISQUALIFY DR. BOZENA B. MICHNIAK AS PLAINTIFFS' PROPOSED EXPERT

# TABLE OF CONTENTS

TABLE OF CITATIONS.................................................................................. v

PRELIMINARY STATEMENT....................................................................... 1

FACTUAL BACKGROUND ........................................................................... 2

A.   Dr. Michniak's Confidential Relationship with Par/Paddock's
Patent Counsel ....................................................................................... 2

B.   Pursuant to the Confidential Relationship, Par/Paddock's Patent
Counsel Shared Confidences with Dr. Michniak. ...................................... 4

C.   Plaintiffs Retained Dr. Michniak Despite Knowing of Her Prior
Retention by Greenberg Traurig on behalf of Par/Paddock. ...................... 6

ARGUMENT ................................................................................................. 8

I.   Dr. Michniak's Confidential Work with Greenberg Traurig for
Par/Paddock in the Patent Case Precludes Plaintiffs' Retention of
Her in this Case....................................................................................... 8

II.   Par/Paddock Is Entitled to Know the Extent of Plaintiffs' Work
with Dr. Michniak to Determine the Propriety of Further Remedy. ........ 14

CONCLUSION .............................................................................................. 16

CERTIFICATE OF COMPLIANCE ................................................................ 17

# TABLE OF CITATIONS

CASES

*Cordy v. Sherwin Williams Co.,*
   156 F.R.D. 575 (D.N.J. 1994)............................................................ 11, 12, 13, 14

*Koch Refining Co. v. Jennifer L. Boudreau M/V,*
   85 F.3d 1178 (5th Cir. 1996)................................................................ 8, 9, 11, 13

*Mayer v. Dell,*
   139 F.R.D. 1 (D.D.C. 1991)............................................................................. 8

*N. Pacifica, LLC v. City of Pacifica,*
   335 F. Supp. 2d 1045 (N.D. Cal. 2004) ........................................................ 14

*Wang Labs., Inc. v. Toshiba Corp.,*
   762 F. Supp. 1246 (E.D. Va. 1991)......................................................... 9, 12, 13

RULES

Fed. R. Civ. P. 26(b)(4)(D) ........................................................................... 10

PRELIMINARY STATEMENT

Defendants Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc. respectfully move the Court to disqualify Plaintiffs' proposed expert, Dr. Bozena B. Michniak.

Plaintiffs have engaged Dr. Michniak despite knowing of her prior retention by Greenberg Traurig LLP on behalf of Par/Paddock in the patent litigation underlying this sham-litigation antitrust suit. As detailed in the accompanying declaration of Daniel A. Ladow, Par/Paddock's co-lead patent counsel, Greenberg Traurig formally retained Dr. Michniak for expert advice and consultation in the patent case on behalf of Par/Paddock. Dr. Michniak worked with Greenberg Traurig over a course of six months for which she billed and was paid at least $7,800. Mr. Ladow's declaration further details the confidential exchanges between Greenberg Traurig and Dr. Michniak during multiple sessions.

Greenberg Traurig's work with Dr. Michniak in the underlying patent case is substantially related to Plaintiffs' current antitrust suit, which alleges that the underlying patent case was a sham. In these circumstances, courts agree that the expert must be disqualified and that to determine the sufficiency of that remedy, opposing counsel who have worked directly or indirectly with the side-switching expert must disclose the extent of those interactions.

Undersigned counsel confirms that the parties have met and conferred for several weeks orally and in writing regarding Plaintiffs' proposed retention of Dr. Michniak and are at an impasse.

FACTUAL BACKGROUND

### A.   Dr. Michniak's Confidential Relationship with Par/Paddock's Patent Counsel

Par/Paddock's counsel in the patent litigation underlying this sham-litigation antitrust suit, Greenberg Traurig LLP, retained Dr. Bozena B. Michniak in March 2004 as an expert consultant to provide advice to Greenberg Traurig on behalf of Par/Paddock concerning the patent litigation.  *See* March 12, 2004 Executed Letter Agreement between Greenberg Traurig LLP and Bozena B. Michniak, Ph.D. at 1 ("This letter memorializes your agreement to consult with and provide your expert advice to Greenberg Traurig LLP in connection with the above-captioned patent infringement litigation . . . .") (Ex. A).[*]

Greenberg Traurig's retention agreement with Dr. Michniak provides:  "you will not disclose to anyone (i) information learned by you in the course of assisting us (or any other experts retained by us), (ii) any confidential communications with us, Paddock or Par, their partners, officers, agents or employees, or any other

---

[*] Each lettered exhibit cited herein is attached as a true and accurate document exhibit to the sworn declaration of Eric Grannon accompanying this motion.

experts retained by us, or (iii) any documents containing or reflecting such information or communications." Ex. A at 1.

