# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **IN RE ANDROGEL ANTITRUST LITIGATION (II)** | **CASE NO. 1:09-MD-2084-TWT**<br><br>**DIRECT PURCHASER CLASS ACTIONS**<br><br>**DIRECT PURCHASER INDIVIDUAL ACTIONS** |
| **ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,**<br>      **Plaintiffs,**<br>              v.<br>**UNIMED PHARMACEUTICALS, INC., ET AL.**<br>      **Defendants.** | **CASE NO. 1:09-CV-956-TWT** |
| **LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,**<br>      **Plaintiff,**<br>              v.<br>**UNIMED PHARMACEUTICALS, INC., ET AL.,**<br>      **Defendants.** | **CASE NO. 1:09-CV-957-TWT** |

**REPLY MEMORANDUM IN SUPPORT OF SOLVAY'S
MOTION TO (1) PRECLUDE PLAINTIFFS' RETENTION
OF SOLVAY'S FORMER CONSULTANT AND (2) DISQUALIFY
PLAINTIFFS' COUNSEL EXPOSED TO SOLVAY'S
PRIVILEGED INFORMATION THROUGH THIS CONSULTANT**

| | |
|---|---|
| **MEIJER, INC., ET AL.,**<br>            **Plaintiffs,**<br>                        v.<br>**UNIMED PHARMACEUTICALS, INC., ET AL.**<br>            **Defendants.** | **CASE NO. 1:09-CV-958-TWT** |
| **STEPHEN L. LAFRANCE PHARMACY, INC. ET AL.**<br>            **Plaintiffs,**<br>                        v.<br>**UNIMED PHARMACEUTICALS, INC., ET AL.**<br>            **Defendants.** | **CASE NO. 1:09-CV-2913-TWT** |
| **RITE AID CORPORATION, ET AL.,**<br>            **Plaintiffs,**<br>                        v.<br>**UNIMED PHARMACEUTICALS, INC., ET AL.**<br>            **Defendants.** | **CASE NO. 1:09-CV-2776-TWT** |
| **WALGREEN CO., ET AL.,**<br>            **Plaintiffs,**<br>                        v.<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.**<br>            **Defendants.** | **CASE NO. 1:09-CV-3019-TWT** |
| **SUPERVALU, INC.,**<br>            **Plaintiff,**<br>                        v.<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.**<br>            **Defendants.** | **CASE NO. 1:10-CV-1024-TWT** |

I.  **INTRODUCTION**

This dispute concerns two issues: (1) whether Solvay's former expert, Dr. Maibach, must be disqualified from working with Plaintiffs, and (2) whether any Plaintiffs' lawyers who already worked with Dr. Maibach must be disqualified. Defendants' position is clear: An expert who establishes a confidential relationship with a party's counsel and receives confidential information from that party cannot switch sides.  And any lawyer who works with a tainted expert becomes tainted himself.  Countering common sense and prevailing legal principles, Plaintiffs insist that Defendants must waive the very privilege that they seek to protect before an expert can be disqualified.[1]  Even when an expert must be disqualified, Plaintiffs argue, there is a strong presumption that tainted lawyers should be allowed to continue.

There is one question that continues to concern Solvay greatly: why do Plaintiffs insist on retaining an expert who was involved in the prior, related patent case?  The standard practice of litigators is to eschew using conflicted experts.  As discussed below, Dr. Maibach is not the only scientist available to consult, and it is evident from Plaintiffs' declarations that they have made minimal efforts to find

---

[1] Of course, if the Court chooses to order Solvay to make a more fulsome disclosure *in camera* without waiving privilege, Solvay is prepared to do so.

alternatives. The obvious inference to be drawn is that Plaintiffs perceive an advantage from using Solvay's prior expert. Yet that advantage is precisely why it is inappropriate for Dr. Maibach, or any Plaintiffs' attorney who received substantive information from him, to continue working on this case.

## II. ARGUMENT

### A. Dr. Maibach Must Be Disqualified

The parties agree that the Court must consider two questions in determining whether to disqualify Dr. Maibach: (1) whether Solvay's patent counsel reasonably believed he had a confidential relationship with Dr. Maibach, and (2) whether Solvay's patent counsel disclosed confidential information to Dr. Maibach that is relevant to this case and that would be prejudicial if disclosed to Plaintiffs. *See Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996); Opp. at 10-11. Solvay's opening brief demonstrated that the answer to both of these questions is "yes." Plaintiffs' response — that they can find no one else to fill this expert role — is as spurious as it is irrelevant.

