IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| _____ : | | |
| IN RE ANDROGEL ANTITRUST : | CASE NO. 1:09-MD-2084-TWT | |
| LITIGATION II : | | |
| _____ : | DIRECT PURCHASER CLASS | |
| : | ACTIONS | |
| ROCHESTER DRUG CO-OPERATIVE, : | | |
| INC., : | DIRECT PURCHASER | |
|    Plaintiff, : | INDIVIDUAL ACTIONS | |
| : | | |
| v. : | | |
| : | CASE NO. 1:09-CV-956-TWT | |
| UNIMED PHARMACEUTICALS, : | | |
| LLC, et al., : | | |
| : | | |
|    Defendants. : | | |
| _____ : | | |
| : | | |
| LOUISIANA WHOLESALE DRUG : | | |
| CO., INC., et al., : | | |
|    Plaintiffs, : | | |
| : | | |
| v. : | CASE NO. 1:09-CV-957-TWT | |
| : | | |
| UNIMED PHARMACEUTICALS, : | | |
| LLC, et al., : | | |
| : | | |
|    Defendants. : | | |
| _____ : | | |
| : | | |
| MEIJER, INC., et al., : | | |
|    Plaintiffs, : | | |
| : | | |
| v. : | CASE NO. 1:09-CV-958-TWT | |
| : | | |
| UNIMED PHARMACEUTICALS, : | | |
| LLC, et al., : | | |
|    Defendants. : | | |
| _____ : | | |

**STEPHEN L. LAFRANCE PHARMACY,**          :
**INC., et al.,**                          :
                        Plaintiffs,        :
                                           :
              v.                           :          **CASE NO. 1:09-CV-2913-TWT**
                                           :
**UNIMED PHARMACEUTICALS,**                :
**LLC, et al.,**                           :
                                           :
                        Defendants.        :
_____   :

**RITE AID CORPORATION, et al.,**          :
                        Plaintiffs,        :
                                           :
              v.                           :          **CASE NO. 1:09-CV-2776-TWT**
                                           :
**UNIMED PHARMACEUTICALS,**                :
**LLC, et al.,**                           :
                        Defendants.        :
_____   :

**WALGREEN CO, et al.,**                   :
                        Plaintiffs,        :
                                           :
              v.                           :          **CASE NO. 1:09-CV-3019-TWT**
                                           :
**UNIMED PHARMACEUTICALS,**                :
**LLC, et al.,**                           :
                                           :
                        Defendants.        :
_____   :

**SUPERVALU, INC.,**                       :
                        Plaintiff,         :
                                           :
              v.                           :          **CASE NO. 1:10-CV-1024-TWT**
                                           :
**UNIMED PHARMACEUTICALS,**                :
**LLC, et al.,**                           :
                        Defendants.        :
_____   :

**30(b)(6) NOTICE OF DEPOSITION TO DEFENDANTS
ABBOTT PRODUCTS, INC. F/K/A SOLVAY PHARMACEUTICALS,
INC. AND UNIMED PHARMACEUTICALS, LLC**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6),
Plaintiffs in the above-captioned actions will take the videotaped deposition upon oral
examination of Defendant Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc. and Unimed
Pharmaceuticals, LLC (collectively, "Unimed"). The deposition will be held at a mutually
agreeable time, date and location. The testimony of the witness(es) will be videotaped and
transcribed by a court reporter.

NOTICE IS HEREBY GIVEN that, pursuant to Federal Rule of Civil Procedure 30(b)(6),
Unimed is required to present one or more representatives to testify on its behalf and to give
testimony on the topics set forth in Exhibit A hereto and the person or persons so designated
shall be required to testify as to the matters known or reasonably available to Unimed with
respect to each topic.

