**EXHIBIT A**

**I. DEFINITIONS**

    1.    The terms "You," "Your," and "Unimed" refer to Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc. and Unimed Pharmaceuticals, LLC, their predecessors in interest, subsidiaries, joint ventures, affiliates, and other legal entities that are wholly or partially owned or controlled by Unimed, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

    2.    "Besins" refers collectively to Laboratoires Besins Iscovesco S.A. and Besins Iscovesco U.S., Inc., their predecessors in interest, subsidiaries, joint ventures, affiliates, and other legal entities that are wholly or partially owned or controlled by Besins, either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys of these same entities.

    3.    "AndroGel Patent Litigation" refers to *Unimed Pharms., Inc. v. Watson Pharms.*, Inc., No. 1:03-cv-2501 (N.D. Ga.) and *Unimed Pharms., Inc. v. Paddock Labs., Inc.*, No. 1:03-cv-2503 (N.D. Ga.).

    4.    The term "the '894 Patent" means United States Patent No. 6,503,894.

    5.    "Certificate of Correction" refers to the certificate of correction to the '894 patent that issued on December 16, 2003.

    6.    The term "Plaintiffs" shall mean the indirect purchaser plaintiffs in *Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund v. Unimed Pharmaceuticals, Inc. et al.,* Case No. 1:09-CV-2914-TWT; *LeGrand v Unimed Pharmaceuticals, Inc. et al.,* Case No. 1:10-CV-02883-TWT; *Healthnet Inc. v. Solvay Pharmaceuticals, Inc. et al.,* Case No. 1:11:CV-334-TWT.

7. "Generic Defendants" refer to Watson Pharmaceuticals, Inc., Paddock Laboratories, Inc., and Par Pharmaceutical Companies, Inc.

8. "Unimed's Clinical Studies" means the clinical studies conducted pursuant to IND No. 50,377.

9. "Unimed's Dihydrotestosterone Clinical Studies" means the clinical studies conducted pursuant to IND No. 49,483.

10. "AndroGel" means the testosterone gel formulation that is the subject of NDA 21-015, which was approved on February 28, 2000.

11. "Accused Products" means any generic drug products that are or at any time have been the subject of abbreviated new drug application ("ANDA") Nos. 76-737 and 76-744.

12. "License Agreement" means the license agreement between Besins and Unimed dated August 11, 1995, found at SOLVAY 68788-68841.

13. "Supply Agreement" means the supply agreement between Besins and Unimed dated August 11, 1995, found at SOLVAY 68788-68841.

14. "Technical Agreement" means the agreement between Besins and Unimed bearing Bates numbers UPIED0223672-UPIED0223681.

15. Any request to provide information "Relating To" a particular subject shall be construed in its most inclusive sense, and shall be considered a request that you provide information that relates to, refers to, discusses, summarizes, reflects, constitutes, contains, embodies, pertains to, mentions, consists of, comprises, shows, comments on, evidences, describes, or in any other way concerns the subject matter.

16. The terms "Infringe" and "Infringement" refer to direct infringement, indirect infringement, contributory infringement, inducement of infringement, literal infringement, joint infringement and/or infringement under the doctrine of equivalents.

17. The terms "And," "Or," and "And/Or" shall be construed in the conjunctive or the disjunctive, whichever makes the interrogatory more inclusive.

18. The term "Any" refers to any and all Documents, Persons, entities, facts or events inclusively, not to the option of responding to some of the listed Documents, Persons, entities, facts or events, but not others.

19. The use of the singular form of any word includes the plural and vice versa.

20. All pronouns shall be construed to refer to the masculine, feminine, or neuter gender, in singular or plural, as in each case makes the interrogatory more inclusive.

## II. SUBJECT AREAS FOR EXAMINATION

1. Unimed's analyses relating to the strength of the '894 Patent, including any analysis into its validity and/or enforceability and/or likelihood of infringement undertaken (a) prior to the issuance of the '894 Patent; (b) for purposes of negotiating a license under or assignment of the '894 Patent; (c) prior to filing of patent infringement suits against any generic drug maker for the purported infringement of the '894 Patent; and (d) subsequent to the filing of the AndroGel Patent Litigation, including analysis for purposes of deciding whether to dismiss or settle the AndroGel Patent Litigation.

2. Any assessments or evaluations of the strength of Unimed's claim(s) in the AndroGel Patent Litigation and assessments or evaluations of the strength of the Generic Defendants' claim(s) and defense(s), including but not limited to: (a) assessments or evaluations of the propriety of submitting the '894 Patent for inclusion in the FDA Orange Book; (b)

assessments or evaluations of the probability or likelihood that the Generic Defendants directly and/or indirectly infringed the '894 Patent; (c) assessments or evaluations of the probability or likelihood that the '894 Patent was invalid or unenforceable; (d) assessments or evaluations of the inconsistencies between Unimed's positions with respect to validity, enforceability, infringement, and FDA Orange Book listing; and (e) the applicability of any Certificate of Correction in the lawsuits asserting the '894 Patent against the Generic Defendants.

3. The listing of the '894 Patent in the FDA Orange Book, including without limitation the basis for Unimed's decision to list the '894 Patent in the FDA Orange Book.

4. Unimed's role in developing the formulation set forth in Table 5 of the '894 Patent.

5. Unimed's efforts to develop a testosterone gel or dihydrotestosterone gel product, if any, before executing the License Agreement with Besins.

