# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | CASE NO. 1:09-MD-2084-TWT<br><br>DIRECT PURCHASER CLASS ACTIONS |
| ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,<br>   Plaintiff,<br>     v.<br>UNIMED PHARMACEUTICALS, LLC, ET AL.,<br>   Defendants. | CASE NO. 1:09-CV-956-TWT |
| LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,<br>   Plaintiff,<br>     v.<br>UNIMED PHARMACEUTICALS, LLC, ET AL.,<br>   Defendants. | CASE NO. 1:09-CV-957-TWT |

**MEIJER, INC., ET AL.,**

            **Plaintiffs,**

                **v.**

**UNIMED PHARMACEUTICALS,**
**LLC, ET AL.,**

            **Defendants.**

**CASE NO. 1:09-CV-958-TWT**

### DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER QUASHING AND/OR DIRECTING DEFENDANTS TO WITHDRAW SUBPOENAS FOR DEPOSITIONS AND DOCUMENTS SERVED ON ABSENT CLASS MEMBERS AND MEMORANDUM IN SUPPORT THEREOF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ................................................................................... 1

BACKGROUND ..................................................................................... 6

ARGUMENT ......................................................................................... 9

    I.    DISCOVERY FROM ABSENT CLASS MEMBERS IS "GENERALLY IMPROPER"; AND ABSENT A SHOWING OF "PARTICULARIZED NEED" AND LACK OF UNDUE BURDEN, A COURT WILL NOT PERMIT SUCH DISCOVERY. ...................................................... 9

        A.    Nothing in Valley Drug authorizes discovery from absent class members in this case. ........................................ 13

    II.    THE DISCOVERY DEFENDANTS SEEK FROM ABSENT CLASS MEMBERS IS NOT WARRANTED. .............. 15

        A.    The discovery from absent class members authorized in Valley Drug proved wasteful because, in the end, the defendants there could not even articulate a conflict. ................................................................. 16

        B.    The downstream discovery Defendants seek is legally irrelevant. ............................................................... 19

        C.    Defendants have offered nothing to satisfy the strong showing of need required to justify depositions of absent class members. .......................................... 20

    III.    DEFENDANTS' TACTICS ARE INAPPROPRIATE AND HARASSING. ................................................................... 21

i

A. **Defendants' deposition subpoenas are an attempt to make an end-run around the Rule 45 rights of the absent class members who objected to Defendants' November 2010 document subpoenas.** ...................................21

B. **Defendants' misrepresentations and omissions of fact in communications with absent class members are inappropriate and harassing.** ................................................25

**CONCLUSION** .....................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*In re Air Cargo Shipping Services Antitrust Litigation*,
    No. 1:06-md-01775, 2010 U.S. Dist. LEXIS 125623 (E.D.N.Y. Nov.
    24, 2010) ............................................................................................19

*In re Automotive Refinishing Paint Antitrust Litigation, Number MDL 1426*,
    2006 U.S. Dist. LEXIS 34129 (E.D. Pa. May 26, 2006).............................19

*Baldwin & Flynn v. National Safety Associate*,
    149 F.R.D. 598 (N.D. Cal. 1992) .................................................................12

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) .......................................................................2

*In re Carbon Dioxide Industrial Antitrust Litigation*,
    155 F.R.D. 209 (M.D. Fla. 1993) ...........................................................10, 11

*Collins v. International Dairy Queen*,
    190 F.R.D. 629 (M.D. Ga. 1999)....................................................10, 11, 26

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    No. 1:04-CV-3066-JEC, 2009 U.S. Dist. LEXIS 96790 (N.D. Ga.
    Oct. 19, 2009) .........................................................................................9, 12

*Cooper v. Pacific Life Insurance Co., Number CV203-131*,
    2005 U.S. Dist. LEXIS 16465 (S.D. Ga. Aug. 5, 2005)...........................9, 11

*Cox v. America Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) ..............................................................4, 10

*Dellums v. Powell*,
    566 F.2d 231 (D.C. Cir. 1977).....................................................................10

*Deposit Guaranty Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ......................................................................................2

*Groth v Robert Bosch Corp.*,
     No. 1:07-cv-962, 2008 U.S. Dist. LEXIS 52328 (W.D. Mich. July 9,
     2008 ...............................................................................................12, 20

*Hanover Shoe, Inc. v. United Shoe Machine Corp.*,
     392 U.S. 481 (1968)...............................................................................19, 20

*Illinois Brick Co. v. Illinois*,
     431 U.S. 720 (1977).....................................................................................19

*Luna v. Del Monte Fresh Produce (Southeast), Inc.*,
     No. 1:06-cv-2000-JEC, 2007 U.S. Dist. LEXIS 36893 (N.D. Ga. May
     18, 2007) ..................................................................................................4, 10

*McCarthy v. Paine Webber Group, Inc.*,
     164 F.R.D. 309 (D. Conn. 1995) ...................................................................9

*McElmurry v. US Bank Nat'l Ass'n*
     No.  2005 U.S. Dist. LEXIS 45199 (D. Or. Dec. 1, 2005) ...........................2

*Phillips Petroleum Co. v. Shutts*,
     472 U.S. 797 (1985)........................................................................................9

*In re Pressure Sensitive Labelstock Antitrust Litigation*,
     226 F.R.D. 492 (M.D. Pa 2005) ..................................................................19

*In re Publication Paper Antitrust Litig.*,
     No. 3:04-MD 1631 (SRU), 2005 U.S. Dist. LEXIS 13681 (D. Conn.
     July 5, 2005) ................................................................................................11

