# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE ANDROGEL ANTITRUST LITIGATION (II) | CASE NO. 1:09-MD-2084-TWT |
| | DIRECT PURCHASER CLASS ACTIONS |
| | ORAL ARGUMENT REQUESTED |
| ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,<br><br>Plaintiffs,<br>v.<br>UNIMED PHARMACEUTICALS, INC., ET AL.,<br>Defendants. | CASE NO. 1:09-CV-956-TWT |
| LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,<br><br>Plaintiff,<br>v.<br>UNIMED PHARMACEUTICALS, INC., ET AL.,<br>Defendants. | CASE NO. 1:09-CV-957-TWT |
| MEIJER, INC., ET AL.,<br><br>Plaintiffs,<br>v.<br>UNIMED PHARMACEUTICALS, INC., ET AL.,<br><br>Defendants. | CASE NO. 1:09-CV-958-TWT<br><br>* Caption continued on next page. |

## DEFENDANTS' MOTION TO COMPEL PUTATIVE CLASS MEMBER RESPONSES TO DOCUMENT SUBPOENAS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

| | |
|---|---|
| **IN RE: DOCUMENT SUBPOENA SERVED ON BURLINGTON DRUG CO.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON CAPITAL WHOLESALE DRUG CO. AND MIAMI-LUKEN, INC.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON DIK DRUG CO.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS** |
| **IN RE: DOCUMENT SUBPOENAS SERVED ON J.M. SMITH CORP. AND KING DRUG CO. OF FLORENCE, INC.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON PRESCRIPTION SUPPLY, INC.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON VALLEY WHOLESALE DRUG CO., INC.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON VALUE DRUG COMPANY** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA** |

## DEFENDANTS' MOTION TO COMPEL PUTATIVE CLASS MEMBER RESPONSES TO DOCUMENT SUBPOENAS

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Local Rule 37.1 (N.D. Ga.), 28 U.S.C. § 1407, and other applicable law, Defendants Abbott Products, Inc. f/k/a Solvay (hereinafter "Solvay"); Unimed Pharmaceuticals, Inc.; Par Pharmaceuticals, Inc.; Paddock Laboratories, Inc.; and Watson Pharmaceuticals, Inc. (collectively, "Defendants") respectfully move the Court for an Order compelling nine absent members of the putative direct purchaser class in the above captioned MDL proceedings—Burlington Drug Co.; Capital Wholesale Drug Co.; Dik Drug Co.; J.M. Smith Corp., aka Smith Drug Co.; King Drug Co. of Florence, Inc.; Miami-Luken, Inc.; Prescription Supply, Inc.; Valley Wholesale Drug Co., Inc.; and Value Drug Company (collectively, "Putative Class Members")—to provide adequate responses to the subpoenas served on them by Defendants seeking documents and data.  The Putative Class Members have consented to the jurisdiction of this Court to resolve this dispute.[1]

---

[1] Even in the absence of such consent, this Court plainly has authority under 28 U.S.C. § 1407(b), to enforce Defendants' third party subpoenas.  *See* Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2643.1 (3d ed. 2011) ("A multidistrict litigation court has authority to decide motions to compel . . . subpoenas directed to nonparties in any district."); *In re Clients & Former Clients of Baron & Budd, P.C.*, 478 F.3d 670 (5th Cir. 2007).

## MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PUTATIVE CLASS MEMBER RESPONSES TO DOCUMENT SUBPOENAS

## I.   INTRODUCTION

This Motion seeks an order compelling nine regional wholesalers—Burlington Drug Co.; Capital Wholesale Drug Co.; Dik Drug Co.; J.M. Smith Corp., aka Smith Drug Co.; King Drug Co. of Florence, Inc.; Miami-Luken, Inc.; Prescription Supply, Inc.; Valley Wholesale Drug Co., Inc.; and Value Drug Company (collectively, "Putative Class Members")—to produce documents regarding important class certification issues.  Last fall, Defendants served document subpoenas on these and other absent members of a putative class of direct purchasers of AndroGel.  Following the Court's denial of the Class Plaintiffs'[2] motion for a protective order that had sought to quash these document subpoenas, and the Court's order that the parties meet and confer to attempt to resolve these disputes, Defendants have engaged in lengthy meet-and-confer discussions with the Class Plaintiffs over the scope of discovery.  Class Plaintiffs recently renewed their motion for a protective order seeking to quash both the pending document subpoenas as well as deposition subpoenas that Defendants had

---

[2] The term "Class Plaintiffs" refers to Rochester Drug Cooperative, Inc., Louisiana Wholesale Drug Co., Inc., Meijer, Inc., and Meijer Distribution, Inc., who are pursuing class actions on behalf of direct purchasers of AndroGel. *See* Case 1:09-md-02084-TWT Dkt. # 35.

also served on a small selection of absent class members.[3]

Defendants have continued to attempt to meet and confer with the Putative Class Members regarding the document subpoenas, but because the Putative Class Members have refused to engage in any meet-and-confer discussions and have not produced any documents, Defendants have no alternative but to seek the Court's assistance.  In substance, the arguments supporting the instant motion to compel mirror those that support denial of the Class Plaintiffs' motion for a protective order.  Although this motion to compel relates only to document subpoenas, and the Class Plaintiffs' motion for a protective order relates to both document and deposition subpoenas, both motions ask the Court to decide whether discovery from absent putative class members into whether they profit more or less from selling generic drugs is appropriate under *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003).

