# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **IN RE ANDROGEL ANTITRUST LITIGATION (NO. II)** | **MASTER DKT. NO. 1:09–MD–2084–TWT**<br><br>**ALL CASES** |
| **FEDERAL TRADE COMMISSION,**<br><br>        **Plaintiff,**<br><br>            **v.**<br><br>**ACTAVIS, INC., et al.,**<br><br>        **Defendants.** | **CASE NO. 1:09–CV–955–TWT** |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE IN PART <u>PLAINTIFFS' PROPOSED EXPERT JAMES R. BRUNO</u>

# **TABLE OF CONTENTS**

Page

A.    Plaintiffs concede that Mr. Bruno does not proffer any monetary valuation of the Backup Manufacturing Agreement. ...................................1

B.    A monetary valuation is required to determine whether a payment is "large and unjustified" under *Actavis*..........................................................2

C.    Plaintiffs' proposed economists cannot derive a monetary valuation of the Backup Manufacturing Agreement from Mr. Bruno's opinion that does not provide one.................................................................................4

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*100079 Canada, Inc. v. Stiefel Labs., Inc.*,
   No. 11-22389, 2013 WL 1294187
   (S.D. Fla. May 22, 2013) ......................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)...........................................................................................5, 6

*FTC v. Actavis, Inc.*,
   133 S. Ct. 2223 (2013)....................................................................................1, 2, 4

*In re Loestrin 24 Fe Antitrust Litig.*,
   814 F.3d 538 (1st Cir. 2016)..................................................................................3

*In re Opana ER Antritrust Litig.*,
   No. 14-C-10150, 2016 U.S. Dist. LEXIS 23319
   (N.D. Ill. Feb. 25, 2016) ........................................................................................3

*In re Wright Med. Tech., Inc.*,
   127 F. Supp. 3d 1306 (N.D. Ga. Aug. 31, 2015)..................................................6

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
   97 F. Supp. 3d 485 (S.D.N.Y. 2015) ....................................................................2

*UCB, Inc. v. Teva Pharms. USA, Inc.*,
   No. 1:12-CV-4420, 2015 U.S. Dist. LEXIS 189386
   (N.D. Ga. Mar. 18, 2015)......................................................................................6

*United States v. Batchelor-Robjohns*,
   No. 03-20164, 2005 U.S. Dist. LEXIS 13552
   (S.D. Fla. June 2, 2005) ........................................................................................5

*United States v. Brown*,
   415 F.3d 1257 (11th Cir. 2005) ............................................................................2

iii

*Rink v. Cheminova, Inc.*,
  400 F.3d 1286 (11th Cir. 2005) ..............................................................................5

# FEDERAL RULES

Fed. R. Evid. 702 ........................................................................................5, 6

Plaintiffs agree that Mr. Bruno does *not* proffer a monetary valuation of the Backup Manufacturing Agreement.  *See* Opp'n 13 ("Defendants' motion argues primarily that Mr. Bruno did not conduct a quantitative 'financial valuation' of the BMA.  That is correct.").

Without a monetary valuation of the agreement, Mr. Bruno cannot reliably say whether Solvay overpaid Par/Paddock for the agreement, which is the threshold question under *Actavis*.  It follows that Plaintiffs' proposed economists —who did no independent valuation of the agreement—cannot rely on Mr. Bruno for a monetary valuation that he does not provide.

### A.    Plaintiffs concede that Mr. Bruno does not proffer any monetary valuation of the Backup Manufacturing Agreement.

Plaintiffs agree that Mr. Bruno does not offer a monetary valuation: "Mr. Bruno never purported to offer a quantitative valuation of the BMA.  Indeed, he explained that there was not enough information to do so[.]"  Opp'n 13; *see also, e.g.*, Opp'n 15 ("But this opinion is not a quantitative valuation.").

Plaintiffs' concession is sensible given that Mr. Bruno admitted repeatedly and unequivocally throughout both of his depositions that he does *not* opine at all on the monetary valuation of the agreement.  *See* Mot. 9-10 (collecting testimony

including, for example: "I'm not putting a dollar value on it.").[1]

Accordingly, the discrete relief that Defendants seek concerning Mr. Bruno's proposed testimony is straightforward and should be granted: "Mr. Bruno is precluded from offering any opinions or testimony on the valuation of the Backup Manufacturing Agreement, including whether Solvay's compensation to Par/Paddock was fair value for services or constituted a large and unjustified payment." Proposed Order, MDL Dkt. No. 1562-4.

