# Attachment F-1

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **IN RE ANDROGEL ANTITRUST LITIGATION (II)** | **MASTER DOCKET NO. 1:09-MD-2084-TWT** |
| **ROCHESTER DRUG CO-OPERATIVE, INC., ET AL.,**<br>　　　**PLAINTIFF,**<br>　　　　　**V.**<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>　　　**DEFENDANTS.** | **CASE NO. 1:09-CV-956-TWT** |
| **LOUISIANA WHOLESALE DRUG CO., INC., ET AL.,**<br>　　　**PLAINTIFF,**<br>　　　　　**V.**<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>　　　**DEFENDANTS.** | **CASE NO. 1:09-CV-957-TWT** |
| **MEIJER, INC., ET AL.,**<br>　　　**PLAINTIFFS,**<br>　　　　　**V.**<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>　　　**DEFENDANTS.** | **CASE NO. 1:09-CV-958-TWT** |

## PLAINTIFFS' WITNESS LIST

| | |
|---|---|
| **RITE AID CORPORATION, ET AL.,**<br>          **Plaintiffs,**<br>                    **v.**<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>          **Defendants.** | **CASE NO. 1:09-CV-2776-TWT** |
| **WALGREEN CO., ET AL.,**<br>          **Plaintiffs,**<br>                    **v.**<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>          **Defendants.** | **CASE NO. 1:09-CV-3019-TWT** |
| **SUPERVALU, INC.,**<br>          **Plaintiff,**<br>                    **v.**<br>**UNIMED PHARMACEUTICALS, LLC, ET AL.,**<br>          **Defendants.** | **CASE NO. 1:10-CV-1024-TWT** |

The list below identifies the witnesses Plaintiffs currently intend to or may call to testify at trial during Plaintiffs' case-in-chief (whether live or by deposition designation). By listing witnesses below, Plaintiffs do not indicate that they have the ability to control a witness's appearance at trial.

**Fact Witnesses**

1. **Jose Alcaine (Safeway)**
2. **Michael Allen (Walgreens)**
3. **Lynne Amato (Watson)**
4. **Leonard Blum (ICOS)**
5. **Angelo Jay Bua (Besins)**
6. **David Buchen (Watson)**
7. **Paul Campanelli (Par)**
8. **Margaret Choy (Watson)**
9. **Napolean Clark (Watson)**
10. **Lynn Dale (Solvay)**
11. **Laurence Doud (RDC) (by designation)**
12. **Laurence Downey (Solvay)**
13. **Charles Ebert (Watson)**

1

14. Oliver Engert (McKinsey)

15. Chad Geilen (LWD)

16. Scott Griffin (CVS)

17. Edward Heimers (Watson)

18. James Hynd (Solvay)

19. Laura James (Ahold)

20. Jay Janco (Solvay)

21. Scott Johnson (Supervalu)

22. Murray Kay (Solvay)

23. Louis Lipinski (Solvay)

24. Edward Maloney (Paddock)

25. Nicholas Manusos (TAP)

26. Owen McMahon (Rite Aid)

27. Zachary Mikulak (Walgreen)

28. William Mink (Paddock)

29. Robert Nevers (HEB)

30. Joseph Nolan (Solvay)

31. Cherri Petrie (Watson)

2

32. **Janis Picurro (Par)**

33. **Matthew Pike (Walgreens)**

34. **Matthew Paulson (Meijer)**

35. **Laura Schneider (American Sales Company)**

36. **Harold Shlevin (Solvay)**

37. **William Stripling (HEB)**

38. **Joseph Todisco (Par)**

39. **Edward Tykot (Watson)**

40. **Wanda Williams (Watson)**

41. **Difei (Elaine) Yang (Solvay)**

42. **Custodian(s) of Records for any Defendant or Non-Party**

**<u>Expert Witnesses</u>**

43. **James Bruno**

Mr. Bruno is the Managing Director of Chemical and Pharmaceutical Solutions, Inc. Based on his experience and analysis of the relevant evidence, Mr. Bruno will testify as to the opinions disclosed in his expert reports in this matter, including his opinions that: (1) the negotiations, diligence, and terms of the back-up

manufacturing agreement were not consistent with a legitimate effort by Solvay to retain a second supply source for AndroGel; and (2) no reasonable pharmaceutical company seeking back-up manufacturing services would have entered into the back-up manufacturing agreement with only the information Solvay had at the time it signed the agreement.