The retention agreement provides only one exception to these non-disclosure obligations agreed to by Dr. Michniak:  "The only exception to the foregoing is that in the event that you become a testifying expert information on which you rely for your opinions in the case could be disclosed to the parties, their counsel and the Court in this action . . . ." Ex. A at 1.

In addition to the non-disclosure obligations undertaken by Dr. Michniak, her retention agreement with Greenberg Traurig provides the following use restriction:  "In addition, you will at no time use any confidential information learned by you in the course of assisting us for any purpose other than to render such assistance." Ex. A at 1.

As detailed in the accompanying 12-page declaration of Daniel A. Ladow, Par/Paddock's co-lead counsel in the patent litigation for the entire three years the AndroGel patent case was before this Court, Dr. Michniak proceeded to advise Greenberg Traurig on the patent case for a period of six months in 2004–2005. Declaration of Daniel A. Ladow ¶ 28.  During that period, Dr. Michniak billed Greenberg Traurig for at least 24 hours of time at $325 per hour for her advice and consultation. *Id.*

Ultimately, Greenberg Traurig decided to maintain Dr. Michniak as a non-testifying, consulting expert rather than use her as a testifying expert.  Ladow Decl. ¶¶ 29-30.   Greenberg Traurig instead used Dr. Loyd Allen as Par/Paddock's testifying expert on many of the issues that Dr. Michniak would have covered as a testifying expert had Greenberg Traurig chosen to use her in that fashion.  Ladow Decl. ¶¶ 29-30.

**B.     Pursuant to the Confidential Relationship, Par/Paddock's Patent Counsel Shared Confidences with Dr. Michniak.**

Greenberg Traurig retained Dr. Michniak due to her expertise in the areas of topical and transdermal drug delivery, which were at issue in the AndroGel patent litigation.   Ladow Decl. ¶¶ 10, 13, 20.   As further detailed in Mr. Ladow's declaration, Greenberg Traurig sought Dr. Michniak's advice on claim construction, which affected both the infringement and validity issues in the case, *id.* at ¶ 18, as well as on the "question of whether the subject matter claimed would have been obvious to one of ordinary skill in the art at the time," *id.* at ¶ 22.

In multiple sessions between Greenberg Traurig and Dr. Michniak, counsel shared confidential information with her:   "We solicited Dr. Michniak-Kohn's expert opinions on these issues both as background and to develop and help better prepare Par and Paddock's positions, both factual and legal, on these issues.  Over the course of a number of phone calls and one or more in-person meetings, we

discussed these issues with her and, in the process, shared our own developing mental impressions, legal analysis, and case strategy with her." Ladow Decl. ¶ 24.

Likewise, Dr. Michniak's advice to Greenberg Traurig during these two-way exchanges influenced Greenberg Traurig's case strategy, including specifically, for example, research Dr. Michniak conducted at Greenberg Traurig's request concerning the obviousness issue in the patent case. Ladow Decl. ¶¶ 25-26.

Greenberg Traurig conducted these sessions soliciting advice from, and sharing information with, Dr. Michniak with an expectation of, and reliance upon, her confidentiality: "In having such conversations with her regarding her expert opinions and our developing work product views on claim construction, infringement and validity, we expected that the contents of those conversations would be protected by the attorney work product doctrine, the attorney client privilege, and by Dr. Michniak-Kohn's own confidentiality obligations." Ladow Decl. ¶ 27; *see also id.* at ¶ 19.

Indeed, Mr. Ladow avers that "the subject matter that we discussed in confidence with Dr. Michniak-Kohn when we were preparing the case for trial concerns the vast majority of the central contested issues in the case[.]" Ladow Decl. ¶ 31. The centrality of these issues, and the corresponding conferrals between Dr. Michniak and Greenberg Traurig, to the patent case necessarily means

that they are at issue in Plaintiffs' current sham-litigation antitrust suit. *See* Ladow Decl. ¶ 31 ("Because these issues all speak to the ultimate merits of the case, I understand that they are implicated by plaintiffs' current sham litigation antitrust claims.").