#### 1. Solvay's patent counsel reasonably believed he had a confidential relationship with Dr. Maibach

Plaintiffs present no facts to counter the numerous points made by Solvay to establish that its patent counsel had a reasonable belief that he had entered into a confidential relationship with Dr. Maibach. *See* Mot. at 12-13.

It is both critical and undisputed that a written and signed retention agreement between Dr. Maibach and Solvay's patent counsel governs their relationship. That written agreement states that Dr. Maibach's confidentiality obligations "will continue even after the termination of [his] consulting work for us and after termination of the matter." Mot. at 6.[2]

Plaintiffs state that an engagement letter with a confidentiality clause is not *dispositive* evidence of a confidential relationship. Opp. at 13-14 (citing *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001)). However, engagement letters with clear confidentiality provisions undoubtedly are strong indications of confidential relationships. *See Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 279 (S.D. Ohio 1988) (cited in *Stencel*) (holding that, except perhaps in unusual circumstances, "a formal, written contract establishing both the existence of the relationship and prohibiting the disclosure of any information gained by the expert during the course of the relationship would be an ideal way to eliminate" doubt whether the lawyer and the expert established a confidential relationship). And of course, Solvay's patent counsel Mr. Ferguson testified that

---

[2] Plaintiffs inappropriately cite a provision of the retention letter restricting Dr. Maibach from taking adverse representations while the patent case was pending. Opp. at 14. That is not the provision on which Solvay relies.

3

he understood there to be a confidential relationship, and that he shared confidential information based on that understanding.[3]

Plaintiffs' brief is devoid of any evidence or authority to suggest the contrary, *i.e.*, that the parties could reasonably believe that there was no confidential relationship.  In fact, contrary to logic, Plaintiffs insist that, while *Solvay* could not reasonably believe it had a confidential relationship with Dr. Maibach, *Plaintiffs themselves* have a confidential relationship with Dr. Maibach based on an *unsigned* retention agreement and after just nineteen hours of working with him.  *See* Chorush Decl. ¶¶ 8, 14 & Ex. 6.

### 2. Solvay's lead patent counsel disclosed confidential information to Dr. Maibach that would be prejudicial if disclosed to Plaintiffs

To aid the Court in its evaluation of this motion, Mr. Ferguson has represented under oath that he had conversations with Dr. Maibach and divulged

---

[3] Plaintiffs' criticism that Dr. Maibach was not called as a witness, Opp. at 13; *see also id.* at 5 n.7, is misplaced because communications with a *nontestifying* consultant are generally not discoverable.  *See* Fed. R. Civ. P. 26(b)(4)(D) ("Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial."); *Stencel*, 174 F. Supp. 2d at 1084 (distinguishing between the two and noting that "*testifying* experts must reveal the underlying sources relied upon in reaching their conclusions at deposition and on cross examination" (emphasis added)); *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, 2006 WL 3149362, at *15 (D. Nev. Nov. 1, 2006) (explaining the distinction between testifying and nontestifying experts with regard to privilege).

4

his mental impressions and case strategies to Dr. Maibach. Mot. at 6-7. Mr. Ferguson has also declared that he discussed with Dr. Maibach "the role that each of the ingredients in AndroGel's formulation played in achieving the unique pharmacokinetic profile described in the '894 patent." Ferguson Decl. ¶ 8.[4] Plaintiffs seek Dr. Maibach's expertise on the very same set of issues: to help "evaluat[e] the role of sodium hydroxide and water . . . with respect to viscosity, pharmacokinetics, and skin irritation." Chorush Decl. ¶ 9.