**Dated: June 8, 2011**

By: ____/s/ *Kenneth S. Canfield*_____
Kenneth S. Canfield
Georgia Bar No. 107744
KCanfield@dsckd.com
**DOFFERMYRE SHIELDS CANFIELD
& KNOWLES, LLC**
1355 Peachtree Street, N.E., Suite 1600
Atlanta, GA 30309
Telephone: (404) 881-8900
Facsimile: (404) 881-3007

David F. Sorensen (admitted Pro Hac Vice)
dsorensen@bm.net
Eric Cramer (admitted Pro Hac Vice)
ecramer@bm.net
Ellen T. Noteware (admitted Pro Hac Vice)
enoteware@bm.net
Neill W. Clark (admitted Pro Hac Vice)
nclark@bm.net

Bruce E. Gerstein (admitted Pro Hac Vice)
 bgerstein@garwingerstein.com
Joseph Opper (admitted Pro Hac Vice)
jopper@garwingerstein.com
Elena K. Chan (admitted Pro Hac Vice)
echan@garwingerstein.com
**GARWIN GERSTEIN & FISHER LLP**

Andrew C. Curley (admitted Pro Hac Vice)
acurley@bm.net
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4683
Facsimile: (215) 875-4604

1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620

Peter R. Kohn
pkohn@faruqilaw.com
Richard Schwartz
rschwartz@faruqilaw.com
**FARUQI & FARUQI, LLP**
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771

David P. Smith
dpsmith@smithfoote.com
W. Ross Foote
rfoote@smithfoote.com
Susan C. Segura
ssegura@smithfoote.com
**SMITH FOOTE LLP**
720 Murray Street, P.O. Box 1632
Alexandria, LA 71309
Telephone: (318) 445-4480
Facsimile: (318)487-1741

Joshua P. Davis (SBN. 193254)
davisj@usfca.edu
**LAW OFFICES OF JOSHUA P. DAVIS**
437A Valley Street
San Francisco, CA 94131
Telephone: (415) 422-6223

John Gregory Odom
jodom@odrlaw.com
Stuart Des Roches
stuart@odrlaw.com
Andrew Kelly
akelly@odrlaw.com
John Fitzpatrick
jfitzpatrick@odrlaw.com
**ODOM & DES ROCHES**
Poydras Center
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Telephone: (504) 522-0077
Facsimile: (504) 522-0078

David Balto
**LAW OFFICES OF DAVID BALTO**
2600 Virginia Ave NW Suite 1111
Washington, DC 20037

*Counsel for Rochester Drug Co-operative, Inc.*

Russell A. Chorush
rchorush@hpcllp.com
Miranda Y. Jones
mjones@hpcllp.com
**HEIM PAYNE & CHORUSH LLP**
Chase Tower
600 Travis, Suite 6710
Houston, TX 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

4

*Counsel for Louisiana Wholesale Drug Co. Inc.*

Linda P. Nussbaum
lnussbaum@gelaw.com
John D. Radice
jradice@gelaw.com
**GRANT & EISENHOFER, P.A.**
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501

Joseph M. Vanek
jvanek@vaneklaw.com
David P. Germaine
dgermaine@vaneklaw.com
**VANEK, VICKERS & MASINI, P.C.**
111 South Wacker Drive, Suite 4050
Chicago, IL 60606
Telephone: (312)224-1500
Facsimile: (312) 224-1510

Paul E. Slater
pes@sperling-law.com
**SPERLING & SLATER**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
Facsimile: (312)641-6492

Joseph R. Saveri (SBN 130064)
isaveri@lchb.com
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Jordan Elias (SBN 228731)
ielias@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Embarcadero Center West
Battery Street, Suite 3000
San Francisco, CA 94111-3339
Telephone. (415) 956-1000
Facsimile. (415) 956-1008

Dianne M. Nast
dnast@rodanast.com
Erin C. Burns
eburns@rodanast.com
**RodaNast, P.C.**
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone: 717-892-3000
Facsimile: 717-892-1200

*Counsel for Stephen L. Lafrance Pharmacy, Inc.*

Scott E. Perwin
sperwin@kennynachwalter.com
Lauren Ravkind
lravkind@kennynachwalter.com
**KENNY NACHWALTER, P.A**.
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

*Counsel for Walgreens, Inc. and SuperValu*

Donald Perelman
dperelman@fineblack.com
Roberta Liebenberg
rliebenberg@fineblack.com
**FINE, KAPLAN AND BLACK, R.P.C.**
1835 Market Street, 28th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 567-6565
Facsimile: (215) 568-5872