6. All discussions, communications, or analysis related to the formulation of any testosterone gel composition, including (a) desired properties, (b) selection of a gelling agent, (c) selection of a neutralizer, (d) importance of a gel form, (e) the concept of a suitable viscosity; and (f) market research related to delivery methods of testosterone.

7. The function of sodium hydroxide in the formulation set forth in Table 5 of the '894 Patent, including but not limited to any reports, testing, or experimentation of which Unimed is aware that is related to the function of sodium hydroxide in that formulation.

8. The function of water in the formulation set forth in Table 5 of the '894 Patent, including but not limited to any reports, testing, or experimentation of which Unimed is aware that is related to the function of water in that formulation.

9. Any assessment or understanding of the basic and novel properties of the inventions claimed in the '894 Patent.

10. Any actual or proposed change to the ingredients of AndroGel or to the amount of any ingredient in AndroGel before August 30, 2000.

11. Any assessments, discussions, or evaluations of any testing of AndroGel related to quality control or quality assurance, including the development of release specifications, determination of what properties (e.g., viscosity) would be tested, and the relationship between the tests conducted and the safety, efficacy, or stability of AndroGel.

12. Any and all facts and circumstances surrounding the License Agreement and the Supply Agreement between Unimed and Besins, including all negotiations and communications between Unimed and Besins prior to the execution of the License Agreement and Supply Agreement and all consideration exchanged between parties related to the License Agreement and the Supply Agreement.

13. All payments made to Besins by Unimed prior to August 30, 2000 and all payments made to Unimed by Besins prior to August 30, 2000.

14. All formulations Unimed licensed from Besins related to testosterone gel or dihydrotestosterone gel.

15. Besins' supply of testosterone gel to Unimed and/or Murty Pharmaceuticals for Unimed's Clinical Studies, including all terms and conditions pursuant to which Besins provided the testosterone gel and the quantity of testosterone gel shipped from Besins to Unimed before August 30, 1999.

16. Besins' supply of dihydrotestosterone gel to Unimed and/or Murty Pharmaceuticals for Unimed's Dihydrotestosterone Clinical Studies, including all terms and

conditions pursuant to which Besins provided the dihydrotestosterone gel and the quantity of dihydrotestosterone gel shipped from Besins to Unimed.

17. Besins' supply of AndroGel to Unimed for sale in the United States, including all terms and conditions pursuant to which Besins provided AndroGel.

18. The date on which the formulation of AndroGel that Besins' would manufacture and supply AndroGel for sale in the United States was finalized.

19. Any amendments to the Supply Agreement.

20. The facts and circumstances surrounding the Technical Agreement.

21. The facts and circumstances regarding all transfers of a testosterone gel having the formulation set forth in Table 5 of the '894 patent from Besins to Unimed and/or Murty Pharmaceutical before August 30, 1999, including but not limited to any consideration related to such transfers and any invoices, purchasing orders, forecasts of orders, and specifications of such product.

22. The facts and circumstances regarding all transfers of a dihydrotestosterone gel from Besins to Unimed and/or Murty Pharmaceutical before August 30, 1999, including but not limited to any consideration related to such transfers and any invoices, purchasing orders, forecasts of orders, and specifications of such product.

23. Besins' investment and involvement in Unimed's Clinical Studies and Unimed's Dihydrotestosterone Clinical Studies.

24. The facts, circumstances, and documents related to Unimed's Clinical Studies in which enrolled patients were administered the study drug before August 30, 1999, including (a) confidentiality obligations, provisions, or agreements with investigators and/or enrolled patients,

6

(b) the extent of Unimed's control over such clinical studies, and (c) any publications or presentations related to such clinical studies.

25. The facts and circumstances surrounding Unimed's discovery of the alleged error related to the range of sodium hydroxide claimed in the '894 Patent.

26. Any assessments or evaluations of the ability to "correct" or propriety of "correcting" the issued claims of the '894 Patent through a certificate of correction, including (a) the addition of "0.1 N" to any of the claims and (b) the possibility of changing the issued claims through reissue.

27. Any assessments, discussions, or evaluations of a potential claim of malpractice against attorneys prosecuting the '894 Patent, including Joseph Mahoney.

28. Any communications Unimed had with Besins related to the Certificate of Correction for the '894 Patent.

29. The date on which Unimed recognized that the testosterone gel formulation that was tested in Unimed's Clinical Studies worked for its intended purpose.

30. Any communications Unimed had with Besins regarding inventorship of the subject matter of the '894 Patent.

31. The specific contribution made by each named inventor of the '894 Patent and the facts and circumstances surrounding the corrections of inventorship.

32. Any communications Unimed had with Besins regarding patenting the subject matter of the '894 Patent or other methods of using a testosterone gel formulation.

33. Any communications Unimed had with Besins regarding patenting a dihydrotestosterone gel formulation and/or methods of using a dihydrotestosterone gel formulation.

34. Unimed's decision not to file the '777 patent application before August 30, 2000.

35. Any assessments, discussions, or evaluations of the properties of AndroGel that contributed to its commercial success, including but not limited to the Declaration of Jean-Louis Anspach, which Unimed submitted to the U.S. Patent and Trademark during the prosecution of the '777 patent application.

36. Any assessments, discussions, or evaluations of a next-generation AndroGel or testosterone gel formulation other than AndroGel, including desired properties, proposed formulations, and any testing of any such formulations that was conducted.