*Roper v. Consurve, Inc.*,
     578 F.2d 1106 (5th Cir. 1978) ......................................................................2

*In re Terazosin Hydrochloride Antitrust Litigation*,
     223 F.R.D. 666 (S.D. Fla. 2004)(opinion on remand) .............................16,17

iv

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
  350 F.3d 1181 (11th Cir. 2003) ............................................................*passim*

*Wainright v. Kraftco Corp.*,
  54 F.R.D. 532 (N.D. Ga. 1972) ......................................................................4

*In re Worlds of Wonder Sec. Litigation*,
  No. C-87-5491 SC (FSL), 1992 U.S. Dist. LEXIS 10503, (N.D. Cal.
  July 9, 1992) ................................................................................................12

## <u>STATUTES</u>

FED. R . CIV. P. 1 .................................................................................................17

FED. R. CIV. P. 11 ..............................................................................................17

FED. R. CIV. P. 23 ................................................................................................9

FED. R. CIV. P. 26 ................................................................................................1

FED. R. CIV. P. 45 ............................................................................ 6, 7, 21, 22, 27

## **INTRODUCTION**

Direct Purchaser Class Plaintiffs ("Plaintiffs")[1] respectfully move this Court for a protective order under FED. R. CIV. P. 26(c) quashing and/or directing Defendants[2] to withdraw subpoenas for depositions and documents served on absent members of the proposed Direct Purchaser Plaintiff Class.  Ten days ago, Defendants served deposition subpoenas on at least eleven (11) absent class members[3] – and like the document subpoenas they served in November 2010,[4] these subpoenas were served without prior court approval and without making the

---

[1] Direct Purchaser Class Plaintiffs are Rochester Drug Cooperative, Inc. (1:09-cv-0956-TWT); Louisiana Wholesale Drug Company, Inc. (1:09-cv-0957-TWT); and Meijer Inc. and Meijer Distribution, Inc. (1:09-cv-0958-TWT) who have brought suit on behalf of themselves and a class of direct purchasers of AndroGel.

[2] Defendants are Abbott Products, Inc. f/k/a Solvay Pharmaceuticals, Inc., Unimed Pharmaceuticals, LLC (collectively, "Solvay"); Watson Pharmaceuticals, Inc.; Paddock Laboratories, Inc., and Par Pharmaceutical Companies, Inc.

[3] On or about June 17, 2011, Defendants served deposition subpoenas on seventeen (17) entities.  Based on the information currently available to Plaintiffs, it appears that eleven (11) of the seventeen (17) purchased AndroGel directly from Solvay, and thus would be absent members of the proposed Direct Purchaser Plaintiff Class.

[4] In November 2010, Defendants served twenty-eight (28) document subpoenas on absent class members and others issued out of twenty-four (24) different jurisdictions. Doc. Nos. 150, 152.  Five (5) of the subpoenaed entities did not purchase AndroGel directly from Solvay (*i.e.* are not members of the proposed direct purchaser class). Defendants suspended enforcement of subpoenas as to two (2) of these entities (Magellan Medicaid Administration f/k/a First Health Services and Omnicare) but not as to the other three (3) (OptiSource LLC, MedImpact Healthcare, Pacificare Health Systems).

1

requisite showing of "particularized need" and lack of undue burden, as the law in this Circuit requires. Plaintiffs bring this motion pursuant to our fiduciary responsibilities to protect the interests of absent class members. *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978)[5]("[b]y the very act of the *filing a class action*, the class representatives assume responsibilities to members of the class")(emphasis added), *aff'd sub nom. Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980); *McElmurry v. US Bank Nat'l Ass'n*, No. CV-04-642-HU, 2005 U.S. Dist. LEXIS 45199, at *19 (D. Or. Dec. 1, 2005)(interpreting *Roper* as attaching a constructive attorney-client relationship between class counsel and class members once a suit is filed).

On March 1, 2011, this Court denied without prejudice Plaintiffs' first motion for protective order (Doc. Nos. 156 & 157) and instructed the parties to meet and confer further.[6] 3/1/2011 Tr. at 77-78. After the hearing in March, Defendants did nothing to pursue the discovery sought from absent class members in the November 2010 document subpoenas. Then, beginning on or about June 3, 2011 – with discovery closing on July 15, 2011 – Defendants began contacting

---

[5] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down before Oct. 1, 1981).

[6] In that same proceeding, this Court also denied without prejudice Defendants' Motion to Compel discovery, including downstream discovery, from Plaintiffs. Doc. No. 151; March 1, 2011 Transcript ("3/1/2011 Tr.") at 77.

recipients of the November 2010 subpoenas requesting that they comply and telling them that this "court denied the Direct Purchaser Class Plaintiffs' motion for a protective order." *See e.g.* Defendants' Letters to Susan Segura, Mark Stemm, Donald Myers, dated June 3 and 6, 2011 (attached as Exs. A, B, C of the Declaration of Elena K. Chan ("Chan Decl.")).  Defendants failed to inform absent class members that Plaintiffs' motion had been denied without prejudice *and not on the merits*, and that this Court also denied without prejudice Defendants' motion to compel discovery from the named plaintiffs – including discovery virtually identical to that sought from absent class members.  Defendants' omission was potentially misleading (particularly as to absent class members not represented by any counsel) insofar as Defendants had suggested that this Court had reached the merits of Plaintiffs' prior motion.