With respect to the instant motion, Defendants offered substantial compromises to the Putative Class Members regarding the scope of discovery sought—compromises that mirrored agreements reached with Class Plaintiffs on party discovery requests, and that significantly narrowed the scope of the

---

[3] Defendants and the Class Plaintiffs filed a joint motion seeking a limited extension of the discovery cut-off so that those depositions could be postponed pending the outcome of Class Plaintiffs' protective order motion.

document subpoenas.  Yet despite the significant narrowing of the subpoena

requests, the Putative Class Members have refused to produce **any** documents.

Defendants thus have no choice but to move to compel the requested discovery,

which relates to whether these regional pharmaceutical wholesalers benefit from,

or instead are harmed by, the market entry of generic versions of branded

pharmaceuticals, and in particular, generic versions of AndroGel.  Specifically,

Defendants' narrowed requests seek:

- Data reflecting the Putative Class Members' sales of AndroGel;
- Data reflecting the Putative Class Members' purchases and sales of just *two* analogous drugs that were subject to generic entry during the period in question;
- The terms of sale relating to AndroGel of the Putative Class Members' contracts with their top customers;
- Contracts related to the Putative Class Members' generics purchasing programs;
- Documents describing the Putative Class Members' practices of selling pharmaceuticals on a cost-plus or cost-minus basis;
- Documents analyzing whether it is more profitable for the Putative Class Members to sell brand-name drugs or generic drugs

Defendants are clearly entitled to this discovery under *Valley Drug*, which required

similar absent class member discovery in virtually identical circumstances.

## II.   FACTUAL BACKGROUND

The Class Plaintiffs allege that Solvay brought sham patent infringement

suits against Watson and Par/Paddock to maintain a monopoly in a purported

market for AndroGel, a drug used in the treatment of low testosterone levels. As a result of Defendants' alleged conduct, the Class Plaintiffs contend that they were denied the opportunity to purchase lower-priced generic alternatives to AndroGel. Defendants deny all of these allegations.

In November 2010, Defendants served subpoenas on the Putative Class Members seeking document discovery about class certification issues—specifically, purchase and sales data, and other documents, relating to whether the Putative Class Members were harmed economically by the challenged conduct, *i.e.*, whether all of them would have been better off with earlier generic entry of the drug at issue, or whether some of them actually benefit economically from delayed generic entry. *See* Declaration of Rohit K. Singla ("Singla Decl.") Exhs. A-I.

On November 22, 2010, counsel for the Class Plaintiffs sent a letter to the Putative Class Members informing them that they would be filing a motion for a protective order to quash the subpoenas unless Defendants withdrew them. *See* Singla Decl. Exh. J. The Class Plaintiffs filed a motion for a protective order on December 17, 2010 (hereinafter, "Motion for a Protective Order"). *See* Singla Decl. Exh. K (Case 1:09-md-02084-TWT Dkt. # 156). Exhibit A to that Motion contained objections to Defendants' subpoenas. The Class Plaintiffs' principal objections were that absent class member discovery is "generally improper"; the

subpoenas sought "downstream" discovery, or "discovery into the extent, if any, that subpoena recipients were able to 'pass on' or otherwise offset the economic effect of" the challenged conduct, which Plaintiffs argued is improper under *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493-94 (1968), and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977); and the subpoenas were unduly burdensome.  *See* Exh. A to Singla Decl. Exh. K.

Despite the pendency of Plaintiffs' Motion for a Protective Order, a putative class member, Mutual Drug Company, produced data and documents responsive to almost all of Defendants' requests in an initial production in December 2010 and a supplemental production on February 18, 2011.  *See* Singla Decl. ¶ 13.

In December 2010, eight of the nine Putative Class Members sent identical letters responding to the document subpoenas stating that they "object[ed] to the production of documents and information demanded by the Subpoena for the reasons set forth in Exhibit A in the Class Plaintiffs' Motion for a Protective Order filed in the above captioned matter on December 17, 2010."  *See* Singla Decl. Exhs. L-T.[4]  In January and February of 2011, Counsel for the Putative Class Members refused Defendants' requests to meet and confer about the objections,

---

[4] The remaining Putative Class Member, Capital Wholesale Drug Co., served objections on December 14, 2010 that replicated almost verbatim the objections set forth in Exhibit A to the Motion for a Protective Order.  *See* Singla Decl. Exh. U.

stating that they preferred to wait until the Court ruled on the Class Plaintiffs' Motion for a Protective Order.  *See* Singla Decl. Exhs. FF-HH.

At a hearing on March 1, 2011, this Court denied the protective order motion without prejudice.  *See* Singla Decl. Exh. V at 78:7-79:5.  The Court also denied without prejudice Defendants' Motion to Compel the Class Plaintiffs to produce similar discovery under *Valley Drug*.  The Court noted Defendants had failed to identify the specific requests in dispute in their papers.  The Court ordered the parties to meet and confer to resolve their disputes.