### B. A monetary valuation is required to determine whether a payment is "large and unjustified" under *Actavis*.

Without offering an opinion on monetary valuation, Mr. Bruno cannot say whether Solvay's payment to Par/Paddock for the Backup Manufacturing Agreement was "large and unjustified." *See Actavis*, 133 S. Ct. at 2237 ("a reverse

---

[1] Plaintiffs joust a straw man with their footnote argument that "[c]ourts do not require experts to conduct a quantitative analysis for every opinion." Opp'n 13 n.34. That has nothing to do with whether a proposed expert who concededly offers no monetary valuation of a transaction can testify as to such a valuation or be relied upon by economists for such a valuation. None of Plaintiffs' cited cases so hold, for they had nothing to do with valuation opinions. *See Brown*, 415 F.3d at 1261-62 (two chemists permitted to opine in a criminal drug case on whether a certain substance constituted a "controlled substance analogue"); *100079 Canada, Inc. v. Stiefel Labs., Inc.*, No. 11-22389, 2013 WL 1294187, at *3, *5 (S.D. Fla. May 21, 2013) (expert in an SEC fraud case permitted to testify on "what a reasonable minority shareholder would have done with knowledge of the heightened probability of a sale."); *see also Louis Vuitton*, 97 F. Supp. 3d at 504-05 (economist could testify as expert on trademark-infringement damages over defendant's objection that "she relied on articles about brand value and deposition testimony without performing any analysis of her own.").

payment, where large and unjustified, can bring with it the risk of significant anticompetitive effects[.]").[2]

Plaintiffs contend that even without a monetary valuation, "Mr. Bruno's opinions will help the trier of fact determine whether the *purpose of Solvay's payment to Paddock* was to obtain backup manufacturing services, or instead to eliminate the risk of competition."  Opp'n 5 (emphasis added).  But that is just a back-door attempt to derive from Mr. Bruno a valuation opinion that he expressly said he does not provide.  Since Mr. Bruno testified over and over again that he is not offering, and lacks expertise to offer, an opinion on valuation, he cannot opine on valuation.  Plaintiffs cannot finagle a monetary valuation out of Mr. Bruno's non-valuation opinion by quoting snippets that say "no value" and pointing to Mr. Bruno's separate opinions on issues such as Solvay's diligence.

In addition, even assuming that Mr. Bruno were permitted to opine on what he believed Solvay's purpose was in entering into the Backup Manufacturing Agreement, that would have no bearing on whether the agreement was fairly

---

[2] *See also, e.g.*, *Loestrin*, 814 F.3d at 551 (1st Cir. 2016) (holding that determining "the value of a reverse payment is a key component" and "is central to the antitrust query and requires that the reviewing court or factfinder assess the value of the payment."); *In re Opana ER Antritrust Litig.*, No. 14-C-10150, 2016 U.S. Dist. LEXIS 23319, at *29 (N.D. Ill. Feb. 25, 2016) ("The Court is aware that a precise valuation may require discovery, as it will likely depend on evidence in Defendants' exclusive possession and on expert analysis.").

valued or not.  *Actavis* itself held that when reverse payments constitute "fair value for services" they are permissible regardless of purpose.  *See Actavis*, 133 S. Ct. at 2236.

There can be no question that Defendants are entitled to the relief sought that "Mr. Bruno is precluded from offering any opinions or testimony on the valuation of the Backup Manufacturing Agreement, including whether Solvay's compensation to Par/Paddock was fair value for services or constituted a large and unjustified payment[,]" when it is undisputed that Mr. Bruno proffers no monetary valuation and admitted in his deposition:  "*I cannot fairly say to you that this is fair value or it's not fair value*."  *See* Mot. 1 (emphasis added).

### C.   Plaintiffs' proposed economists cannot derive a monetary valuation of the Backup Manufacturing Agreement from Mr. Bruno's opinion that does not provide one.

Plaintiffs "retained economic experts to determine whether and by how much the [allegedly] illicit payments Solvay made to its generic competitors delayed generic entry."  Opp'n 11.

It is undisputed that these economists do not provide *any* independent valuation of the Backup Manufacturing Agreement and, instead, rely entirely on Mr. Bruno for valuation.  *See* Mot. 20-21.  It is also undisputed that these economists seek to rely on Mr. Bruno for the proposition that the entire $2 million

per year in compensation that Solvay agreed to pay Par/Paddock for the Backup Manufacturing Agreement—i.e., 100% of the payment—was an overpayment. *See* Opp'n 18-19.

Under Rule 702 and *Daubert*, it would be unreliable for Plaintiffs' economists to ascribe zero monetary value to the Backup Manufacturing Agreement based entirely on Mr. Bruno's proposed opinion when Mr. Bruno himself expressly disclaimed a zero-dollar monetary valuation.  *See* Mot. 15 (quoting Mr. Bruno's deposition testimony); *see also, e.g.*, *Rink*, 400 F.3d at 1294 (11th Cir. 2005) (affirming district court's exclusion of experts who relied on the findings of another excluded expert); *United States v. Batchelor-Robjohns*, No. 03-20164, 2005 U.S. Dist. LEXIS 13552, at *17-18 (S.D. Fla. June 2, 2005) ("Without [expert] Medland's asset valuations, [experts] May and Gartrell have no evidentiary basis for the conclusions they reach.  In turn, [experts] May and Gartrell's opinions are unreliable under Rule 702 because they admittedly relied on Medland's valuations without performing any independent calculations themselves.").[3]

---

[3]  In addition to Mr. Bruno expressly declining to say that the Backup Manufacturing Agreement was worth zero dollars to Solvay, he admitted that the agreement affirmatively provided back-up manufacturing value for at least the last year of the contract.  *See* Mot. 16 (quoting Mr. Bruno's deposition testimony); *see also* Opp'n 8 (contending that "Paddock could not produce brand AndroGel in a