**44.   Einer Elhauge**

Professor Elhauge is a professor at Harvard University School of Law. Based on his expertise, experience and analysis of the relevant evidence, Professor Elhauge will testify as to the opinions disclosed in his expert reports in this matter, including that: reverse payment agreements are large enough to anticompetitively delay entry whenever they exceed the patent holder's avoided litigation costs; his economic model for calculating the length of delay caused by a reverse payment agreement; the range of delay caused by the reverse payments in this case, as well as the specific date to which rational parties would have agreed based upon their respective bargaining strengths; the lack of procompetitive justifications for this reverse payment; and rebutting any testimony offered by defense economists.

### 45. Jack C. Goldstein

Mr. Goldstein is a patent attorney with more than 50 years' experience in intellectual property law, including patents. Based on his experience and analysis of the relevant evidence, Mr. Goldstein will testify as to the opinions disclosed in his expert reports in this matter, including his opinions regarding the conclusions that a reasonable and competent patent attorney (or reasonable litigant in Solvay's or the Generics' shoes as represented by competent patent counsel) would have drawn at the time the parties settled the AndroGel Patent Litigation in terms of likelihood of success in the litigation, the likely timing of the resolution of the litigation, and the likely costs associated with continued litigation.

### 46. Deborah Jaskot

Ms. Deborah Jaskot is a 30-year veteran of the pharmaceutical industry, who served in various roles at Sandoz and Teva, and, now consults for various pharmaceutical companies. As Teva's Vice President, U.S. Generic Regulatory Affairs & North America Policy, she oversaw all of its regulatory affairs and regulatory policy work, she was integrally involved in obtaining FDA approval of several hundred generic drug applications for a wide variety of different drugs and dosage forms, and she regularly interacted with the FDA. Ms. Jaskot will testify as

5

to the opinions disclosed in her expert reports in this matter, including the fact that there were no regulatory hurdles, manufacturing difficulties, or supply-related obstacles that would have prevented Watson and Par/Paddock from launching their generic versions of AndroGel during the relevant time period. She may also respond to any opposing experts, testimony, or evidence.

### 47. Keith B. Leffler

Dr. Leffler is Emeritus Associate Professor of Economics at the University of Washington who will testify as to the opinions disclosed in his expert reports in this matter that are consistent with the Court's summary judgment rulings, including (1) the relevant antitrust market and Solvay's monopoly or market power in that market; (2) alternate no-payment settlement agreements between Solvay and Watson and Solvay and Paddock/Par that allowed for generic entry as early as January 2009 were feasible and economically rational for all Defendants; (3) the settlements of Paddock/Par and Watson were economically interdependent; (4) the settlements of Paddock/Par and Watson were anticompetitive; (5) it would have been economically rational for Solvay to have introduced an authorized generic version of AndroGel 1% had it not paid Watson and Paddock/Par to delay generic AndroGel; and (6) the

overcharge damages suffered by the Retailer Plaintiffs. Dr. Leffler may also respond to any opposing experts, testimony or evidence.

### 48. Jeffrey J. Leitzinger

Dr. Leitzinger is an economist with more than 40 years of experience. He currently serves as the President of Econ One Research, Inc., an economic consulting firm with offices in cities around the U.S. Dr. Leitzinger has extensive experience assessing the impact of AB-rated generic drug competition and suppression. Dr. Leitzinger will testify as to the opinions disclosed in his expert reports in this matter, including his opinions that: (1) AndroGel and its AB-rated generic equivalents in the U.S. constitute a relevant antitrust market; (2) had generic versions of AndroGel entered the market when Plaintiffs claimed they would have, those generic products would have replaced brand AndroGel in the majority of the prescription base, greatly reducing the cost of filling those prescriptions; (3) the delay in generic competition that occurred created substantial anticompetitive effects; (4) the higher prescriptions costs caused by generic delay in this case were the product of monopoly power maintained by Solvay through Defendants' agreements to block generic competition for AndroGel; (5) Solvay's settlements with Watson and Par that prevented generics from entering the relevant market, enhanced Solvay's monopoly power; (6) there is

7

no evidence of cognizable pro-competitive benefits that would justify the competitive harm caused by the agreements at issue; (7) all of the direct purchaser Plaintiffs suffered antitrust injury; and (8) the calculation of the overcharges each direct purchaser Plaintiff suffered. Dr. Leitzinger will also respond to the opinions and testimony offered by Defendants' expert witnesses.