For all these reasons, the sworn testimony of Mr. Ladow is that Dr. Michniak cannot work for Plaintiffs without compromising the confidentiality of the substantial work she did with him and his colleagues at Greenberg Traurig on behalf of Par/Paddock in the patent case: "I do not see how Dr. Michniak-Kohn could be retained and act as an expert by plaintiffs in the sham case without compromising the protections and obligations surrounding the contents of the confidential, work product protected, attorney client privileged communications that occurred with her in the context of the confidential relationship that Greenberg Traurig entered into with Dr. Michniak-Kohn for advice in the AndroGel Patent Litigation on behalf of Paddock and Par." Ladow Decl. ¶ 31.

### C.   Plaintiffs Retained Dr. Michniak Despite Knowing of Her Prior Retention by Greenberg Traurig on behalf of Par/Paddock.

On February 25, 2011, Plaintiffs informed Par/Paddock of Plaintiffs' intention to retain Dr. Michniak as an expert in this case. *See* February 25, 2011 Letter of Elena K. Chan of Garwin Gerstein & Fisher LLP ("Although we are under no obligation under the Stipulated Protective Order or otherwise to make

disclosure of experts at this time, Direct Purchaser Plaintiffs are disclosing Dr. Bozena B. Michniak-Kohn and Dr. Howard Ira Maibach to afford Defendants an opportunity to object.") (Ex. B).

Plaintiffs subsequently have admitted that they sought to retain Dr. Michniak despite knowing of her prior retention by Greenberg Traurig on behalf of Par/Paddock in the underlying patent litigation. *See* March 9, 2011 Letter of Russell A. Chorush of Heim Payne & Chorush LLP at 3 ("With regard to Dr. Michniak, when I originally contacted Dr. Michniak, we discussed her prior retention by Par/Paddock.") (Ex. C); March 16, 2011 Letter of David F. Sorensen of Berger & Montague, P.C. at 2 ("Dr. Michniak told Russ Chorush, during their first conversation, of her prior retention . . . .") (Ex. D).

Indeed, despite knowing of Dr. Michniak's prior retention by Greenberg Traurig on behalf of Par/Paddock, Plaintiffs have had their own purportedly confidential communications with her. *See* March 4, 2011 Letter of Russell A. Chorush of Heim Payne & Chorush LLP to Dr. Michniak ("Also, please maintain the confidentiality of my communications with you.") (Ex. E).

Undersigned counsel for Par/Paddock confirm that to date Plaintiffs' counsel persist that they are entitled to retain Dr. Michniak as an expert in this case. *See* March 16, 2011 Letter of David F. Sorensen of Berger & Montague, P.C. at 1-2

("Please be advised that we intend to file a motion permitting Plaintiffs to retain these experts . . . . Please advise, on or before the close of business on Friday, March 18, whether Defendants (1) will withdraw their objection to our retention of these experts . . . . Thereafter we will move, as we believe our obligation to meet and confer will have been satisfied.") (Ex. D).   Undersigned counsel for Par/Paddock also confirm that Plaintiffs have refused repeated oral and written requests for information on the extent of Plaintiffs' contacts with Dr. Michniak. *See, e.g., id.* at 1.

## ARGUMENT

**I.     Dr. Michniak's Confidential Work with Greenberg Traurig for Par/Paddock in the Patent Case Precludes Plaintiffs' Retention of Her in this Case.**

"Federal courts have the inherent power to disqualify experts[.]" *Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996). The Eleventh Circuit does not appear to have addressed expert disqualification, but federal courts across the country have followed a common analysis. "First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?  Second, was any confidential or privileged information disclosed by the first party to the expert?" *Koch Refining*, 85 F.3d at 1181 (quoting *Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C. 1991) (reviewing

cases)) (internal quotation marks omitted); *see also, e.g., Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) ("Affirmative answers to both inquiries compel disqualification.").

Each prong of this test is met easily here.  First, the express terms of Greenberg Traurig's retention agreement with Dr. Michniak on behalf of Par/Paddock in the underlying patent litigation made it "objectively reasonable" for Greenberg Traurig "to conclude that a confidential relationship existed[.]" *Koch Refining*, 85 F.3d at 1181.  As detailed in the factual background, the retention agreement provides comprehensive non-disclosure obligations as well as a use restriction.  *E.g.*, Ex. A at 1 ("you will at no time use any confidential information learned by you in the course of assisting us for any purpose other than to render such assistance.").