Mr. Ferguson's statements are sufficient to mandate the disqualification of Dr. Maibach here. Dr. Maibach's apparent belief that he has "no impediment to being adverse" to Solvay is unreliable as proof of that fact, given his failure to recall even being retained by Solvay. *See* Opp. at 17. Moreover, an officer of the court cannot blindly accept Dr. Maibach's lay view. "Even the most conscientious of lay persons cannot be expected to appreciate the scope of the principles underlying the attorney-client and work product privileges and/or the scope of information protected from disclosure as confidential and proprietary." *Oracle*

---

[4] Plaintiffs' observation that Mr. Ferguson does not claim to have shown any confidential *documents* to Dr. Maibach, Opp. at 17, misses the point. Privileged information can be communicated orally just as it can in writing. Moreover, counsel's selection and compilation of documents, even publicly available documents, can be protected work product. *E.g.*, *In re Neurontin Antitrust Litig.*, 2011 WL 253434, at *16 (D.N.J. Jan. 25, 2011).

*USA, Inc. v. Rimini Street, Inc.*, 2010 WL 3789165, at *2 (D. Nev. Sept. 21, 2010); *see also MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 724 (D. Conn. 1991) ("as a lay person," the expert "was unaware of . . . his duty to maintain the confidentiality of any privileged information that he possessed").

Indeed, courts have disqualified experts and counsel when there was much less interaction than that between Dr. Maibach and Mr. Ferguson here. For example, in *Shadow Traffic*, the court disqualified an expert and a law firm based on a single, one-hour meeting with the other side, where the expert was never even retained let alone party to an agreement. *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1073 (1994).

Lacking any other recourse, Plaintiffs argue that Solvay has not provided enough specificity and detail for the Court to determine whether confidential information was exchanged. Opp. at 14-18.[5] However, courts have found disqualification appropriate based on attorney declarations that are far less detailed than Mr. Ferguson's. *See, e.g.*, *Koch Ref.*, 85 F.3d at 1182 (cited in Opp. at 11) (expert disqualified for switching sides after counsel "'spent considerable time with [the expert] explaining his entire theory of the case as well as trial tactics'"

---

[5] Plaintiffs' assertion that facts in a declaration must constitute "admissible evidence" relies on the evidentiary standard for summary judgment motions. *See* Opp. at 15. Solvay does not seek summary judgment here.

6

and "'furnished [the expert] with documents that had been generated in preparation for the trial'"); *Shadow Traffic*, 24 Cal. App. 4th at 1073 (disqualifying counsel for hiring an expert to whom the adversary's counsel had "'explained . . . [their] theories of the case, and how [they] anticipated the expert testimony would fit in both at trial itself and in helping with trial preparation'"). Moreover, Plaintiffs' argument is fallacious: the showing that Plaintiffs contend is necessary to warrant disqualification would require Solvay to disclose the very privileged information it seeks to protect from Plaintiffs. The law does not require such a disclosure. *See* Fed. R. Civ. P. 26(b)(5)(A) (a party claiming privilege must "describe the nature of the . . . communications . . . without revealing information itself privileged or protected"). To the extent the Court believes that additional detail regarding Mr. Ferguson's communications with Dr. Maibach would be helpful in resolving this motion, however, Solvay remains willing to submit an additional declaration *in camera* — a manner that would not require Solvay to waive its privilege — for the Court's review.

   **3.  Plaintiffs' reliance on "policy considerations" is misplaced**

  Remarkably, and notwithstanding that Solvay's confidential information would be jeopardized as a result, Plaintiffs' primary argument is that they should be able to retain Dr. Maibach because they do not think they can find another

7

technical expert to advise them.[6] Opp. at 4-5, 18; Chorush Decl. ¶¶ 3-5. Mr. Chorush, however, describes contacting just *three* prospective experts who turned him down — far from a showing of hardship. Litigators routinely contact many more than three potential experts before finding one with the appropriate skills and no conflicts. Plaintiffs simply have not tried hard enough.

Nor is Mr. Chorush correct when he repeats an out-of-court statement from an anonymous expert that "'there are not that many [transdermal experts] around.'" Chorush Decl. ¶ 4. The '894 patent on its face cites hundreds of references, a large proportion of which are scholarly articles, whose authors could have relevant expertise. To give just one further example, searching "transdermal drug delivery" in Google Scholar (Google's search engine for scholarly literature) yields over 60,000 references. One of the first few hits, a book aptly titled *Transdermal Drug Delivery* (Richard H. Guy & Jonathan Hadgraft eds., 2d ed. 2005), is a compilation of works by *nineteen* contributing scientists, whose names and institutional

---

[6] Plaintiffs also suggest that Solvay inappropriately retained Dr. Maibach in 2003 to ensure his unavailability in this case. Opp. at 18-19. There is neither any merit to, nor any evidence in support of, the suggestion that Solvay hired Dr. Maibach for "strategic" reasons — whether to make him unavailable to Watson and Par/Paddock in the patent case, or to prevent him from working for a then-unknown adversary in an antitrust case that did not begin until more than five years later.