*Counsel for Meijer, Inc. and Meijer
Distribution, Inc.*

Steve D. Shadowen (PA41953)
sshadowen@hangley.com
Hangley Aronchick Segal & Pudlin
30 North Third Street
Harrisburg, PA 17101
Telephone: (717) 364-1030
Facsimile: (717) 364-1020

Joseph T. Lukens (PA67405)
jlukens@hangley.com
Hangley Aronchick Segal & Pudlin
One Logan Square, Ste. 2700
18th and Cherry Streets
Philadelphia, PA 19103
Telephone: (215) 496-7032
Facsimile: (215) 568-0300

*Counsel for Rite Aid and CVS Caremark*

## EXHIBIT A

### I.  DEFINITIONS

1.     The terms "You," "Your," and "Unimed" refer to Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc. and Unimed Pharmaceuticals, LLC, their predecessors in interest, subsidiaries, joint ventures, affiliates, and other legal entities that are wholly or partially owned or controlled by Unimed, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

2.     "Besins" refers collectively to Laboratoires Besins Iscovesco S.A. and Besins Iscovesco U.S., Inc., their predecessors in interest, subsidiaries, joint ventures, affiliates, and other legal entities that are wholly or partially owned or controlled by Besins, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

3.     "AndroGel Patent Litigation" refers to *Unimed Pharms., Inc. v. Watson Pharms.*, Inc., No. 1:03-cv-2501 (N.D. Ga.) and *Unimed Pharms., Inc. v. Paddock Labs., Inc.*, No. 1:03-cv-2503 (N.D. Ga.).

4.     The term "the '894 Patent" means United States Patent No. 6,503,894.

5.     "Certificate of Correction" refers to the certificate of correction to the '894 patent that issued on December 16, 2003.

6.     The terms "Plaintiffs" shall mean the direct purchaser plaintiffs in *Rochester Drug Co-Operative, Inc., et al. v. Unimed Pharmaceuticals, LLC, et al.,* Case No. 1:09-CV-956-TWT; *Louisiana Wholesale Drug Co., Inc., et al. v. Unimed Pharmaceuticals, LLC, et al.,* Case No. 1:09-CV-957-TWT; *Meijer, Inc., et al. v. Unimed Pharmaceuticals, LLC, et al.,* Case No. 1:09-

1

CV-958-TWT; *Stephen L. LaFrance Pharm., Inc., et al. v. Unimed Pharmaceuticals, LLC, et al.,* Case No. 1:09-CV-2913-TWT; *Rite Aid Corporation, et al. v. Unimed Pharmaceuticals, LLC, et al.,* Case No. 1:09-CV-2776-TWT; *Walgreen Co., et al. v. Unimed Pharmaceuticals, LLC, et al.,* Case No. 1:09-CV-3019-TWT; and *Supervalu Inc. v. Unimed Pharmaceuticals, LLC, et al.,* Case No. 1:10-CV-1024-TWT.

7.      "Generic Defendants" refer to Watson Pharmaceuticals, Inc., Paddock Laboratories, Inc., and Par Pharmaceutical Companies, Inc.

8.      "Unimed's Clinical Studies" means the clinical studies conducted pursuant to IND No. 50,377.

9.      "Unimed's Dihydrotestosterone Clinical Studies" means the clinical studies conducted pursuant to IND No. 49,483.

10.      "AndroGel" means the testosterone gel formulation that is the subject of NDA 21-015, which was approved on February 28, 2000.

11.      "Accused Products" means any generic drug products that are or at any time have been the subject of abbreviated new drug application ("ANDA") Nos. 76-737 and 76-744.

12.      "License Agreement" means the license agreement between Besins and Unimed dated August 11, 1995, found at SOLVAY 68788-68841.

13.      "Supply Agreement" means the supply agreement between Besins and Unimed dated August 11, 1995, found at SOLVAY 68788-68841.

14.      "Technical Agreement" means the agreement between Besins and Unimed bearing Bates numbers UPIED0223672-UPIED0223681.