One week later, Defendants served another round of subpoenas on certain absent class members commanding that they appear for deposition between June 24, 2011 and July 15, 2011.  Giving absent class members as little as seven (7) days notice, Defendants sought testimony on topics that overlapped the prior document subpoenas to which class members had previously objected.  One hour before the first deposition was set to begin the parties reached an agreement (without prejudice to the rights of individual absent class members), wherein, *inter*

*alia,* Defendants agreed to defer all absent class member depositions until the Court rules on the instant motion. Doc. No. 350.  However, Defendants have refused to withdraw any of the deposition or document subpoenas served on absent class members, and have refused to refrain from contacting absent class members regarding the document subpoenas.  Defendants' inappropriate and harassing conduct highlights the reason why absent class member discovery should not be permitted.[7]

The law has not changed since Plaintiffs filed their first motion for a protective order. In this Circuit, individualized discovery from absent class members "is generally improper" and absent a showing of "particularized need," a court will not permit such discovery. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2009 U.S. Dist. LEXIS 96790, at *10-11 (N.D. Ga. Oct. 19, 2009) (Carnes, C.J .) *citing Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986); *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, No. 1:06-cv-2000-JEC, 2007 U.S. Dist. LEXIS 36893 , at *22 (N.D. Ga. May 18, 2007) (Carnes, C.J); *Wainright v. Kraftco Corp.*, 54 F.R.D. 532 (N.D. Ga. 1972).  And, contrary to Defendants' assertion otherwise, nothing in *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003) authorizes discovery

---

[7] Plaintiffs certify that they have met and conferred with Defendants, but are unable to resolve this dispute.

from absent class members in this case.  To the contrary, in *Valley Drug*, the Court was presented with actual evidence that supported the need for discovery from absent class members. *Valley Drug*, 350 F.3d at 1193.[8]  Moreover, on remand, the court permitted only limited document discovery.  By contrast, here, Defendants have made absolutely no showing of "particularized need" for discovery from absent class members, or demonstrated how the discovery requested would not be unduly burdensome.  Therefore, Plaintiffs respectfully request that this Court issue a protective order quashing and/or directing Defendants to withdraw the deposition and document subpoenas served on absent class members.

## BACKGROUND

On November 11, 2010, Defendants issued twenty-eight (28) document subpoenas on passive members of the proposed direct purchaser class and others in twenty-four (24) separate jurisdictions.[9]  Doc. No. 146.  Those requests, consisting of over one hundred thirty (130) subparts, sought documents and data regarding the resale of AndroGel after class members purchased it from Defendants; purchase and sale information about twenty-two (22) other drugs that are not at issue in this litigation; court filings from an unrelated case; all communications with class

---

[8]In *Valley Drug*, the Eleventh Circuit noted that "[i]n the present case, the defendants have presented evidence." *Id.*

[9] Defendants subsequently suspended enforcement of two (2) of the twenty-eight (28) subpoenas.  *See supra* at fn. 4.

counsel in any pharmaceutical antitrust case; scores of contracts; and all documents regarding the "profitability" of selling branded and generic drugs. *See* Doc. Nos. 156-4 to 156-17, 157-1 to 157-15.  Defendants did not seek leave of court prior to serving those subpoenas on the absent class members.  Nor did Defendants provide Plaintiffs with prior notice of the subpoenas as required by FED. R. CIV. P. 45 (b)(1). Many of the subpoena recipients served objections to Defendants' document subpoenas.

By motion on December 17, 2010, Plaintiffs asked this Court for a Protective Order directing Defendants to withdraw the document subpoenas to absent class members. Doc. Nos. 156, 157.  At the same time, Defendants moved to compel discovery from the named plaintiffs, which included an attempt to compel discovery virtually identical to that sought through the subpoenas to absent class members. Doc. No. 151. This Court heard argument on both motions on March 1, 2011 and at the close of the hearing, denied both motions without prejudice and instructed the parties to meet and confer further. *See* Doc. No. 199; 3/1/2011 Tr.

For three months following this Court's ruling, Defendants did not pursue discovery from absent class members.  On or about June 3, 2011, with just over one month remaining in the discovery period, Defendants sent letters to the

6

recipients of the November 2010 subpoenas claiming that Defendants are "entitled to all of the discovery sought" because this Court denied Plaintiffs' motion for a protective order. *See* Chan Decl., Exs. A, B, C. Defendants' letters (a) suggested that Plaintiffs' motion was denied on the merits rather than *without prejudice*, and (b) failed to mention that Defendants' motion to compel discovery from the named plaintiffs (which included an attempt to compel discovery virtually identical to that sought through the subpoenas on absent class members) was also denied without prejudice. *See* Plaintiffs' Letter to Defendants, dated June 7, 2011 (Chan Decl., Ex. E). Additionally, Defendants' letter misrepresented that Plaintiffs had agreed to compromise on certain of Defendants' Requests for Production, when no such agreement had yet been reached. *Id.* While Defendants subsequently corrected their misstatement regarding the status of discovery negotiations with Plaintiffs, Defendants refused to correct their misleading suggestion that Plaintiffs' motion for a protective order was denied on the merits (when it was denied without prejudice) because they had attached the 80-page transcript of the proceedings to the letters (some of the absent class members are not represented by counsel). *See* Defendants' Letter to Plaintiffs, dated June 9, 2011 (Chan Decl., Ex. F). Because Defendants refused to correct the record, Plaintiffs corrected Defendants'

misstatements. *See* Plaintiffs' Letters to Defendants and Subpoena Recipients, dated June 13, 2011 (Chan Decl., Exs. G, H).