Since March, taking to heart the Court's instructions to meet and confer, Defendants have engaged in extended meet-and-confer discussions with the Class Plaintiffs, consisting of many rounds of telephone calls and letter exchanges.  *See* Singla Decl. ¶ 25.  In those discussions, the Class Plaintiffs finally agreed in principle, for the first time, to provide discovery relating to *Valley Drug* class certification issues.  By late May, the parties reached tentative compromises regarding the scope of Defendants' *Valley Drug* document requests to the Class Plaintiffs, requests that are nearly identical to those in Defendants' subpoenas to Putative Class Members.  *See* Singla Decl. ¶ 26 & Exh. W.

In early June 2011, Defendants then continued their meet and confer efforts with the Putative Class Members extending to them the same compromises offered

to the Class Plaintiffs, and explaining why, under *Valley Drug*, there is a particularized need for this discovery. *See* Singla Decl. Exhs. X-Z. Counsel for the Putative Class Members (who, as noted, also represent named class plaintiff Louisiana Wholesale Drug Co., Inc.) responded that they "strongly disagree" with Defendants' interpretation of *Valley Drug*, and would "stand by" their previously served objections. *See* Singla Decl. Exhs. AA & BB.[5]

The first deposition of a putative class member was set for June 24, 2011. In a telephonic conference on June 20, 2011, in which Ms. Segura participated, the parties discussed Defendants' subpoenas to Putative Class Members and agreed that their disputes over whether Defendants are entitled to take discovery from putative class members could not be resolved without the Court's involvement. Singla Decl. ¶ 2. The Class Plaintiffs indicated that they would renew their motion for a protective order seeking to quash the subpoenas served on any Putative Class Members, and would seek emergency relief from this Court, given the impending depositions that Defendants had scheduled. They also said they would seek to

---

[5] Defendants also served a deposition subpoena on Putative Class Member Valley Wholesale Drug Co. on June 17, 2011. *See* Singla Decl. Exh. CC. On June 18, 2011, Ms. Segura, counsel for the Putative Class Members, sent an objection letter stating: "For the reasons described in Direct Purchaser Plaintiffs' Motion for Protective Order, dated December 17, 2010 and in my letter of June 8, 2011, Valley Wholesale objects to Defendants' deposition subpoena because discovery from absent class members is improper absent a showing of particularized need and prior court approval." *See* Singla Decl. Exh. DD.

block discovery even of putative class members who *agreed* to provide discovery. To avoid burdening the Court with an emergency motion, Defendants agreed to refrain from proceeding with the depositions until this Court rules on the protective order motion.[6]  On June 24, 2011, Defendants and the Class Plaintiffs filed a joint motion reflecting the parties' agreement and seeking a limited extension of the discovery cut-off.  *See* Case 1:09-md-02084-TWT Dkt. #350.  This joint motion was granted on June 27, 2011.  *See* Case 1:09-md-02084-TWT Dkt. #352.

On June 21, 2011, counsel for Defendants made a last effort to meet and confer about the document and deposition subpoenas, but received no response. *See* Singla Decl. ¶ 35 & Exh. EE.[7]

## III.   ARGUMENT

### A.   Under *Valley Drug*, Defendants have a particularized need for discovery from sample class members, and Defendants have substantially narrowed their requests.

The Putative Class Members' principal objections are: (1) the subpoenas

---

[6]  The joint motion related solely to the deposition subpoenas; at the June 23, 2011 meet-and-confer Defendants made clear to Direct Purchaser Class Plaintiffs that they would continue to attempt to meet-and-confer with absent class member subpoena recipients on the subpoenas seeking documents and data.  Singla Decl. ¶ 39.

[7]  Defendants are still engaged in meet-and-confer discussions with other putative class members, named plaintiffs, and indirect purchaser absent class members. Depending on the outcome of those discussions, Defendants may need to file additional motions to compel.

seek "downstream" discovery, or "discovery into the extent, if any, that subpoena recipients were able to 'pass on' or otherwise offset the economic effect of" the challenged conduct, which Putative Class Members argue is improper under *Hanover Shoe* and *Illinois Brick*; (2) absent class member discovery is "generally improper" and requires prior court approval; and (3) the subpoenas requests are unduly burdensome.  *See* Exh. A to Singla Decl. Exh. K; Singla Decl. Exh. AA. These general objections have no merit.[8]

### 1.  *Valley Drug permits "downstream discovery" into potential class conflicts.*

The downstream discovery Defendants seek here is mandated by *Valley Drug*.  The *Valley Drug* litigation concerned pharmaceutical antitrust claims brought against Abbott and two generic companies by many of these same plaintiffs (represented by many of the same counsel) as have brought the present suits.  In that case, the Eleventh Circuit reversed the direct purchaser class certification on interlocutory appeal because plaintiffs had failed to prove that all of the putative class members were actually injured by the challenged conduct, *i.e.*, that all of them would have been economically better off with earlier generic entry.

---

[8] Defendants address Putative Class Members' general objections to Defendants' document subpoenas in this section (III.A), and Putative Class Members' objections to the specific requests in those subpoenas in the following section (III.B).