Because it would be inherently unreliable for an expert to adopt an opinion that another expert expressly did *not* provide, it is no answer to suggest that Defendants have recourse to cross-examination. *See* Opp'n 4. If Plaintiffs' economists can purport to adopt from Mr. Bruno a monetary valuation and an opinion that the agreement was worth zero dollars—when he concededly provided neither—then Rule 702 and *Daubert* would have no gatekeeping function: any and all unreliable opinion could be similarly admitted subject to cross-examination.[4]

Because it is (i) undisputed that Mr. Bruno does not proffer a monetary valuation and (ii) undisputed that Plaintiffs' proposed economists seek to rely on Mr. Bruno for a monetary valuation of the Backup Manufacturing Agreement, the narrow relief sought by Defendants concerning Plaintiffs' proposed economists should be granted: "Plaintiffs' proposed expert economists are also precluded from relying on Mr. Bruno for any conclusions on the valuation of the Backup Manufacturing Agreement." Proposed Order, MDL Dkt. No. 1562-4.

---

saleable, commercial form for *at least five of the agreement's six-year term*.") (emphasis in original).

[4] Plaintiffs cite *In re Wright Med. Tech.* for the general proposition that one expert may rely upon the opinion of another. *See* Opp'n 20 n.54. We do not dispute that. What we are disputing is whether Plaintiffs' economists can base their analyses on an opinion that the other expert *did not give*. Similarly, *UCB v. Teva*, *see* Opp'n 20 n.55, had nothing to do with one expert attempting to adopt a conclusion expressly not provided by another expert. *See UCB v. Teva*, 2015 U.S. Dist. LEXIS 189386, at *24.

Respectfully submitted this 26th day of January 2018.

Eric Grannon*
Adam M. Acosta*
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600 (telephone)
(202) 639-9355 (facsimile)
egrannon@whitecase.com
adam.acosta@whitecase.com

/s/   Rohit K. Singla
Jeffrey I. Weinberger*
Rohit K. Singla*
Adam R. Lawton*
Joshua S. Meltzer*
Justin P. Raphael*
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100 (telephone)
(213) 687-3702 (facsimile)
jeffrey.weinberger@mto.com
rohit.singla@mto.com
adam.lawton@mto.com
joshua.meltzer@mto.com
justin.raphael@mto.com

\* Practicing pursuant to this Court's
Initial Case Management Order

\* Practicing pursuant to this Court's
Initial Case Management Order

Michael J. King
Georgia Bar No. 421160
GREENBERG TRAURIG, LLP
Terminus 200, Suite 2500
3333 Piedmont Road, N.E.
Atlanta, GA 30305
(678) 553-2100 (telephone)
(678) 553-2212 (facsimile)
kingm@gtlaw.com

Teresa T. Bonder
Georgia Bar No. 703969
Matthew D. Kent
Georgia Bar No. 526272
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)
teresa.bonder@alston.com

matthew.kent@alston.com

*Counsel for Defendants Par Pharmaceutical Companies, Inc. and Paddock Holdings, LLC*

*Counsel for Defendant AbbVie Products LLC f/k/a Solvay Pharmaceuticals, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), counsel hereby certifies that the foregoing REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE IN PART PLAINTIFFS' PROPOSED EXPERT JAMES R. BRUNO has been prepared in accordance with Local Rule 5.1 using Times New Roman 14 point font.

Respectfully submitted this 26th day of January 2018.

<u>/s/  Adam M. Acosta</u>
Adam M. Acosta*
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, D.C.  20005
(202) 626-3600 (telephone)
(202) 639-9355 (facsimile)
adam.acosta@whitecase.com
* Practicing pursuant to this Court's
Initial Case Management Order

*Counsel for Defendants Par
Pharmaceutical Companies, Inc. and
Paddock Holdings, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **IN RE ANDROGEL ANTITRUST LITIGATION (NO. II)** | **MASTER DKT. NO. 1:09–MD–2084–TWT**<br><br>**ALL CASES** |
| **FEDERAL TRADE COMMISSION,**<br><br>       **Plaintiff,**<br><br>       **v.**<br><br>**ACTAVIS, INC., et al.,**<br><br>       **Defendants.** | **CASE NO. 1:09–CV–955–TWT** |

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(b) and Local Rule 5.1, I hereby certify that a true and correct copy of REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE IN PART PLAINTIFFS' PROPOSED EXPERT JAMES R. BRUNO was filed with the Court's CM/ECF system on January 26, 2018 and thereby distributed to counsel of record.

Respectfully submitted this 26th day of January 2018.

<u>/s/  Adam M. Acosta</u>
Adam M. Acosta*
WHITE & CASE LLP

701 Thirteenth Street, N.W.
Washington, D.C.  20005
(202) 626-3600 (telephone)
(202) 639-9355 (facsimile)
adam.acosta@whitecase.com

* Practicing pursuant to this Court's
Initial Case Management Order

*Counsel for Defendants Par
Pharmaceutical Companies, Inc. and
Paddock Holdings, LLC*

2