### 49. John R. Tupman

Mr. Tupman is a former business development executive with Eli Lilly & Co. Mr. Tupman will testify as to the opinions disclosed in his expert reports in this matter, including (1) AndroGel was not a good candidate for co-promotion in 2006; (2) neither Watson nor Par was a good co-promotion partner for Solvay; (3) the Watson and Par Co-Promotion Agreements were not subject to typical transaction process and due diligence; (4) branded companies typically do not enter into multiple co-promotes on the same day, for the same product, in the same geography;  (5) the Watson and Par Co-Promotion Agreements are not structured like typical co-promote agreements; (6) the Watson and Par Co-Promotion Agreements resulted in far higher payments to Watson and Par than they had ever received for other co-promote agreements and higher payments by Solvay than it had ever paid for co-promoting AndroGel; (7) no reasonable pharmaceutical company in Solvay's

position would have entered into either the Watson or Par Co-Promotion Agreements; and (8) the value of the co-promotion services that Watson and Par agreed to provide to Solvay compared to what Solvay agreed to pay for those services. Mr. Tupman may also respond to any opposing experts, testimony or evidence, including that the methodologies employed by Ms. Orne to assess fair value are contrary to those typically considered reasonable and reliable in the pharmaceutical industry and inconsistent with established accounting principles, and that her conclusion that Solvay entered into "fair value" co-promotion agreements with Watson and Par is unsupported and wrong.

### 50.   Bozena Michniak-Kohn

Dr. Michniak-Kohn a is Professor of Pharmaceutics at the Ernest Mario School of Pharmacy at Rutgers, The State University of New Jersey; and is also the Director of the Center for Dermal Research and the Director of the Laboratory for Drug Delivery of the New Jersey Center for Biomaterials at Rutgers University. Based on her experience and analysis of the relevant evidence, Dr. Michniak-Kohn will testify as to the opinions disclosed in her expert reports in this matter, including her opinions that certain claims of the '894, '816 and '089 Patents are invalid and

do not cover the generic versions of AndroGel sought to be marketed by Watson and Paddock.

### 51. Fotios Plakogiannis

Dr. Fotios Plakogiannis is a retired professor of Professor of Pharmaceutical Sciences at Long Island University and is the managing director of Transdermal Research Pharm Laboratories, LLC in Long Island City, New York. Based on his experience and analysis of the relevant evidence, Dr. Plakogiannis will testify as to the opinions disclosed in his expert reports in this matter, including his opinions that certain claims of the '894, '816 and '089 Patents do not cover the generic versions of AndroGel sought to be marketed by Watson and Paddock.

### 52. John R. Thomas

Professor Thomas is a professor of law at Georgetown University who was previously qualified by the Court as an expert to offer his opinions on the Hatch-Waxman Act and the FDA approval process. Consistent with his expert reports and prior depositions, Professor Thomas's testimony may address, without limitation: (1) the Hatch- Waxman Act, including the FDA drug approval process for branded and generics drugs, particularly in the context of Paragraph IV litigation; (2) the regulatory landscape pertaining to Solvay's branded AndroGel 1% and generic

AndroGel 1% ANDAs, including without limitation, the operation of 180-day first-filer exclusivity. He may also respond to any opposing experts, testimony, or evidence.

\* \* \*

Please be advised that Plaintiffs reserve their rights to: (1) use any witness identified on Defendants' witness list and/or any witness not identified herein as a rebuttal witness; (2) present or not present testimony from any witness identified herein; (3) supplement, withdraw, or otherwise amend this witness list based upon developments subsequent to its submission; and (4) call live during Plaintiffs' case-in-chief any witness who will testify live during the defense case.

As Judge Thrash has made clear "[w]e're not going to redo the patent litigation," Plaintiffs understand that technical patent evidence to be excluded by the Court's summary judgment opinion and subsequent rulings, and irrelevant to the upcoming trial. *See* Summary Judgment Opinion (ECF No. 1739) at 34-39; April 4, 2019 Status Conf. Tr. at 11 (COURT: "Mr. Singla, in some of your filings in the F.T.C. case, I got the impression that your client hadn't understood that. I will say it again. We're not going to redo the patent litigation."); October 22, 2019 Status Conf. Tr. at 14. In an abundance of caution, in light of the Court's statement during

11

the October 22, 2019 Status Conference that it will not prevent Defendants from including technical patent evidence on their witness and exhibit lists, Plaintiffs added their technical patent experts (Professors Bozena Michniak-Kohn and Fotios Plakogiannis) to their witness list.

Date: November 15, 2019