Thus, it cannot be contended seriously that Greenberg Traurig did not have an objectively reasonable basis for concluding that a confidential relationship existed with Dr. Michniak, and Greenberg Traurig did in fact conclude that such a relationship existed.  Ladow Decl. ¶ 19.  ("Based on the provisions of the retainer agreement and the confidential nature of the relationship between counsel and a consulting expert, all of which I believe were discussed with Dr. Michniak-Kohn, I expected and understood that Dr. Michniak-Kohn would keep in strictest

confidence all work done as part of her engagement, as well as the conversations she had with me and my colleagues.").

Furthermore, that confidential relationship remained unquestionably so because Greenberg Traurig decided to maintain Dr. Michniak as a non-testifying, consulting expert rather than as a testifying expert. *See* Ex. A at 1 ("The only exception to the foregoing [non-disclosure obligations] is that in the event that you become a testifying expert information on which you rely for your opinions in the case could be disclosed . . . ."); *cf.* Fed. R. Civ. P. 26(b)(4)(D) ("*Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.").

As to the second prong of the disqualification test, Greenberg Traurig plainly shared confidential information with Dr. Michniak. As detailed in Mr. Ladow's declaration and discussed in the factual background, after executing the retention agreement, Greenberg Traurig worked with Dr. Michniak as a non-testifying, expert consultant during multiple sessions over a six-month period for which Dr. Michniak billed at least $7,800 for her advice and consultation. Ladow Decl. ¶¶ 24-28.

Moreover, as discussed in the factual background, Mr. Ladow's detailed declaration spells out the nature of these exchanges between Greenberg Traurig and Dr. Michniak—and even several of the specific topics in the patent case that they discussed and worked on together. Ladow Decl. ¶¶ 10, 20-27, 31. These details throughout Mr. Ladow's declaration substantiate his concluding testimony that Greenberg Traurig shared confidential information with Dr. Michniak. *See* Ladow Decl. ¶ 24. ("we discussed these issues with her and, in the process, shared our own developing mental impressions, legal analysis, and case strategy with her."); *id.* at ¶ 31 ("the subject matter that we discussed in confidence with Dr. Michniak-Kohn when we were preparing the case for trial concerns the vast majority of the central and contested issues in the case . . . .").

Notably, these case-strategy exchanges between Greenberg Traurig and Dr. Michniak entail precisely the kind of confidential disclosures that courts have cited as the basis for disqualifying experts. *E.g.*, *Koch Refining*, 85 F.3d at 1182 (disqualifying expert) ("Such information would include discussion of the retaining party's strategies in the litigation, the kinds of experts the party expected to retain, the party's views of the strengths and weaknesses of each side, the role of each of the party's witnesses to be hired, and anticipated defenses.") (internal quotation marks and alteration omitted); *Cordy v. Sherwin Williams Co.*, 156 F.R.D. 575,

581 (D.N.J. 1994) (disqualifying expert) ("He entered into a written contract.  He was paid.  He learned their litigation strategy and reviewed their investigation.  He billed for 28 hours of work.  He rendered some kind of oral opinion.  There was extensive contact between [the expert] and [the law firm].  Their relationship was clearly not a preliminary interview or consultation in order to determine whether an attorney desired to enter into a relationship with an expert."); *Wang Labs.*, 762 F. Supp. at 1249 (disqualifying expert and holding that "outlining potential defenses to [plaintiff's patent] suit are the clearest examples" of "confidential work product material" and that, "No experienced litigator would freely disclose these materials to opposing counsel.").

Furthermore, there is a substantial relationship between the work that Greenberg Traurig and Dr. Michniak did together in the patent litigation and the work that Plaintiffs seek to do with her on Plaintiffs' current sham-litigation antitrust claims.  Greenberg Traurig retained and worked with Dr. Michniak to analyze and strategize concerning the strengths and weaknesses of Unimed/Solvay's patent suit and the strengths and weaknesses of Par/Paddock's defenses thereto.  Plaintiffs' current sham-litigation antitrust claims, in turn, are about the alleged weakness of Unimed/Solvay's patent suit and the alleged strength of Par/Paddock's defenses thereto.  *See* Ladow Decl. ¶ 31 ("the essence of the

sham litigation antitrust claims relates to an appraisal of the merits of the case on the central issues of claim construction, infringement and validity . . . I do not see how Dr. Michniak-Kohn could be retained and act as an expert by plaintiffs in the sham case without compromising the protections and obligations [of her retention in the patent case]").