8

affiliations are all freely available in seconds through the Google Books preview. Plaintiffs can find a replacement.

### B. Attorney Disqualification Is Warranted

When an expert must be disqualified after switching sides, any attorney tainted by the expert is also vulnerable to disqualification. Mot. at 16-18. Because of the danger that Solvay's work product has been shared with some of Plaintiffs' counsel, there is no remedy but to disqualify those firms. *Id.* at 18. Thus, disqualification of Heim Payne and Garwin Gerstein is required, and the Court should order Plaintiffs to identify which additional lawyers directly or indirectly obtained Solvay's confidential information from Dr. Maibach.

#### 1. Dr. Maibach is presumed to have disclosed Solvay's confidential information to Plaintiffs' counsel

Plaintiffs have impermissibly obtained Solvay's confidential information through Dr. Maibach and therefore must be disqualified if (1) Solvay disclosed such information to Dr. Maibach, (2) Dr. Maibach disclosed such information to Plaintiffs, and (3) Plaintiffs' counsel's continued work in this case threatens to taint further proceedings. Mot. at 22; *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 583 (D.N.J. 1994). Once Solvay has established the first prong, as discussed above and in Solvay's opening brief, the second is presumed. *E.g.*, *Cordy*, 156 F.R.D. at 583.

9

Plaintiffs have said nothing to refute such a presumption. Instead, they assert (without support) the counterintuitive and legally meritless stance that no presumption exists. *See* Opp. at 21. Plaintiffs fail to address, let alone distinguish, the wealth of precedent cited in Solvay's opening brief that establishes this presumption, including *Cordy*, *Shadow Traffic*, and *MMR/Wallace*. *See* Mot. at 18. Plaintiffs weakly try to distinguish *North Pacifica*, but contrary to Plaintiffs' argument, that case also presumed disclosure by an expert to the firm retaining him. *N. Pacifica, LLC v. City of Pacifica*, 335 F. Supp. 2d 1045, 1051-52 & n.3 (N.D. Cal. 2004) (citing *Cordy* and *Shadow Traffic* for this presumption).[7]

Plaintiffs also miscite four other cases in connection with the question of attorney disqualification: *Hewlett-Packard*, *Stencel*, *Paul*, and *Nikkal.* These cases declined to presume disclosure of confidential information by the first retaining party (here, Solvay) to the expert (Dr. Maibach), but did not address a presumption of disclosure by the expert (Dr. Maibach) to the second retaining party (Plaintiffs), which is the issue here. Solvay is not asking the Court to make the former presumption: it submitted Mr. Ferguson's declaration to establish that confidential

---

[7] Plaintiffs also argue that this presumption conflicts with the rule that the party seeking disqualification bears the burden of proof. Opp. at 23. But an evidentiary presumption does not alter the burden of proof. Fed. R. Evid. 301; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).

information was provided to Dr. Maibach. Regarding the latter, however, the law does not require Solvay to make a showing of what Dr. Maibach told Plaintiffs. Nor could Solvay submit a declaration to that effect because that information is not known to Solvay, and Plaintiffs have refused to disclose it.

### 2. Plaintiffs' evidence does not overcome the presumption

Even if it were necessary for Solvay to show affirmatively that confidential information flowed from Dr. Maibach to Plaintiffs, the factual assertions accompanying Plaintiffs' brief demonstrate that disqualification is necessary. Plaintiffs have been in contact with Dr. Maibach for more than six months, Dr. Maibach has already billed significant time, and Mr. Chorush has substantively discussed the case with him at length. Chorush Decl. ¶¶ 8-9, 13 & Ex. 1. Dr. Maibach has provided opinions regarding the validity of the patent and has allegedly pointed Plaintiffs' counsel to helpful prior art. Chorush Decl. ¶ 10. At least some of these discussions have focused on the very same issues that Mr. Ferguson discussed with Dr. Maibach. *Compare id.* ¶ 9 *with* Ferguson Decl. ¶ 8. To believe Dr. Maibach "did not and will not remember and ultimately use [Solvay's] information, even 'subliminally,' defies common sense and human nature." *Cordy*, 156 F.R.D. at 584 (citation omitted). It is indisputable that the

Heim Payne lawyers have had substantial and substantive interactions with Dr. Maibach; as a result, they must be disqualified.