15.      Any request to provide information "Relating To" a particular subject shall be construed in its most inclusive sense, and shall be considered a request that you provide

2

information that relates to, refers to, discusses, summarizes, reflects, constitutes, contains, embodies, pertains to, mentions, consists of, comprises, shows, comments on, evidences, describes, or in any other way concerns the subject matter.

16.     The terms "Infringe" and "Infringement" refer to direct infringement, indirect infringement, contributory infringement, inducement of infringement, literal infringement, joint infringement and/or infringement under the doctrine of equivalents.

17.     The terms "And," "Or," and "And/Or" shall be construed in the conjunctive or the disjunctive, whichever makes the interrogatory more inclusive.

18.     The term "Any" refers to any and all Documents, Persons, entities, facts or events inclusively, not to the option of responding to some of the listed Documents, Persons, entities, facts or events, but not others.

19.     The use of the singular form of any word includes the plural and vice versa.

20.     All pronouns shall be construed to refer to the masculine, feminine, or neuter gender, in singular or plural, as in each case makes the interrogatory more inclusive.


## II.  SUBJECT AREAS FOR EXAMINATION

1.     Unimed's analyses relating to the strength of the '894 Patent, including any analysis into its validity and/or enforceability and/or likelihood of infringement undertaken (a) prior to the issuance of the '894 Patent; (b) for purposes of negotiating a license under or assignment of the '894 Patent; (c) prior to filing of patent infringement suits against any generic drug maker for the purported infringement of the '894 Patent; and (d) subsequent to the filing of the AndroGel Patent Litigation, including analysis for purposes of deciding whether to dismiss or settle the AndroGel Patent Litigation.

3

2.      Any assessments or evaluations of the strength of Unimed's claim(s) in the AndroGel Patent Litigation and assessments or evaluations of the strength of the Generic Defendants' claim(s) and defense(s), including but not limited to: (a) assessments or evaluations of the propriety of submitting the '894 Patent for inclusion in the FDA Orange Book; (b) assessments or evaluations of the probability or likelihood that the Generic Defendants directly and/or indirectly infringed the '894 Patent; (c) assessments or evaluations of the probability or likelihood that the '894 Patent was invalid or unenforceable; (d) assessments or evaluations of the inconsistencies between Unimed's positions with respect to validity, enforceability, infringement, and FDA Orange Book listing; and (e) the applicability of any Certificate of Correction in the lawsuits asserting the '894 Patent against the Generic Defendants.

3.      The listing of the'894 Patent in the FDA Orange Book, including without limitation the basis for Unimed's decision to list the '894 Patent in the FDA Orange Book.

4.      Unimed's role in developing the formulation set forth in Table 5 of the '894 Patent.

5.      Unimed's efforts to develop a testosterone gel or dihydrotestosterone gel product, if any, before executing the License Agreement with Besins.

6.      All discussions, communications, or analysis related to the formulation of any testosterone gel composition, including (a) desired properties, (b) selection of a gelling agent, (c) selection of a neutralizer, (d) importance of a gel form, (e) the concept of a suitable viscosity; and (f) market research related to delivery methods of testosterone.

7.      The function of sodium hydroxide in the formulation set forth in Table 5 of the '894 Patent, including but not limited to any reports, testing, or experimentation of which Unimed is aware that is related to the function of sodium hydroxide in that formulation.

4

8. The function of water in the formulation set forth in Table 5 of the '894 Patent, including but not limited to any reports, testing, or experimentation of which Unimed is aware that is related to the function of water in that formulation.

9. Any assessment or understanding of the basic and novel properties of the inventions claimed in the '894 Patent.

10. Any actual or proposed change to the ingredients of AndroGel or to the amount of any ingredient in AndroGel before August 30, 2000.

11. Any assessments, discussions, or evaluations of any testing of AndroGel related to quality control or quality assurance, including the development of release specifications, determination of what properties (e.g., viscosity) would be tested, and the relationship between the tests conducted and the safety, efficacy, or stability of AndroGel.

12. Any and all facts and circumstances surrounding the License Agreement and the Supply Agreement between Unimed and Besins, including all negotiations and communications between Unimed and Besins prior to the execution of the License Agreement and Supply Agreement and all consideration exchanged between parties related to the License Agreement and the Supply Agreement.