The following week, Defendants served at least eleven (11) deposition subpoenas on absent class members commanding testimony on nine (9) topics, including topics as to which the absent class members had objected to producing documents. (Chan Decl., Exs. I-01 to I-11, J-1 to J-3). *See also* Plaintiffs' Letter to Defendants, dated June 16, 2011 (Chan Decl., Ex. D). One absent class member, AmerisourceBergen, also received an amended document subpoena in June 2011 similar to that served in November 2010. Two other absent class members, Kaiser Foundation and Medco Health, received a second set of document subpoenas consisting of another nine (9) requests on June 17, 2011.

On June 24, 2011 – one hour before the first deposition was set to begin – the parties reached an agreement (without prejudice to the rights of individual absent class members), wherein Defendants agreed, *inter alia* to defer all absent class member depositions until the Court rules on the instant motion. Doc. No. 350. However, Defendants have refused to withdraw any of the deposition or document subpoenas served on absent class members, and have refused to refrain from contacting absent class members regarding the document subpoenas.

## **ARGUMENT**

### **I.   DISCOVERY FROM ABSENT CLASS MEMBERS IS**

**"GENERALLY IMPROPER"; AND ABSENT A SHOWING OF "PARTICULARIZED NEED" AND LACK OF UNDUE BURDEN, A COURT WILL NOT PERMIT SUCH DISCOVERY.**

The Supreme Court has explained that:

> an absent class-action plaintiff is not required to do anything.  He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection.

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 & n.2 (1985). Courts have held that "class action defendants are not permitted to seek discovery from absent class members as a matter of course." *Cooper v. Pacific Life Ins. Co.*, No. CV203-131, 2005 U.S. Dist. LEXIS 16465, at *5-6 (S.D. Ga. Aug. 5, 2005); *McCarthy v. Paine Webber Group, Inc.*, 164 F.R.D. 309 313 (D. Conn. 1995).  Because "discovery against absentee class members can be 'a tactic to take undue advantage of class members or… a stratagem to reduce the number of claimants' and further that Rule 23 of the Federal Rules contemplates that absentee parties shall remain the passive beneficiaries of class suits, courts have found it necessary to restrict availability of discovery against absentees to those instances in which a need can be shown." *Dellums v. Powell*, 566 F.2d 231, 236 (D.C. Cir. 1977). *See also* Federal Judicial Center, Manual for Complex Litigation (Fourth (2004) §21.41 at 302 ("One of the principal advantages of class actions over massive joinder or consolidation would be lost if all class members were routinely subjected to discovery").

The law in this Circuit is in accord: **"**[i]t is [] generally improper, under Rule

23, to permit discovery directed towards absent or passive class members." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2009 U.S. Dist. LEXIS 96790, at *10-11 (N.D. Ga. Oct. 19, 2009) (Carnes, C.J .) *citing Cox. v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986).; *Luna*, 2007 U.S. Dist. LEXIS 36893 at *22; *Collins v. Int'l Dairy Queen*, 190 F.R.D. 629, 631 (M.D. Ga. 1999); *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993).  In very rare cases, courts may permit discovery from absent class members "where the discovery would not be unduly burdensome, and the need for it is apparent." *Columbus Drywall*, 2009 U.S. Dist. LEXIS 96790, at *11.

In *Columbus Drywall*, the defendant served passive members of a class of independent fiberglass insulation contractors with broad requests seeking documents relating to insulation purchases and competition in the insulation market spanning a 6-year period, and sought to depose about 50 class members. 2009 U.S. Dist. LEXIS 96790, at *10-11, n. 1. Chief Judge Carnes blocked the attempt to take *both deposition and document discovery* from absent class members because "Defendant has not made a strong case for the necessity of the discovery it requests" nor did they show that the discovery would not be unduly burdensome. *Id.* at *11-12. Similarly, in *Collins v. Int'l Dairy Queen*, the Middle

10

District of Georgia denied defendants' request to take discovery from absent class members to show, among other things, that the individual Dairy Queen businesses did not suffer a net economic loss from the defendants' allegedly anticompetitive conduct. 190 F.R.D. at 630. The Court did not allow discovery from even a limited sampling of absent class members because the defendants failed to demonstrate how (a) the requested discovery from absent class members was necessary, (b) responding to the proposed discovery would not be unduly burdensome on absent class members as it would require the assistance of an accountant or lawyer, and (c) the information sought did not relate more to individual questions rather than class-wide issues. *Id.* at 632.[10]

Indeed, by agreeing to defer absent class member depositions until a ruling on the instant motion, Defendants have implicitly acknowledged that court approval is required prior to seeking absent class member depositions – if not all discovery. Doc No. 350.[11]

---

[10] *See also Cooper*, 2005 U.S. Dist. LEXIS 16465 at *7-8; *Carbon Dioxide*, 155 F.R.D. at 212; *In re Publication Paper Antitrust Litig.*, No. 3:04-MD 1631 (SRU), 2005 U.S. Dist. LEXIS 13681 , at *6-7 (D. Conn. July 5, 2005); *Baldwin & Flynn v. National Safety Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1992); *In re Worlds of Wonder Sec. Litig.*, No. C-87-5491 SC (FSL), 1992 U.S. Dist. LEXIS 10503, at *16-17 (N.D. Cal. July 9, 1992).

[11] Courts have explicitly required court approval *prior* to seeking absent class member discovery:

**A defendant must receive leave of court to conduct discovery of absent**

## A. Nothing in *Valley Drug* authorizes discovery from absent class members in this case.

Defendants have argued that *Valley Drug* mandates discovery from absent class members in this case. However, unlike the case here, (a) the defendants in *Valley Drug* presented evidence to justify the need for the discovery, (b) the discovery was served after receiving court approval, (c) the discovery permitted by the court was narrowly tailored, and (d) the discovery was supervised by the district court.