*Id.* at 1196.  The Court explained that if earlier generic entry could have produced "winners and losers" among the proposed class, then the class could not be certified over that intractable conflict, for the named plaintiffs could not adequately represent the interests of companies who stood to benefit from the conduct that the named plaintiffs are challenging.  *Id.* at 1189.  The Eleventh Circuit specifically mandated so-called "downstream discovery" from the named plaintiffs and putative class members detailing the prices at which they bought and sold the drugs at issue, and their profits, to permit the court to determine whether the proposed class contained winners and losers.  *Id.* at 1192.

The Eleventh Circuit in *Valley Drug* gave two examples of how pharmaceutical industry economics may result in some class members, but not others, benefitting from delayed generic entry.  First, some wholesalers' profits are proportional to the price of the pharmaceuticals, so they make more money on more expensive brand-name drugs than on generic drugs: "the wholesalers charge more for, and collect more from, branded products than generic drugs."  *Id.* at 1191; *see also In re Terazosin Hydrochloride Antitrust Litig. ("Terazosin")*, 223 F.R.D. 666, 673 (S.D. Fla. 2004).  While this may not be the case for all wholesalers, and is probably not the case for retailers and other kinds of class members, it is likely true for some class members.  Second, some wholesalers may

lose sales volume to "generic bypass," a situation where generic manufacturers sell directly to retail pharmacies rather than through wholesalers.  *Valley Drug*, 350 F.3d at 1191; *Terazosin*, 223 F.R.D. at 673 n.13.  Again, that would mean that some wholesalers are worse off with earlier generic entry.  Given continual business changes in the industry, there may now be additional reasons why some class members benefit from delayed generic entry.

Under *Valley Drug,* "to determine whether a fundamental conflict exists among the class members," *i.e.*, whether some class members would be better off with delayed generic entry, an analysis of the "sales volume, pricing, and discount records" of putative class members, as well as other documents concerning their "sales practices," is "*require[d].*" 350 F.3d at 1192 & 1195 (emphasis added). Thus, in the absence of this discovery, regardless of how else Class Plaintiffs might try to show the lack of this conflict, the Court will not be able to conduct an adequate class certification analysis, and thus cannot certify a direct purchaser class.  *Id.* at 1193-94; *Terazosin*, 223 F.R.D. at 674-75.  Therefore, if this Court declines to permit the downstream discovery that Defendants seek, Plaintiffs should be precluded from arguing an absence of conflict within the proposed class.

**2.     *Absent Class Member Discovery Is Proper Where, as Here, There Is a Particularized Need for It.***

The "overwhelming majority of courts which have considered the scope of

discovery against [class] absentees have concluded that such discovery is available" in appropriate circumstances. *Dellums v. Powell*, 566 F.2d 167, 187 (D.C. Cir. 1977). Indeed, "in many instances," courts have permitted such discovery when "the need for it is apparent." *Collins v. Int'l Dairy Queen*, 190 F.R.D. 629, 631 (M.D. Ga. 1999); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. CIV.A.1:04CV3066, 2009 WL 3378517, at *3-4 (N.D. Ga. Oct. 19, 2009) (discovery from absent class members is permitted when it "would not be unduly burdensome" and "the need for it is apparent"). Whether discovery is proper necessarily turns on the facts of each case, rather than generalizations. *See Collins*, 190 F.R.D. at 631 (distinguishing "cases in which discovery has been denied" because they "do not address the exact issues in the present case").

In deciding whether the need for absent-class-member discovery is apparent, courts generally consider whether the party seeking the discovery has shown that the discovery is not a tactic to harass the class members, that the discovery is necessary, and that information sought is not already known and is not available from the named class members. *Id.* at 631 & n.1 (collecting cases); *Cooper v. Pac. Life Ins. Co.*, No. CV302-131, 2005 WL 1866166, at *2 (S.D. Ga. Aug. 5, 2005); *Baldwin & Flynn v. Nat'l Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993) (defendant seeking discovery from absent class members must show "that

discovery is both necessary and for a purpose other than taking undue advantage of class members"); *Dellums*, 566 F.2d at 187 (absent-class-member discovery is permitted "at least when the information requested is relevant to the decision of common questions, when the interrogatories or document requests are tendered in good faith and are not unduly burdensome, and when the information is not available from the . . . parties").  The Eleventh Circuit has endorsed this test as well.  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986).[9]

Crucially, one circumstance in which absent-class-member discovery has been found "necessary" is when, without it, "the propriety of class certification cannot be fairly determined."  *Baldwin & Flynn*, 149 F.R.D. at 600; *see also Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("The propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses.").  In such an instance, denying the discovery "would be an abuse of discretion."  *Doninger*, 564 F.2d at 1313; *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

---

[9] The specific question addressed in *Cox* was whether absent class members could be required to respond to interrogatories as a condition of remaining in the class. *See Cox*, 784 F.2d at 1555-57.  Interrogatories, however, are a form of *party* discovery, *see* Fed. R. Civ. P. 33(a)(1), and thus *Cox* had no occasion to consider the propriety of third-party discovery in accordance with Federal Rule of Civil Procedure 45.