That substantial relationship means that Plaintiffs can be no more entitled to retain Par/Paddock's former patent expert to use against Par/Paddock in this sham-litigation antitrust case than Unimed/Solvay would have been entitled to hire Dr. Michniak to use against Par/Paddock in the underlying patent case. *See Koch Refining*, 85 F.3d at 1181 ("no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention. This is a clear case for disqualification.") (quoting *Wang Labs.*, 762 F. Supp. at 1248) (internal quotation marks omitted).

For these reasons, although the expert disqualification issue is "rare," *Koch Refining*, 85 F.3d at 1181 (disqualifying expert), when the test is met as easily as it is here, disqualification is the only course. *See also, e.g., Cordy*, 156 F.R.D. at 582 ("It is simply not possible for [the expert] to ignore what he learned from [the law

firm].  At the very least, his engagement with [the law firm] has to subliminally affect his testimony and assessment of facts.") (internal quotation marks omitted).

## II.   Par/Paddock Is Entitled to Know the Extent of Plaintiffs' Work with Dr. Michniak to Determine the Propriety of Further Remedy.

As demonstrated above, disqualification of Dr. Michniak as Plaintiffs' proposed expert is required.  But that may not be a sufficient remedy.  *E.g., Cordy*, 156 F.R.D. at 584 (disqualifying law firm as a result of taint from disqualified expert and holding that every party has an "interest in a trial free from the risk that confidential information will be used against him and the public's interest in the integrity of the judicial process itself demand[s] it.  It is not sufficient simply to disqualify the expert to deter such conduct in the future.  Counsel must also understand they are at some risk should they encourage (or fail to discourage) this kind of behavior."); *see also, e.g., N. Pacifica, LLC v. City of Pacifica*, 335 F. Supp. 2d 1045, 1051 (N.D. Cal. 2004) ("The central concern in cases in which counsel has retained a side-switching expert is whether counsel has unfairly obtained confidential information about the opposing party.").

Plaintiffs sought to retain Dr. Michniak despite knowing of her prior retention by Par/Paddock.  Plaintiffs have refused to disclose the extent of their dealings with Dr. Michniak, and Plaintiffs say they have had confidential communications with Dr. Michniak.  *E.g.*, March 4, 2011 Letter of Russell A.

Chorush of Heim Payne & Chorush LLP to Dr. Michniak ("Also, please maintain the confidentiality of my communications with you.") (Ex. E).

The logical consequence of Dr. Michniak's disqualification is that Par/Paddock is entitled to information sufficient to determine whether any of Plaintiffs' counsel also must be disqualified. There is no doubt that Dr. Michniak was exposed to Par/Paddock's confidences in her work with Greenberg Traurig and that such information is substantially related to this antitrust suit alleging that the patent case was a sham. The question thus becomes which of Plaintiffs' counsel may have been tainted by working with Dr. Michniak directly or indirectly despite knowing of her prior retention by Par/Paddock.

Par/Paddock is entitled to information such as: (i) any retainer or other agreement between Plaintiffs, or their counsel, and Dr. Michniak; (ii) when Plaintiffs first contacted Dr. Michniak; (iii) which of Plaintiffs' counsel have had interactions with Dr. Michniak; (iv) the number of hours, billed or unbilled, spent by Dr. Michniak consulting with Plaintiffs; (v) the number of hours, billed or unbilled, spent by Plaintiffs' counsel consulting with Dr. Michniak or working on matters concerning her consultations with Plaintiffs; and (vi) which of Plaintiffs' counsel have not communicated directly with Dr. Michniak but have communicated with other counsel concerning consultations with Dr. Michniak.

## CONCLUSION

For the foregoing reasons, Par/Paddock respectfully request that this Court disqualify Dr. Michniak from acting as an expert for Plaintiffs, order Plaintiffs and their counsel to refrain from any further communications with Dr. Michniak, and require Plaintiffs and their counsel to disclose the extent of their interactions with Dr. Michniak as provided in the accompanying proposed order.

Respectfully submitted this 21st day of March, 2011.