The question of how far the taint has spread is still unknown, however. Solvay thus respectfully requests that the Court order Plaintiffs to provide information about whether and the extent to which Plaintiffs' counsel has been tainted. The declarations provided by Plaintiffs are insufficient. For example, while Mr. Opper of Garwin Gerstein states that he learned nothing of substance *directly* from Dr. Maibach, he does not address whether he *indirectly* received access to information or opinions from Dr. Maibach through Heim Payne. In past meet-and-confers, for example, one of Mr. Opper's colleagues stated that her views on certain discovery issues were informed by input from Plaintiffs' (then-unidentified) patent expert. *See* Neubauer Decl. ¶¶ 2-3. Solvay thus is legitimately concerned that other Plaintiffs' counsel may have had contact with Dr. Maibach indirectly, through (for example) the Heim Payne firm, and therefore may have had the benefit of Solvay's privileged and work-product information.

Plaintiffs argue that they did not knowingly seek out Solvay's privileged information. That is not the issue. Taint can be pervasive and completely

unknown at the same time.[8] Plaintiffs cannot know, for example, whether Dr. Maibach has spotted some issue only because Mr. Ferguson drew Dr. Maibach's attention to that issue a few years earlier.

Solvay continues to be deeply concerned by Plaintiffs' insistence on working with the other side's former experts, when standard practice among litigators is to cease working with experts with "conflicts." The failure to explain this simple point leads Solvay to question whether Plaintiffs perceive an advantage in using Solvay's former expert precisely because he was Solvay's former expert.

Finally, Plaintiffs deride as mere tactical gamesmanship Solvay's effort to protect its privileged information and to ensure that this litigation proceeds in accordance with the Federal Rules and applicable Rules of Professional Conduct.[9]

---

[8] Plaintiffs suggest that the facts here are "analogous to the inadvertent disclosure of confidential information," making disqualification unwarranted. Opp. at 25 n.11. In reality, the disclosures here occurred repeatedly over a period of several months and could well be instrumental in shaping Plaintiffs' patent-merits strategy for the entire case. Regardless, even unintentional exposure to privileged information can sometimes warrant disqualification. *E.g.*, *Crudele v. N.Y. City Police Dep't*, 2001 WL 1033539, at *4 (S.D.N.Y. Sept. 7, 2001) ("This Court . . . concludes that the danger of inadvertent disclosure and the appearance of impropriety is sufficiently present here so as to require disqualification.").

[9] Using an adjective in place of analysis, Plaintiffs state that it is "frivolous" to argue that their counsel's conduct in working with Dr. Maibach on this case contravenes Rule 3.4(g) of the Georgia Rules of Professional Conduct. Opp. at 24-25. Rule 3.4(g) prohibits attorneys from obtaining evidence in ways that violate the legal rights of the adversary. In turn, the Federal Rules of Civil Procedure

13

This accusation is disingenuous, given that Plaintiffs apparently maintain that *they* have the right to use and exploit their adversaries' former consulting experts *knowing* that Dr. Maibach received access to Solvay's privileged and work-product information. Nor is Solvay's motion an ulterior attempt to block Plaintiffs from litigating this case on the merits.[10] Solvay does not seek indiscriminate, haphazard disqualification of all 15 of the firms that are representing Plaintiffs, but rather seeks disqualification of only those that have been tainted. There is no reason the litigation cannot proceed without interruption if the relief Solvay seeks is granted.

---

prohibit obtaining the adversary's privileged or work-product information, or opinions held by the adversary's consulting expert. *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1444-45 (11th Cir. 1998). Thus, obtaining evidence in contravention of those rules violates the adversary's rights. *See Erickson v. Newmar Corp.*, 87 F.3d 298, 301-02 (9th Cir. 1996) (discussing a substantively similar provision of Nevada's professional responsibility rules). Plaintiffs' suggestion of frivolousness is bizarre, given that Solvay's argument is grounded in a published Eleventh Circuit decision.