13. All payments made to Besins by Unimed prior to August 30, 2000 and all payments made to Unimed by Besins prior to August 30, 2000.

14. All formulations Unimed licensed from Besins related to testosterone gel or dihydrotestosterone gel.

15. Besins' supply of testosterone gel to Unimed and/or Murty Pharmaceuticals for Unimed's Clinical Studies, including all terms and conditions pursuant to which Besins provided

5

the testosterone gel and the quantity of testosterone gel shipped from Besins to Unimed before August 30, 1999.

16.     Besins' supply of dihydrotestosterone gel to Unimed and/or Murty Pharmaceuticals for Unimed's Dihydrotestosterone Clinical Studies, including all terms and conditions pursuant to which Besins provided the dihydrotestosterone gel and the quantity of dihydrotestosterone gel shipped from Besins to Unimed.

17.     Besins' supply of AndroGel to Unimed for sale in the United States, including all terms and conditions pursuant to which Besins provided AndroGel.

18.     The date on which the formulation of AndroGel that Besins' would manufacture and supply AndroGel for sale in the United States was finalized.

19.     Any amendments to the Supply Agreement.

20.     The facts and circumstances surrounding the Technical Agreement.

21.     The facts and circumstances regarding all transfers of a testosterone gel having the formulation set forth in Table 5 of the '894 patent from Besins to Unimed and/or Murty Pharmaceutical before August 30, 1999, including but not limited to any consideration related to such transfers and any invoices, purchasing orders, forecasts of orders, and specifications of such product.

22.     The facts and circumstances regarding all transfers of a dihydrotestosterone gel from Besins to Unimed and/or Murty Pharmaceutical before August 30, 1999, including but not limited to any consideration related to such transfers and any invoices, purchasing orders, forecasts of orders, and specifications of such product.

23.     Besins' investment and involvement in Unimed's Clinical Studies and Unimed's Dihydrotestosterone Clinical Studies.

6

24.     The facts, circumstances, and documents related to Unimed's Clinical Studies in which enrolled patients were administered the study drug before August 30, 1999, including (a) confidentiality obligations, provisions, or agreements with investigators and/or enrolled patients, (b) the extent of Unimed's control over such clinical studies, and (c) any publications or presentations related to such clinical studies.

25.     The facts and circumstances surrounding Unimed's discovery of the alleged error related to the range of sodium hydroxide claimed in the '894 Patent.

26.     Any assessments or evaluations of the ability to "correct" or propriety of "correcting" the issued claims of the '894 Patent through a certificate of correction, including (a) the addition of "0.1 N" to any of the claims and (b) the possibility of changing the issued claims through reissue.

27.     Any assessments, discussions, or evaluations of a potential claim of malpractice against attorneys prosecuting the '894 Patent, including Joseph Mahoney.

28.     Any communications Unimed had with Besins related to the Certificate of Correction for the '894 Patent.

29.     The date on which Unimed recognized that the testosterone gel formulation that was tested in Unimed's Clinical Studies worked for its intended purpose.

30.     Any communications Unimed had with Besins regarding inventorship of the subject matter of the '894 Patent.

31.     The specific contribution made by each named inventor of the '894 Patent and the facts and circumstances surrounding the corrections of inventorship.

32.     Any communications Unimed had with Besins regarding patenting the subject matter of the '894 Patent or other methods of using a testosterone gel formulation.

7

33. Any communications Unimed had with Besins regarding patenting a dihydrotestosterone gel formulation and/or methods of using a dihydrotestosterone gel formulation.

34. Unimed's decision not to file the '777 patent application before August 30, 2000.

35. Any assessments, discussions, or evaluations of the properties of AndroGel that contributed to its commercial success, including but not limited to the Declaration of Jean-Louis Anspach, which Unimed submitted to the U.S. Patent and Trademark during the prosecution of the '777 patent application.

36. Any assessments, discussions, or evaluations of a next-generation AndroGel or testosterone gel formulation other than AndroGel, including desired properties, proposed formulations, and any testing of any such formulations that was conducted.