In *Valley Drug*, the Eleventh Circuit was presented with a record - early in the history of direct purchaser antitrust class actions relating to suppressed generic competition - that raised questions in the panel's mind about whether the national wholesalers (three large class members) viewed that class action to be in their interests. *See* 350 F.3d at 1193 (commenting that "[i]n the present case, the defendants have presented evidence that the cognizable antitrust injury suffered by the national wholesalers [resulting from delayed generic entry] may have been outweighed by" possible increased profit from the absence of generics, suggesting

---

**class members**… Because of the intrusive nature of depositions, "the burden confronting the party see[k]ing [sic] deposition testimony should be more severe than that imposed on the party requesting permission to use interrogatories.
*Groth v Robert Bosch Corp.*, No. 1:07-cv-962, 2008 U.S. Dist. LEXIS 52328 , at *2-3 (W.D. Mich. July 9, 2008 (emphasis added); *Baldwin & Flynn*, 149 F.R.D. at 600.

that the national wholesalers may have been willing to "trade[]" their cognizable damage claim for the alleged increased in profits). Based on that showing – which was untested at the time – the Eleventh Circuit permitted some limited downstream discovery to explore a "potential conflict." *Id.* at 1191-1192.

Here, Defendants have offered nothing to substantiate the need for discovery from absent class members – Defendants have presented nothing to show that the interests of the national wholesalers, Cardinal Health, Inc., McKesson Corp., and AmerisourceBergen Corp., conflict with those of the class representatives who are smaller regional wholesalers.  Not only has no such evidence been offered, but one of the largest direct purchasers of AndroGel, Cardinal Health, made clear to Defendants that "based on its own business judgment," it "does not perceive any conflicts with the putative class representatives" and "[i]f the Androgel case is certified as a class action Cardinal Health intends to remain a member of the class." Cardinal Letter to Defendants, dated Jan. 26, 2011 (Chan Decl., Ex. K). There is simply no reason to permit Defendants to engage in a fishing expedition for a "potential conflict" when one of the largest class members perceives no such conflict.  There is also no reason to believe that absent class members – including the national wholesalers, who Defendants themselves admit are sophisticated entities, are incapable of determining what their own interests are, and why the

13

Court cannot trust that they will opt-out of the class if this lawsuit is not in their interests, economic or otherwise.

Moreover, in *Valley Drug*, the discovery from absent class members was court-supervised and narrowly focused on whether alleged class conflicts existed. 350 F.3d at 1195. While authorizing the limited discovery, the Eleventh Circuit made clear that "the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Id.* at 1189. Unlike the overbroad subpoenas here, the subpoenas in *Valley Drug* were limited to information about brand-name Hytrin from 1998 to 2000, and its generic equivalent, terazosin hydrochloride, from 1999 to 2000. Notably, those subpoenas did *not* include discovery of other, unrelated products, court filings from unrelated cases, or communications with counsel in *any* pharmaceutical antitrust case. *Id.*

## II.   THE DISCOVERY DEFENDANTS SEEK FROM ABSENT CLASS MEMBERS IS NOT WARRANTED.

Defendants have fallen far short of the showing of "particularized need" and lack of undue burden necessary to warrant discovery from absent class members. Unlike the defendants in *Valley Drug*, Defendants here have not even attempted any evidentiary showing to support such discovery. This Court should, therefore, quash and/or direct Defendants to withdraw the subpoenas for depositions and

documents served on absent class members.

### A. The discovery from absent class members authorized in *Valley Drug* proved wasteful because, in the end, the defendants there could not even articulate a conflict.

To the extent Defendants seek discovery to test the theories of "potential conflict" identified in *Valley Drug*, the result of the *Valley Drug* inquiry demonstrates that the discovery should not be permitted here – following months of wasteful discovery, the defendants did not produce any evidence of an actual conflict.[12]

First, the defendants obtained the discovery in *Valley Drug* – and did nothing with it, not even "articulating" a plausible conflict. *See In re: Terazosin Hydrochloride Antitrust Litig.* May 21, 2004 Hearing Tr., at 123, 127-129, 134 (Doc. 157-18). *See also In re Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666, 678 (S.D. Fla. 2004) ("**Defendants cannot articulate any potential or actual conflict or antagonism**")(emphasis added)(opinion on remand). Defendants have not offered anything new here. There is no rational reason to repeat the wasteful discovery exercise of *Valley Drug.*

Second, the potential "conflict" raised in *Valley Drug* was dispelled to the satisfaction of the district court:

---

[12] *See* FED. R . CIV. P. 1 (the Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

15

> **Based on the evidence in the record, it would appear that such net benefit would not present an opportunity for fundamental conflict to arise**. * * *
>
> Examining the record further**, the Court finds no hard evidence of an actual disagreement or conflict nor can it imply that a realistic possibility of fundamental antagonism exists**. Here, **no putative class member opposes the class, no class member has articulated any possibility for conflict or antagonism, and the class members constituting over 90% of the alleged overcharge damages affirmatively state that they want to be part of the class**. * * * **There has been no factual showing that there is a real divergence of economic or litigation interest among the class members or between the named class representatives and the class in this particular action**. * * *
>
> Defendants, nonetheless, assert that a conflict exists.  However, **hard evidence does not support the Defendants' assertions, and Defendants have been unable to show any actual disagreement or conflict that would sacrifice the interests of some class members for that of others nor have they identified any harm to putative class member as the result of pursuing this lawsuit**.

*Terazosin*, 223 F.R.D. at 679-80 (emphases added)(internal citations omitted).