The discovery Defendants request here relates to whether the putative class members have fundamental conflicts that preclude certification of the class. This information is unavailable from the named putative class representatives because the very question is whether those entities are representative of the putative class as a whole. To answer that necessary question under *Valley Drug*, Defendants have a particularized need to obtain discovery from a sample of putative class members.

### 3.    *The requested discovery is not unduly burdensome.*

As explained further below in the context of each request at issues, this Court should reject Putative Class Members' claim that the targeted downstream discovery Defendants have requested imposes an undue burden on them. Such claims are belied by the fact that a similarly situated absent class member—Mutual Drug Company—quickly produced responsive documents in the face of, or without making, any burden objections, even before Defendants significantly narrowed their requests. *See* Singla Decl. ¶ 13. The named Class Plaintiffs have also agreed to the terms of the narrowed requests asserted here,[10] which result from Defendants narrowing their requests down to the absolute minimum Defendants need to perform the class certification analysis. Any claims of burden are also belied by the fact that, after Defendants significantly narrowed their requests, the Putative

---

[10] Class Plaintiffs have made that agreement contingent, however, on reaching agreement on all the parties' disputes regarding Defendants' document requests.

Class Members repeated the same boilerplate objections and refused to even

engage in a meet-and-confer process to discuss whether the discovery could be

obtained in a minimally burdensome way.

### B.    The Specific Requests and Objections

Defendants are entitled to the discovery sought in each of their narrowed

requests, and Putative Class Members' specific objections are meritless.

**1.    *Defendants are entitled to Putative Class Members' AndroGel sales data.***

As narrowed by Defendants' meet-and-confer letter, Request No. 2 stated:

> Data extracted from the electronic databases or data summaries you maintain identifying the following information regarding your sales of AndroGel between January 1, 2006, and the present: (1) the quantities you sold; (2) the prices You charged; (3) the dates of your sales; (4) the entities to which you sold; (5) any rebates or discounts you provided; (6) the sources and quantities of any 'upcharges' or other price adjustments you received; [and (7)] any terms of sale governing your sales, or if your electronic databases or summaries do not contain all the requested information, all documents sufficient to show such information.

> [You] may identify the class of trade of each customer and provide an anonymous customer number or code in lieu of identifying the customers by name, so that Defendants can analyze the pattern of sales to different customers.  These customer numbers or codes need to be consistent between the different data sets of sales data produced, i.e., between sales data for AndroGel, sales data for analogous drugs, and any other requests for sales data.

Putative Class Members objected:

> In addition to the general objections, Request No. 2 is
> objectionable on the ground that it calls for the production of
> documents the burden of whose collection and production
> exceeds their importance to the questions in this case. This
> request is also objectionable on the grounds that it seeks legally
> irrelevant, and burdensome, "downstream" and/or "lost profits"
> information from an unnamed class member in a case brought
> by a direct purchaser seeking to recover overcharges under the
> federal antitrust laws. Under controlling Supreme Court
> precedent, as set forth in General Objection No. 2, such
> "downstream" sales information is irrelevant as a matter of law
> in a case, such as this one, brought by a direct purchaser seeking
> overcharge damages. Moreover, this request is objectionable
> because it seeks this improper and burdensome downstream
> information from an unnamed putative class member.

***Argument Supporting Production:***  The sales data sought by Request No. 2

is relevant to Defendants' class certification analysis because such information is

necessary to measure what each Putative Class Member's actual profits have been

from its sales and servicing of AndroGel in the absence of generic entry.  Without

this data—which includes sales, the quantity of product sold, and the net price

received (inclusive of rebates, discounts, upcharges, and any other adjustments or

relevant terms of sales)—it will be difficult for the Court to ascertain whether each

Putative Class Member profited more as a result of purported delayed generic entry

such that class certification is inappropriate.  *See Valley Drug*, 350 F.3d at 1196.

Moreover, the Putative Class Members' AndroGel sales data is relevant to

estimating the percentage of AndroGel sales that would have been captured by

other branded and generic testosterone replacement therapies had a generic version

of AndroGel come to market.  In addition, Defendants' offer to allow customers to

be identified by customer codes ameliorates any confidentiality concerns.  Putative

Class Members' claim of burden is a boilerplate response to each request that is

undermined by their refusal to even engage in a meet-and-confer process to discuss

whether the discovery could be obtained in a minimally burdensome way.  Data

like this it routinely produced by parties.

> **2.**    ***Defendants are entitled to Putative Class Members' purchase data for analogous drugs that were subject to generic entry.***

As narrowed by Defendants' meet-and-confer letter, Request No. 3 stated:

> Data extracted from the electronic databases or data summaries
> you maintain identifying the following information regarding
> your purchases of the following brand-name products and their
> generic equivalents for the time periods specified below: (1) the
> quantities you purchased; (2) the prices you paid; (3) the dates
> of your purchases; (4) any rebates or discounts you received; (5)
> any chargebacks you processed; and (6) any terms of sale
> governing your purchases, or if your electronic databases or
> summaries do not contain all of the requested information, all
> documents sufficient to show such information.
>
> > a. Wellbutrin XL Extended Release Tablets (generic drug
> > name: Bupropion Hydrochloride Extended-Release Tablets)
> > (between January 1, 2004, and the present)
> >
> > b. Monopril HCT Tablets (generic drug name: Fosinopril
> > Sodium and Hydrochlorothiazide Tablets) (between January 1,

2002, and the present)

Putative Class Members objected:

> In addition to the general objections, Request No. 3 is objectionable on the ground that it calls for the production of documents the burden of whose collection and production exceeds their importance to the questions in this case. This request is also objectionable on the grounds that it is overbroad, duplicative, and unduly burdensome because Defendants already have this information.