Eric Grannon*
J. Mark Gidley*
White & Case LLP
701 13th Street, NW
Washington, D.C. 20005
(202) 626-3600 (telephone)
(202) 639-9355 (facsimile)
egrannon@whitecase.com
mgidley@whitecase.com

* Practicing pursuant to this Court's
Initial Case Management Order

/s/ Mark G. Trigg
Mark G. Trigg
Georgia Bar No. 716295
Ryan C. Grelecki
Georgia Bar No. 245068
Greenberg Traurig LLP
3290 Northside Parkway, Suite 400
The Forum
Atlanta, GA 30327
(678) 553-2415 (telephone)
(678) 553-2212 (facsimile)
triggm@gtlaw.com
greleckir@gtlaw.com

*Counsel for Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel hereby certifies that the foregoing motion and memorandum of law has been prepared in accordance with Local Rule 5.1 using Times New Roman 14 point font.

Respectfully submitted this 21st day of March, 2011.

/s/ Mark G. Trigg
Mark G. Trigg
Georgia Bar No. 716295
GREENBERG TRAURIG, LLP
The Forum
3290 Northside Parkway, Suite 400
Atlanta, GA 30327
(678) 553-2100 (telephone)
(678) 553-2212 (facsimile)
greleckir@gtlaw.com

*Counsel for Defendants Par
Pharmaceutical Companies, Inc.
& Paddock Laboratories, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| | **CASE NO. 1:09-MD-2084-TWT** |
| **IN RE ANDROGEL ANTITRUST LITIGATION (II)** | **DIRECT PURCHASER CLASS ACTIONS** |
| | **DIRECT PURCHASER INDIVIDUAL ACTIONS** |
| **ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,**<br><br>         **Plaintiffs,**<br><br>                 v.<br><br>**UNIMED PHARMACEUTICALS,  INC., ET AL.**<br><br>         **Defendants.** | **CASE NO. 1:09-CV-956-TWT** |
| **LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,**<br><br>         **Plaintiff,**<br><br>                 v.<br><br>**UNIMED PHARMACEUTICALS,  INC., ET AL.,**<br><br>         **Defendants.** | **CASE NO. 1:09-CV-957-TWT** |

| | |
|---|---|
| **MEIJER, INC., ET AL.,**<br>        **Plaintiffs,**<br><br>                v.<br><br>**UNIMED PHARMACEUTICALS, INC.,**<br>**ET AL.**<br>        **Defendants.** | **CASE NO. 1:09-CV-958-TWT** |
| **STEPHEN L. LAFRANCE PHARMACY,**<br>**INC. ET AL.**<br>        **Plaintiffs,**<br><br>                v.<br><br>**UNIMED PHARMACEUTICALS, INC.,**<br>**ET AL.**<br>        **Defendants.** | **CASE NO. 1:09-CV-2913-TWT** |
| **RITE AID CORPORATION, ET AL.,**<br>        **Plaintiffs,**<br><br>                v.<br><br>**UNIMED PHARMACEUTICALS, INC.,**<br>**ET AL.**<br>        **Defendants.** | **CASE NO. 1:09-CV-2776-TWT** |
| **WALGREEN CO., ET AL.,**<br>        **Plaintiffs,**<br><br>                v.<br><br>**UNIMED PHARMACEUTICALS,  LLC,**<br>**ET AL.**<br>        **Defendants.** | **CASE NO. 1:09-CV-3019-TWT** |

SUPERVALU, INC.,
    Plaintiff,

     v.

UNIMED PHARMACEUTICALS, LLC,
ET AL.
    Defendants.

CASE NO. 1:10-CV-1024-TWT

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed a true and correct copy of the foregoing DEFENDANTS PAR PHARMACEUTICAL COMPANIES, INC. AND PADDOCK LABORATORIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISQUALIFY DR. BOZENA B. MICHNIAK AS PLAINTIFFS' PROPOSED EXERT, including all supporting exhibits and declarations, with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filings to all counsel of record.

Dated: March 21, 2011

/s/ Mark G. Trigg
Mark G. Trigg
Georgia Bar No. 716295
GREENBERG TRAURIG, LLP
The Forum
3290 Northside Parkway, Suite 400
Atlanta, GA 30327
(678) 553-2100 (telephone)
(678) 553-2212 (facsimile)
greleckir@gtlaw.com

*Counsel for Defendants Par
Pharmaceutical Companies, Inc.
& Paddock Laboratories, Inc.*