[10] Plaintiffs' claim that Solvay "cut short" the meet-and-confer process is neither relevant nor accurate. The filing of a motion does not preclude further meeting and conferring, for which we have expressly extended an invitation to Plaintiffs. Moreover, the parties engaged in an arduous letter-writing campaign for weeks, supplemented by numerous conference calls to discuss the issue. Up until only 60 minutes before Solvay filed its motion, Plaintiffs took the position that they would provide *no* information to Solvay until Plaintiffs decided in their sole discretion that they were satisfied about the nature of Solvay's confidential relationship with Dr. Maibach. *See* Roberti Decl. ¶ 11 & Ex. H.

## III. CONCLUSION

For the reasons set forth above and in its opening brief, Solvay respectfully requests that its motion be granted, and that the Court order the relief set forth in Solvay's opening brief.

Respectfully submitted this 25th day of April 2011.

| | |
|---|---|
| | /s/ Adam R. Lawton |
| Teresa T. Bonder** | Jeffrey I. Weinberger* |
| Georgia Bar No. 703969 | Rohit K. Singla* |
| Matthew D. Kent** | Elisabeth J. Neubauer* |
| Georgia Bar No. 526272 | Adam R. Lawton* |
| Alston & Bird LLP | Munger, Tolles & Olson LLP |
| 1201 West Peachtree Street | 355 South Grand Avenue |
| Atlanta, GA 30309-3424 | 35th Floor |
| (404) 881-7000 (telephone) | Los Angeles, CA 90071 |
| (404) 881-7777 (facsimile) | (213) 683-9100 (telephone) |
| teresa.bonder@alston.com | (213) 683-5100 (facsimile) |
| matthew.kent@alston.com | jeffrey.weinberger@mto.com |
| | rohit.singla@mto.com |
| **Counsel for Unimed* | elisabeth.neubauer@mto.com |
| *Pharmaceuticals, LLC and Abbott* | adam.lawton@mto.com |
| *Products, Inc. f/k/a Solvay* | |
| *Pharmaceuticals, Inc. in all actions* | John Roberti* |
| *except Walgreen Co. v. Unimed* | Mark W. Ryan* |
| *Pharmaceuticals, LLC, 1:09-cv-3019* | Rebecca Valentine* |
| | Mayer Brown LLP |
| | 1909 K Street NW |
| | Washington, D.C. 20006 |
| | 202-263-3000 (telephone) |
| | 202-263-3300 (facsimile) |
| | jroberti@mayerbrown.com |
| | mryan@mayerbrown.com |
| | rvalentine@mayerbrown.com |

16

       * Practicing pursuant to this Court's
       Initial Case Management Order

*Counsel for Unimed Pharmaceuticals, LLC and Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel hereby certifies that the foregoing motion and memorandum of law has been prepared in accordance with Local Rule 5.1 using Times New Roman 14 point font.

Respectfully submitted this 25th day of April 2011.

/s/ Adam R. Lawton
Adam R. Lawton*
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9100 (Telephone)
(213) 687-3702 (Facsimile)
Adam.Lawton@mto.com

*Counsel for Unimed Pharmaceuticals, LLC and Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc*

* Practicing pursuant to this Court's Initial Case Management Order

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed a true and correct copy of the **REPLY MEMORANDUM IN SUPPORT OF SOLVAY'S MOTION TO (1) PRECLUDE PLAINTIFFS' RETENTION OF SOLVAY'S FORMER CONSULTANT AND (2) DISQUALIFY PLAINTIFFS' COUNSEL EXPOSED TO SOLVAY'S PRIVILEGED INFORMATION THROUGH THIS CONSULTANT**; and **DECLARATION OF ELISABETH J. NEUBAUER** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filings to all counsel of record.

Dated: April 25, 2011

/s/ Adam R. Lawton
Adam R. Lawton*
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9100 (Telephone)
(213) 687-3702 (Facsimile)
Adam.Lawton@mto.com

*Counsel for Unimed Pharmaceuticals, LLC and Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc*

* Practicing pursuant to this Court's Initial Case Management Order

1