Despite finding no evidence of an actual or potential, current or prospective conflict, the district court felt constrained by the Eleventh Circuit's decision to deny class certification.[13]  However, the district court subsequently *certified* for

---

[13] *See Terazosin,* 223 F.R.D. at 679. Plaintiffs respectfully believe that the court erred in its interpretation of *Valley Drug*.  The Eleventh Circuit wished to make sure that the interests of absent class members were being protected -- that is what the "adequacy" requirement of Rule 23(a)(4) is all about.  Once the district court on remand had decided that the interests of absent class members were being served, not harmed, by the lawsuit seeking overcharges, that should have permitted the court to certify the class.

settlement the same class it had previously declined to certify. *In re Terazosin Hydrochloride Antitrust Litig.*, slip. op. at 1 (S.D. Fla. Feb. 28, 2005) (Doc. 157-19). Notably, reversing course, defendants in *Valley Drug*, *including Solvay's parent company, Abbott*, agreed (a) that there was no conflict sufficient to defeat class certification, and (b) to the propriety of certifying one class of direct purchasers.[14]  In February 2005, the court found that "it [is] appropriate to certify a class of Direct Purchasers for purposes of settlement." *Id. at 2*.

Third, when it served their interests, the defendants in *Valley Drug* flip-flopped, by agreeing to the certification of a single class for settlement and dropping any inquiry into the "net" economic effects of delayed generic competition on class members. Had the defendants still perceived a fundamental conflict in *Valley Drug*, they could not have agreed to the propriety of class certification under FED. R. CIV. P. 11.

In sum, Defendants' deposition and document subpoenas here serve no legitimate purpose, and should not be permitted.

### B. The downstream discovery Defendants seek is legally irrelevant.

Under controlling Supreme Court authority, the information Defendants seek through the document and deposition subpoenas – about direct purchasers' own

---

[14] *See* Doc. No. 157-20.

sales, prices, and profits on the *resale* of AndroGel further down the chain of distribution (often called "downstream" effects) – is irrelevant as a matter of law. In direct purchaser antitrust cases such as this one, courts generally do not permit downstream discovery. *In re Air Cargo Shipping Services Antitrust Litig.*, No. 1:06-md-01775, 2010 U.S. Dist. LEXIS 125623, at *66 (E.D.N.Y. Nov. 24, 2010); *In re Automotive Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2006 U.S. Dist. LEXIS 34129, at *22-29 (E.D. Pa. May 26, 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-98 (M.D. Pa 2005).

Under the Supreme Court's decisions in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), direct purchasers' damages cannot be reduced by showing that overcharges paid by the direct purchasers were passed-on to purchasers "downstream" in the chain of commerce, or that direct purchasers otherwise benefitted from the overcharge. In creating this rule, the Supreme Court, sought to "avoid the 'fishing expeditions' that result when downstream discovery was permitted." *Auto Paint,* 2006 U.S. Dist. LEXIS 34129*,* at *23. The Court specifically wanted to avoid complicating the proof in antitrust cases "with attempts to trace the effects of the overcharges on the purchaser's prices, sales, costs, and profits, and of showing that these variables would have behaved differently without the overcharge." *Illinois*

18

*Brick*, 431 U.S. at 725.  Furthermore,

> it is important to note that the Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive discovery that such an inquiry would entail.

*Labelstock*, 226 F.R.D. at 498 (citing *Hanover Shoe,* 392 U.S. at 494 ).

Therefore, as this Court recognized at the March 1, 2011 hearing, "but for the conflict-of-interest hook, so to speak, the information that the Defendant is seeking is irrelevant." 3/1/2011 Tr. at 43.

### C. Defendants have offered nothing to satisfy the strong showing of need required to justify depositions of absent class members.

As discussed, because of the intrusive nature of depositions, "the burden confronting the party see[k]ing [sic] deposition testimony should be more severe than that imposed on the party requesting permission to use interrogatories." *Groth*, 2008 U.S. Dist. LEXIS 5238, at *2-3.  Even if some absent class members did produce documents in response to Defendants' November 2010 subpoenas, those productions constitute unauthorized discovery upon absent class members. Defendants, therefore, should not be permitted to depose any absent class members on the unauthorized productions. Depositions of absent class members are only authorized in exceptional circumstances and where, unlike Defendants here, the proponent of such discovery has satisfied a heavy burden. *Id.*

19

## III. DEFENDANTS' TACTICS ARE INAPPROPRIATE AND HARASSING.

### A. Defendants' deposition subpoenas are an attempt to make an end-run around the Rule 45 rights of the absent class members who objected to Defendants' November 2010 document subpoenas.

All (or nearly all) of the absent class members who received deposition subpoenas had objected to the document subpoenas Defendants served in November 2010. Therefore, under Fed. R. Civ. P. 45 (c)(2)(B)(i), Defendants were obligated to move the issuing court to compel production. However, rather than moving to compel, Defendants instead served deposition subpoenas, apparently in an effort to avoid having to move to compel and to shift the burden of filing motions onto the absent class members.

Defendants' subpoenas seek testimony on the following topics:

- the interpretation of documents and data produced to Defendants;[15]
- conditions under which the absent class member makes more profits selling brand-name versus generic pharmaceuticals;
- conditions under which the absent class member makes more and/or profits selling AndroGel versus a generic from Watson and Par/Paddock;[16]
- the absent class members practice of selling pharmaceuticals on a cost-plus or cost-minus basis;
- the absent class members' profits from purchases and sales of

---

[15] Defendants seek to depose absent class members on this topic even though absent class members objected to Defendants' November 2010 document subpoenas, and many subpoena recipients did not produce documents.