*Argument Supporting Production:*  The information sought by Request No. 3 is relevant to constructing a but-for world in which generic AndroGel would have been available.  The requested information is key to assessing the profitability of other drugs comparable to AndroGel because they are high-volume selling drugs that treat chronic conditions.  Generic versions of these drugs entered the market in the two time frames Direct Purchaser Plaintiffs allege that AndroGel would have faced generic entry—2004 or 2006.  Defendants intend to use this data to ascertain whether each Putative Class Member would have profited as a result of selling and servicing branded versus generic AndroGel, which is not yet on the market.

There is no reason to think it is unduly burdensome to require Putative Class Members to produce the requested information.  Not only did the Eleventh Circuit in *Valley Drug* hold that production of such information was not unduly burdensome, but Putative Class Members have completely refused to meet and

confer regarding this supposed burden or how it could be alleviated.  Moreover,

burden has to be evaluated in the context of the case.  The Class here is seeking

millions of dollars of damages, and Defendants have been required to provide

massive quantities of documents themselves.  Moreover, such information is

central to conducting an adequate analysis of whether they have profited as a result

of delayed generic entry, such that class certification would be inappropriate,

*Valley Drug*, 350 F.3d at 1196, particularly where the Putative Class Members

have refused to meet-and-confer on whether there are ways to minimize any

burden.  In addition, data regarding other economically comparable drugs that went

off patent at the time the Class Plaintiffs allege that a hypothetical generic version

AndroGel would have entered the market are highly relevant to modeling the effect

on sales and prices of AndroGel in the "but-for" world, and so will help evaluate

Plaintiffs' alleged damages estimates.  Contrary to Putative Class Members'

objection, Defendants do not have this data, because Defendants do not sell

Monopril HCT, and only sell one generic alternative to Wellbutrin XL.

### 3.   *Defendants are entitled to Putative Class Members' sales data for analogous drugs that were subject to generic entry.*

As narrowed by Defendants' meet-and-confer letter, Request No. 4 stated**:**

> Data extracted from the electronic databases or data summaries
> you maintain identifying the following information regarding
> your sales of the following brand-name products and their

- 19 -

generic equivalents for the time periods specified below: (1) the quantities you sold; (2) the prices you charged; (3) the dates of your sales; (4) the entities to which you sold; (5) any rebates or discounts you provided; (6) the sources and quantities of any 'upcharges' or other price adjustments You received; [and (7)] any terms of sale governing your sales, or if your electronic databases or summaries do not contain all of the requested information, all documents sufficient to show such information.

> a. Wellbutrin XL Extended Release Tablets (generic drug name: Bupropion Hydrochloride Extended-Release Tablets) (between January 1, 2004, and the present)

> b. Monopril HCT Tablets (generic drug name: Fosinopril Sodium and Hydrochlorothiazide Tablets) (between January 1, 2002, and the present)

[You] may identify the class of trade of each customer and provide an anonymous customer number or code in lieu of identifying the customer's name, so that Defendants can analyze the pattern of sales to different customers.

Putative Class Members repeated the same objection they made to Request No. 2, adding only: "This request is also objectionable on the grounds that it is overbroad, duplicative, and unduly burdensome."

***Argument Supporting Production:*** The information sought by Request No. 4 is relevant to constructing a but-for world in which generic AndroGel would have been available.  As explained above, because these drugs are good analogues to AndroGel, Defendants could use the sales data sought in Request No. 4 in conjunction with the purchase data sought through Request No. 3 to ascertain whether any of the Putative Class Members would have profited more as a result of

selling and servicing branded versus generic AndroGel, which is not yet on the market.  This request is not unduly burdensome because the information sought is central to conducting an adequate analysis of whether some members of the putative class have profited as a result of delayed generic entry, such that class certification would be inappropriate here, *Valley Drug*, 350 F.3d at 1196, and the Putative Class Members have refused to meet-and-confer to minimize any burden. Moreover, Defendants' offer to allow customers to be identified by customer codes rather than names ameliorates any confidentiality concerns.

>    **4.**    ***Defendants are entitled to Putative Class Members' AndroGel contracts with their customers regarding sale of AndroGel.***

As narrowed by Defendants' meet-and-confer letter, Request No. 5 stated**:**

> All contracts with your national account customers, your ten
> (10) largest independent retail pharmacy and/or pharmacy
> buying group customers, and Your ten (10) largest institutional
> customers, relating to Your sales of AndroGel between January
> 1, 2006 and the present, including those contracts that are not
> drug specific. If [You do] not have written contracts with [your]
> customers for brand or generic drugs, provide whatever
> documents or data [You have] specifying the pricing
> arrangements with [your] customers.