[16] Defendants seek to depose absent class members on this topic even though no generic version of AndroGel is currently on the market.

AndroGel, Wellbutrin XL, Monopril HCT, and any generic equivalents of these drugs;

- the financial terms of the absent class members' generic source/formulary program with its customers;
- competition between AndroGel and 10 other testosterone replacement therapy drugs or other products that compete with AndroGel;
- all communications between the absent class members or their counsel and any other person concerning the instant litigation or the AndroGel patent litigations;
- declarations filed in an unrelated case; and
- the absent class members' collection and production of documents and data in this case.

*See* Chan Decl., Exs. I-1 to I-11, J-1 to J-3.[17] In total, Defendants' deposition subpoenas list nine (9) topics with over sixteen (16) subparts – the majority of which have no relation whatsoever to whether the interests of the national wholesalers potentially conflict with those of the class representatives.  At least five (5) of these facially overbroad deposition topics seek testimony on downstream issues, which are irrelevant in direct purchaser antitrust cases. *See supra* at 18-20.  Furthermore, there is absolutely no precedent permitting absent class member discovery on issues having no relation to class certification, such as information about unrelated drugs, from an unrelated case, or communications with any person about this case or any other case.

---

[17] One absent class member, AmerisourceBergen, received an amended document subpoena in June 2011 similar to that served in November 2010.  Two other absent class members, Kaiser Foundation and Medco Health, received a second set of document subpoenas consisting of 9 requests on June 17, 2011.

The document subpoenas served in November 2010, which Defendants are continuing to seek compliance with, are also facially overbroad and unjustifiably burdensome as they, with *over 130 subparts*, seek discovery concerning, *inter alia*:

- the resale of AndroGel *after* class members purchased it from Defendant Abbott ("downstream discovery");
- purchases of AndroGel - information which Defendant Abbott, the maker of AndroGel, already has;
- purchase and sale information about *22 other drug products* that are not at issue in this litigation;
- court filings from an unrelated case;
- all communications with class counsel in *any* pharmaceutical antitrust litigation;
- scores of contracts with each subpoena recipient's own customers; and
- "all" documents regarding analyses of the "profitability" of selling branded and generic drugs.

Defendants' deposition and document subpoenas here seek information well beyond anything contemplated or authorized by the court in *Valley Drug*. There, *after the defendants had made a showing of need,* on remand, the court limited the subpoenas to eight (8) specific document requests covering a few years and one drug (branded and generic Hytrin). By contrast, Defendants here have propounded eighteen (18) document requests consisting of *over 130 subparts*. Instead of one drug, Defendants here seek documents about many.[18] Instead of a few years,

---

[18] While Defendants have offered to narrow their list of drugs to eleven (11) (*i.e.* AndroGel, Wellbutrin XL, Monopril HCT, and eight (8) testosterone related therapy drugs), having to produce documents and data on even eleven (11) brand

Defendants here seek information spanning nearly a decade. The overbroad document subpoenas at issue here, in short, bear no similarity to the subpoenas in *Valley Drug*.

The exhaustive nature of Defendants' subpoenas for documents and deposition testimony are unduly burdensome. As evinced by the Declaration of Jeff Romano, Doc. No. 185, a representative of a named plaintiff that received document requests nearly identical to the document subpoenas served on absent class members, the burden on any entity having to respond to such requests is substantial. Mr. Romano, Prescription Drug Buyer/Merchandiser at Meijer, stated that "[g]athering and producing documents and data responsive to the Requests would be extremely burdensome to Meijer" and estimated that it would require "Meijer team members at least two (2) months working full time to gather the documents and data demanded in the Requests." Doc. No. 185 at ¶¶6-7. *See also* Doc. No. 166 (filed under seal).

Given the extreme breadth of Defendants' subpoenas, it would undoubtedly take enormous time, effort, and expense to analyze the discovery requests, negotiate the scope of production, and collect and produce any responsive documents and data. Furthermore, absent class members would have to devote

drugs and their multiple generic equivalents is unduly burdensome – and well beyond what the district court on remand in *Valley Drug* permitted.

significant time and resources to preparing for and appearing for deposition. In addition, given the very nature and complexity of this antitrust case, absent class members likely would require the assistance of, at the very least, an accountant or an attorney. In *Collins v. Int'l Dairy Queen*, the court found that having to obtain professional assistance would be unduly burdensome to absent class members, which "mitigates against allowing discovery." 190 F.R.D. at 632.

### B. Defendants' misrepresentations and omissions of fact in communications with absent class members are inappropriate and harassing.

Since the March 2011 hearing, Defendants have done nothing with respect to the November 2010 subpoenas they served on absent class members.  With just over one month remaining in the discovery period, Defendants renewed their efforts to seek that discovery. On or about June 3, Defendants sent letters to recipients of their November 2010 claiming that they are "entitled to all of the discovery sought" by:

- suggesting that this Court denied Plaintiffs' Motion for a Protective Order on the merits when it was denied without prejudice;
- omitting the fact that Defendants' motion to compel discovery from the named plaintiffs (which included an attempt to compel discovery virtually identical to that sought through the subpoenas on absent class members) was also denied without prejudice;
- misrepresenting that Plaintiffs had agreed to compromise on certain of Defendants' Requests for Production, when no such agreement had yet been reached; and

- arguing that discovery from absent class members is "mandated" by *Valley Drug*, when nothing in *Valley Drug* authorizes discovery from absent class members in this case.