Putative Class Members objected by repeating the objections made in response to Request No. 2, but adding:

> This request is also objectionable on the grounds that the
> request is vague and ambiguous. . . . This request is also
> objectionable on the grounds that it is overbroad, duplicative,

and unduly burdensome because Defendants already have this information.

*Authority Supporting Production:* The information sought by Request No. 5 will help Defendants understand the data they have requested by setting forth the terms and structure of the economic business relationships Putative Class Members have with their customers who purchase AndroGel, and who would purchase generic AndroGel, and so will help determine whether the Putative Class Members stand to profit more from branded as opposed to generic drug sales.

Contrary to the Putative Class Members' objection, Defendants do not already have this information—there is no reason to believe Defendants would.

**5.   *Defendants are entitled to Putative Class Members' contracts related to their generics programs***

Defendants' Request No. 7 stated:

> All contracts related to your [generic source/formulary program] with your independent retail pharmacy and/or pharmacy buying group customers who participated in your [generic source/formulary program] between January 1, 2006, and the present.

Putative Class Members objected by repeating all but the last sentence of their objection to Request No. 5:

*Argument Supporting Production:* The information sought by Request No. 7 is relevant to Defendants' evaluation of whether some members of the putative

class are economically better off as a result of delayed entry of generic AndroGel.

In a generic sourcing formulary program, wholesalers extract price concessions

from generic drug manufacturers by making them compete for placement on a

wholesaler's formulary. The pricing terms in such programs' contracts will help

Defendants understand the economic arrangements governing the sales of generic

products by each of the wholesalers, and thus will help reveal whether some

members of the putative class make more money in the absence of generic entry,

thus creating an intractable conflict with those who make less.  *See Valley Drug*,

350 F.3d at 1196.  Moreover, the limited subset of contracts requested is not

unduly burdensome because they should be readily available among Putative Class

Members' records.

> **6.** **Defendants are entitled to Putative Class Members'
> documents describing practices of selling pharmaceuticals on
> a cost-plus basis:**

Defendants' Request No. 11 stated:

> All opinions, comparisons, studies, or analyses describing any
> practice, custom, or policy of selling pharmaceuticals on a cost-
> plus basis.

Putative Class Members repeated their objection to Request No. 7.

*Argument Supporting Production:*  As the Eleventh Circuit recognized in

*Valley Drug*, those who sell on a cost-plus or cost-minus basis are less likely to

have suffered a loss as a result of delayed generic entry because they price the

products they re-sell so as to guarantee a certain profit margin to themselves,

regardless of the actual wholesale cost of the products. *See Valley Drug*, 350 F.3d

at 1191.  In light of the relevance of any cost-plus or cost-minus economic

arrangements among the Plaintiffs and the putative class members to the *Valley*

*Drug* profitability analysis, it is not unduly burdensome for Putative Class

Members to provide the requested documents, *id.* at 1196, particularly given that

the Putative Class Members have refused to meet-and-confer on whether there are

ways to minimize any burden.

> **7.** ***Defendants are entitled to Putative Class Members'***
> ***documents analyzing whether it is more profitable for them to***
> ***sell brand-name drugs or generic drugs***

As narrowed in Defendants' meet-and-confer letter, Request No. 16 stated:

> All documents or information related to any analyses concerning
> whether your distribution and/or servicing of brand-name
> pharmaceutical products would be more or less profitable than
> distribution and/or servicing of generic versions of the brand-name
> pharmaceutical products.

Putative Class Members again repeated the objections they made in response

to Request No. 7.

**Argument Supporting Production:** The documents sought through Request

No. 16 are relevant to Defendants' class certification analysis because such

information concerns the central question of whether Putative Class Members are economically better off or worse off distributing or servicing branded as opposed to generic versions of AndroGel.  It is not unduly burdensome to require Putative Class Members to produce documents that bear on the central question of conflict within the class that precludes certification.  *See Valley Drug*, 350 F.3d at 1196.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to compel should be granted. Defendants ask that the Court order Putative Class Members to produce the requested documents and data within twenty (20) days of the Court's Order.  The deadline is necessary because the extension to the discovery cut-off for depositions of these absent class members provides only forty-five (45) days from the ruling on Plaintiffs' motion for a protective order to take depositions of these subpoenaed putative class members.  *See* Case 1:09-md-02084-TWT Dkt. #352.

Respectfully submitted, this 1st day of July, 2011.