*See* Chan Decl., Exs. A, B, C.  After Plaintiffs demanded that Defendants correct their misstatements, Defendants corrected their statement that the parties had reached an agreement regarding certain discovery requests, but Defendants refused to correct the misperceptions created by their statements about the March 1, 2011 hearing. *See* Chan Decl., Ex. F.

Then, on June 17, 2011, defendants served deposition subpoenas on absent class members, who had previously served objections to Defendants' document subpoenas, commanding them to appear for deposition on the topics objected to, among other things.  Under Rule 45, if Defendants wanted to pursue document discovery, they were obligated to move to compel rather than attempt an end-run by serving deposition subpoenas to cover the same topics.

Defendants' strong-arm tactics to obtain discovery from absent class members are inappropriate and harassing, and demonstrates why discovery from absent class members should not be permitted.

## **CONCLUSION**

For the foregoing reasons, this Court should issue a protective order quashing and/or directing Defendants to withdraw the subpoenas for depositions

and documents to absent members of the direct purchaser plaintiff class.

Respectfully submitted,

Date:  June 27, 2011                    By:  ____/s/ *Kenneth S. Canfield*_____

Kenneth S. Canfield
Ga. Bar. No. 107744
kcanfield@dsckd.com
1355 Peachtree Street, Suite 1600
Atlanta, Georgia 30309
Telephone; (404) 881-8900
Facsimile (404) 881-3007

*Liaison Counsel for Direct Purchaser
Plaintiffs*

Bruce E. Gerstein, Pro Hac Vice
bgerstein@garwingerstein.com
Joseph Opper, Pro Hac Vice
jopper@garwingerstein.com
Elena K. Chan, Pro Hac Vice
echan@garwingerstein.com
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620

David P. Smith
dpsmith@smithfoote.com
W. Ross Foote
rfoote@smithfoote.com
Susan Segura
ssegura@smithfoote.com
THE SMITH FOOTE LAW FIRM LLP
720 Murray Street
P.O.Box 1632

David F. Sorensen, Pro Hac Vice
dsorensen@bm.net
Eric Cramer, Pro Hac Vice
ecramer@bm.net
Ellen Noteware, Pro Hac Vice
enoteware@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215)-875-4683
Facsimile: (215)-875-4604

Joshua P. Davis (SBN. 193254)
davisj@usfca.edu
LAW   OFFICES   OF   JOSHUA   P.
DAVIS
437A Valley Street
San Francisco, CA 94131
Telephone: (415) 422-6223

26

Alexandria, LA 71309
Telephone: (318) 445-4480
Facsimile: (318)487-1741

John Gregory Odom
jodom@odrlaw.com
Stuart Des Roches
stuart@odrlaw.com
Andrew Kelly
akelly@odrlaw.com
John Fitzpatrick
jfitzpatrick@odrlaw.com
ODOM & DES ROCHES
Poydras Center
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Telephone: (504) 522-0077
Facsimile: (504) 522-0078

Russell A. Chorush
rchorush@hpcIlp.com
Miranda Jones
mjones@hpcllp.com
HEIM PAYNE & CHORUSH LLP
Chase Tower
600 Travis, Suite 6710
Houston, TX 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

*Counsel for Louisiana Drug Company, Inc.*

Linda P. Nussbaum
John D. Radice
Grant & Eisenhofer P.A.
485 Lexington Avenue

David Balto
LAW OFFICES OF DAVID BAL TO
2600 Virginia Ave NW Suite 1111
Washington, DC 20037

*Counsel for Rochester Drug Co-operative, Inc.*

Joseph M. Vanek
jvanek@vaneklaw.com
David P. Germaine
dgermaine@vaneklaw.com

27

New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501


Joseph R. Saveri (SBN 130064)
isaveri@lchb.com
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Jordan Elias (SBN 228731)
ielias@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
Battery Street, Suite 3000
San Francisco, CA 94111-3339
Telephone. (415) 956-1000
Facsimile. (415) 956-1008


Donald Perelman
dperelman@fineblack.com
Roberta Liebenberg
rliebenberg@fineblack.com
1835 Market Street, 28th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 567-6565
Facsimile: (215) 568-5872

VANEK, VICKERS & MASINI, P.C.
111 South Wacker Drive, Suite 4050
Chicago, IL 60606
Telephone: (312)224-1500
Facsimile: (312) 224-1510


Paul E. Slater
pes@sperling-law.com
SPERLING & SLATER
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
Facsimile: (312)641-6492

*Counsel for Meijer, Inc. and Meijer
Distribution, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | **CASE NO. 1:09-MD-2084-TWT**<br><br>**DIRECT PURCHASER CLASS ACTIONS** |
| **ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,**<br>　　　　　Plaintiff,<br>　　　v.<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>　　　　　Defendants. | **CASE NO. 1:09-CV-956-TWT** |
| **LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,**<br>　　　　　Plaintiff,<br>　　　v.<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>　　　　　Defendants. | **CASE NO. 1:09-CV-957-TWT** |
| **MEIJER, INC., ET AL.,**<br>　　　　　Plaintiffs,<br>　　　v.<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>　　　　　Defendants. | **CASE NO. 1:09-CV-958-TWT** |

## CERTIFICATE OF SERVICE

I have this day served counsel for all parties in the foregoing matter with a copy of Direct Purchaser Class Plaintiffs' Motion for a Protective Order Quashing and/or Directing Defendants to Withdraw Subpoenas for Depositions and Documents Served On Absent Class Members and Memorandum in Support Thereof by filing the same with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification and allow access to the filing to all counsel of record.

Date:  June 27, 2011

_____/s/ *Kenneth S. Canfield*_____