Teresa T. Bonder**

Georgia Bar No. 703969

Matthew D. Kent**

Georgia Bar No. 526272

Alston & Bird LLP

1201 West Peachtree Street

Atlanta, GA  30309-3424

(404) 881-7000 (telephone)

(404) 881-7777 (facsimile)

teresa.bonder@alston.com

matthew.kent@alston.com

**Counsel for Unimed
Pharmaceuticals, LLC and Abbott
Products, Inc. f/k/a Solvay
Pharmaceuticals, Inc. in all actions
except Walgreen Co. v. Unimed
Pharmaceuticals, LLC, 1:09-cv-3019*

/s/  Rohit K. Singla

Jeffrey I. Weinberger*

Rohit K. Singla*

(California Bar No. 241116)

Munger, Tolles & Olson LLP

355 South Grand Avenue

35th Floor

Los Angeles, CA 90071

(213) 683-9100 (telephone)

(213) 683-5100 (facsimile)

jeffrey.weinberger@mto.com

rohit.singla@mto.com

John Roberti*

Mark W. Ryan*

Christopher J. Kelly*

Rebecca Valentine*

Mayer Brown LLP

1909 K Street NW

Washington, D.C. 20006

202-263-3000 (telephone)

202-263-3300 (facsimile)

jroberti@mayerbrown.com

mryan@mayerbrown.com

cjkelly@mayerbrown.com

rvalentine@mayerbrown.com

* Practicing pursuant to this Court's
Initial Case Management Order

*Counsel for Unimed Pharmaceuticals, LLC and Abbott Products, Inc. f/k/a Solvay
Pharmaceuticals, Inc.*

Eric Grannon*
J. Mark Gidley*
White & Case LLP
701 13th Street, NW
Washington, D.C. 20005
(202) 626-3600 (telephone)
(202) 639-9355 (facsimile)
egrannon@whitecase.com
mgidley@whitecase.com

* Practicing pursuant to this Court's
Initial Case Management Order

Mark G. Trigg
Georgia Bar No. 716295
Ryan C. Grelecki
Georgia Bar No. 245068
Greenberg Traurig LLP
3290 Northside Parkway, Suite 400
The Forum
Atlanta, GA 30327
(678) 553-2415 (telephone)
(678) 553-2212 (facsimile)
triggm@gtlaw.com
greleckir@gtlaw.com

*Counsel for Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc.*

Steven C. Sunshine*
Paul M. Eckles*
Julia K. York*
Skadden, Arps, Slate, Meagher & Flom
LLP
1440 New York Avenue, NW
Washington, D.C. 20005
(202) 371-7000 (telephone)
(202) 393-5760 (facsimile)
steven.sunshine@skadden.com
paul.eckles@skadden.com
julia.york@skadden.com

* Practicing pursuant to this Court's
Initial Case Management Order

David Alan Rabin
Georgia Bar No. 591469
Jason William Eakes
Georgia Bar No. 237048
Morris Manning & Martin, LLP
1600 Atlanta Financial Center
3443 Peachtree Road, N.E.
Atlanta, GA 30326-1044
(404) 233-7000 (telephone)
(404) 365-9532 (facsimile)
drabin@mmmlaw.com
jeakes@mmmlaw.com

*Counsel for Watson Pharmaceuticals, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **IN RE ANDROGEL ANTITRUST LITIGATION (II)** | **CASE NO. 1:09-MD-2084-TWT** |
| | **DIRECT PURCHASER CLASS ACTIONS** |
| | **ORAL ARGUMENT REQUESTED** |
| **ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,** | |
| Plaintiffs, | **CASE NO. 1:09-CV-956-TWT** |
| v. | |
| **UNIMED PHARMACEUTICALS,  INC., ET AL.,** | |
| Defendants. | |
| **LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,** | |
| Plaintiff, | **CASE NO. 1:09-CV-957-TWT** |
| v. | |
| **UNIMED PHARMACEUTICALS,  INC., ET AL.,** | |
| Defendants. | |
| **MEIJER, INC., ET AL.,** | |
| Plaintiffs, | **CASE NO. 1:09-CV-958-TWT** |
| v. | |
| **UNIMED PHARMACEUTICALS, INC., ET AL.,** | *Caption continued on next page.* |
| Defendants. | |

<u>**CERTIFICATE OF COMPLIANCE**</u>

| | |
|---|---|
| **IN RE: DOCUMENT SUBPOENA SERVED ON BURLINGTON DRUG CO.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON CAPITAL WHOLESALE DRUG CO. AND MIAMI-LUKEN, INC.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON DIK DRUG CO.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS** |
| **IN RE: DOCUMENT SUBPOENAS SERVED ON J.M. SMITH CORP. AND KING DRUG CO. OF FLORENCE, INC.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON PRESCRIPTION SUPPLY, INC.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF  OHIO** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON VALLEY WHOLESALE DRUG CO., INC.** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA** |
| **IN RE: DOCUMENT SUBPOENA SERVED ON VALUE DRUG COMPANY** | **MISC. (1:09-MD-2084-TWT)**<br><br>**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, counsel hereby certifies that the foregoing

**MOTION TO COMPEL** has been prepared in accordance with Local Rule 5.1

using Times New Roman 14 point font.

Respectfully submitted this 1st day of July, 2001

/s/ Michelle Friedland
Michelle Friedland*
California State Bar No. 234124
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, CA 94105
(415) 512-4042 (Telephone)
(415 ) 644-6942 (Facsimile)
Michelle.Friedland@mto.com

*Counsel for Unimed Pharmaceuticals,*
*LLC and Abbott Products, Inc. f/k/a*
*Solvay Pharmaceuticals, Inc.*

\* Practicing pursuant to this Court's
Initial Case Management Order